**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RU-EL SAILOR, | ) | CASE NO. 1:20CV660 |
| | ) | |
| Plaintiff, | ) | SENIOR JUDGE |
| | ) | CHRISTOPHER A. BOYKO |
| vs. | ) | |
| | ) | |
| CITY OF CLEVELAND, et al., | ) | OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

<u>**CHRISTOPHER A. BOYKO, SR. J.**</u>:

  Before the Court is Defendant City of Cleveland's Motion for Judgment on the Pleadings (Doc. 14). The City argues that Plaintiff Ru-el Sailor has not stated a plausible claim for municipal liability under *Monell v. Dept. of Soc. Servs.*, 463 U.S. 658 (1978). The Court agrees and therefore **GRANTS** the City's Motion. And although Plaintiff improperly requested leave to file an amended Complaint, the Court authorizes Plaintiff to file a Motion for Leave to file an Amended Complaint by October 14, 2021.

**I. BACKGROUND FACTS**

  In 2003, Plaintiff was convicted for the murder of Omar Clark. However, that conviction was wrongful. And in March of 2018, the State of Ohio vacated the conviction and released Plaintiff from prison. Plaintiff primarily blames the individual police officers for their role in procuring his wrongful conviction. Accordingly, he filed this lawsuit against eight of those officers for their respective roles in the 'investigation' (the "Defendant Officers").

But Plaintiff also seeks to hold the City liable for the acts of its officers. According to Plaintiff, the City had a policy that allowed officers to obtain wrongful convictions via a myriad of ways. While these policies were not written, Plaintiff alleges they have been in place since the 1960s and 1970s. And because of these policies, the Defendant Officers could violate Plaintiff's constitutional rights.

The City disagrees and claims that the Complaint fails to state a claim against the City as a matter of law. (Doc. 14). Plaintiff opposed (Doc. 23) and the City replied thereafter (Doc. 25). Plaintiff then requested leave to file a Sur-Reply, which the Court granted. (Docs. 26, 26-1 & Non-Doc. Entry 7/27/2021).

## II. LAW & ANALYSIS

**A.     Standard of Review**

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). In this jurisdiction,

> [t]he standard of review for a judgment on the pleadings is the same as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)…We construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief.

*Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC*, 477 F.3d 383, 389 (6th Cir. 2007) (citations omitted). The court need not accept as true legal conclusions or unwarranted factual inferences. *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 405 (6th Cir. 1998).

The pleading does not have to demonstrate probability; rather, "just enough factual information to create an expectation that discovery will uncover evidence supporting the claim." *Haber v. Rabin*, 2016 WL 3217869, at *3 (N.D. Ohio June 10, 2016) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). In other words, the complaint must state a plausible

claim for relief. "Plausibility is a context-specific inquiry, and the allegations in the complaint must 'permit the court to infer more than the mere possibility of misconduct,' namely, that the pleader has 'shown' entitlement to relief." *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). While *Twombly* and *Iqbal* have set this plausibility standard, the Sixth Circuit "has cautioned against reading '*Twombly* and *Iqbal* so narrowly as to be the death of notice pleading…'" *Rhodes v. R & L Carriers, Inc.*, 491 Fed. App'x 579, 583 (6th Cir. Aug. 6, 2012) (quoting *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012)). "If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied." *Keys*, 684 F.3d at 610.

Dismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 489-90 (6th Cir. 1990). Lastly, a Rule 12(c) motion "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991).

**B.** *Monell* **Standard**

A city may only be held liable for the constitutional violations of its employees under 42 U.S.C. § 1983 if those actions are the result of a practice, policy, or custom of the municipality itself. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). To adequately plead a claim for municipal liability under *Monell*, Plaintiffs must "identify the policy, connect the policy to the entity itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993).

There are four types of municipal action that, if they cause the underlying constitutional violation, can demonstrate that the municipality had an unlawful policy or custom: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).

*Monell* claims are not subjected to a higher pleading standard. *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993). Rather, the plausibility standard of *Twombly* and *Iqbal* discussed above applies. *Bailey v. City of Ann Arbor*, 860 F.3d 382, 388-89 (6th Cir. 2017). However, the broad assertion that an unconstitutional policy exists "is nothing more than a bare recitation of legal standards" and is insufficient. *Brown v. Cuyahoga Cty.*, 517 Fed. App'x 431, 436 (6th Cir. Mar. 15, 2013); *see also Burgess*, 735 F.3d at 478 (failure to point to a pattern of a custom or prior unconstitutional conduct subjects it to dismissal).

Based on Plaintiff's briefing, he clearly believes that he adequately pled each of the four potential bases for municipal liability under *Monell*. The Court disagrees. Really Plaintiff relies on an unwritten custom that was so wide-spread and well-established, that it essentially became the City's policy. However, as discussed below, this argument fails to support a claim that a custom of constitutional rights violation existed at the time of Plaintiff's investigation.

**C.     Plaintiff's Complaint**

Plaintiff alleges that he fell victim to a widespread and clear policy whereby "officers regularly used unconstitutional measures to falsely implicate criminal suspects, including by

withholding and/or suppressing exculpatory evidence, fabricating evidence, feeding information to witnesses, engaging in unduly suggestive identification and lineup procedures, and engaging in leading, coercive and unduly suggestive questioning of and contact with witnesses." (Doc. 1, PageID: 19, ¶ 148). This policy existed for over 30 years — "as far back as the 1970s and continued through the time of the investigation and prosecution of Plaintiff." (*Id.* at ¶ 149). In essence then, Plaintiff alleges that, for a continuous 30-year period, the City of Cleveland and its police department maintained an unwritten policy to "pursue wrongful convictions[.]" (*Id.* at PageID: 29, ¶ 179).

In supporting these allegations, Plaintiff neither cites a specific legislative enactment nor police department policy. Nor does he name a specific policymaker or official with final decision-making authority. And finally, Plaintiff does not discuss a specific inadequate training program or manual.

Instead, Plaintiff relies on unwritten, "widespread, clear and persistent patterns and practices" that have essentially become official policies, sanctioned by a 'senior-clique' of policymakers within the Cleveland Department of Police. These unconstitutional practices were so well-known and widespread that the City should have implemented better training instead of merely acquiescing to the policies' existence.

Plaintiff is correct in that a custom of tolerating civil rights violations may demonstrate municipal policy. *Bd. of Cty. Comm'r of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997); *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1120 (6th Cir. 1994). But the custom must be so "extensive as to still be attributable to the municipality as a whole." *Lipman v. Budish*, 974 F.3d 726, 748 (6th Cir. 2020); *Brown*, 520 U.S. at 404 (the relevant custom "is so widespread as to have the force of law"); *Phillips v. City of Cincinnati*, 479 F. Supp. 3d 611, 634 (S.D. Ohio 2020) (a city's

custom that may form the basis of liability in a § 1983 claim must "be so permanent and well settled as to constitute a custom or usage with the force of law"). This typically entails a showing that a "clear and persistent pattern of unlawful activity" existed and "that [the city] tacitly approved" the activity. *Howse v. Hodus*, 953 F.3d 402, 411 (6th Cir. 2020).

Plaintiff has failed to allege an extensive, widespread and well-settled custom supported with sufficient facts to show a clear and persistent pattern of unlawful activity approved by the City. Plaintiff starts with evidence from the 1960s and 1970s — a Public Administration Service Report on the Cleveland Division of Police (1966); an autobiography of Mayor Carl Stokes (1973); a Cleveland Crime Commission Report (1974); and a Cleveland Foundation Report (1975). (Doc. 1, ¶¶ 160(a)-(b), 154(a)-(f), 159 and 155(a)-(d)). But even giving Plaintiff the benefit of the doubt that this evidence starts the unlawful policy alleged here, Plaintiff does not allege sufficient facts to plausibly demonstrate that the unlawful policy continued for 30 years. If the custom were so widespread and pervasive as Plaintiff alleges, the Court would expect specifics cited from the ensuing three decades.

Perhaps in an attempt to show the continuation of the '60s and '70s policy, Plaintiff provides undated and unnamed allegations:

> 165. For example, despite having knowledge of news reports and complaints against a detective for false testimony and beating confessions out of detainees, the City failed to investigate or take disciplinary action against the involved officer.
>
> 166. In another case, a CDP officer attempted to report a fellow officer's fabrication of evidence and use of excessive force in shooting a young woman, and Internal Affairs ruled the complaint not substantiated and took no action against the officer who engaged in misconduct.
>
> 167. This same officer witnessed years of repeated misconduct by his fellow officers, indicative of a pattern, practice, custom,

        and policy of such misconduct. The officer was aware of other officers conducting interrogations of suspects where officers punched suspects in the face and head, knocking them down, in efforts to get those suspects to confess or implicate others. When physically beating these people, the officers would say things along the lines of "Now you're going to tell us the truth."

168.    When this officer attempted to notify superiors in the CDP of the wrongful conduct described above, he was either reprimanded or told not to pursue the claims of misconduct any further.

169.    At all times relevant to this Complaint, policymakers for the City and the CDP knew of these problems and allowed them to continue, even though the need for legitimate mechanism for new or different policies, training, oversight or punishment of officers was obvious. The constitutional violations complained of by Plaintiff were a highly predictable consequence of the failure to have such mechanisms in place.

(Doc. 1, PageID: 26, ¶¶s 165-69).

Again, the lack of specificity in these allegations (even assuming they are relevant to Plaintiff's allegations[1]) make it impossible to discern the plausibility of Plaintiff's claim. These allegations could have occurred after the investigation of Plaintiff, which would be improper to support Plaintiff's theory. *See Wright v. City of Euclid*, 962 F.3d 852, 881 n.1 (6th Cir. 2020) (certain instances of unconstitutional behavior "cannot establish that the Euclid Police Department had a track record of excessive force *at the time of [Plaintiff's] constitutional injury* because they all occurred after the incident with Plaintiff") (emphasis added). Even if the Court could reasonably infer a pattern based on this evidence, it does not support the claim that the same custom has existed unabated since the 1960s and 1970s until the investigation of Plaintiff.

---

[1] For example, Plaintiff neither alleges that the Defendant Officers used excessive force nor beat confessions out of witnesses during their investigation of the Clark murder.

As a final attempt to save his Complaint, Plaintiff relies on evidence of a 'code of silence' that existed within the Cleveland Department of Police. (*See* Doc. 1, ¶¶ 138, 174 & 175).[2] While allegations of a 'code of silence' may support a *Monell* claim against a municipality, *see Spearman v. Elizondo*, 230 F. Supp. 3d 888 (N.D. Ill. 2016), those allegations must include sufficient facts to buttress the claim. *See Goldwire v. City of Philadelphia*, 130 F. Supp. 3d 936, 944-45 (E.D. Pa. 2015) ("while allegations regarding a 'code of silence' among police officers may support a *Monell* claim, here, the only factual allegation is that there is, and has been, a 'code of silence' among police officers to conceal unconstitutional conduct, and that alone is not enough"). Otherwise, a term such as 'code of silence' is insufficiently detailed to state a *Monell* claim against a municipality. *Sampson v. City of Cleveland*, 2020 WL 7238427, *3 (N.D. Ohio Aug. 20, 2020). Unlike *Spearman*, where the plaintiff buttressed her allegation of code of silence with six specific and date allegations, 230 F. Supp. 3d at 892, Plaintiff here does not support his code of silence allegations with any detailed facts. Instead, Plaintiff relies on the evidence of the unnamed officer discussed above in Complaint paragraphs 166, 167 and 168. These allegations cannot support the code of silence claim for the same reason they cannot support the overarching policy to procure wrongful convictions.

Plaintiff also relies on the Sixth Circuit's decision in *Jackson* to support his argument that his factual allegations are sufficient to state a claim for relief under *Monell*. In doing so, Plaintiff argues that "the Sixth Circuit…has already acknowledged that evidence exists to support a *Monell* claim against the City of Cleveland…for the same types of misconduct at issue in this case." (Doc. 23, PageID: 206). This Court is intimately familiar with the *Jackson* case. But

---

[2] Essentially, Plaintiff alleges that the Defendant Officers maintained a code of silence, refused to report on one another, and knew that other officers would not report on their own misdeeds. Because of this, Defendant Officer's felt secure to violate Plaintiff's civil rights.

Plaintiff's case is not *Jackson*. Three main differences are worth highlighting. First, the *Jackson* case stemmed from an investigation that occurred in 1975. *Jackson*, 925 F.3d at 803-05. As has been the emphasis throughout this Opinion, the investigation and prosecution of Plaintiff occurred in 2004 — nearly 30 years later.

Second, not once does the *Jackson* court cite any of the evidence that Plaintiff relies on here — Mayor Stokes' autobiography, the Cleveland Foundation Report, the Cleveland Crime Commission Report, or the Public Services Report. This is more eye-opening considering the investigation of Mr. Jackson occurred during the same period as this evidence was published.

Finally — and most importantly — the *Jackson* court focused on a specific policy that allegedly violated Mr. Jackson's rights, that being General Police Order 19-73. *Jackson*, 925 F.3d at 829. After contextualizing GPO 19-73 with other *contemporaneous evidence* — the Cleveland Police Manual (1975) and Ohio Rule of Criminal Procedure (1975) — the *Jackson* court concluded that together, the specific rules "could be understood to authorize Cleveland officers to withhold exculpatory witness statements from prosecutors" and allowed the matter to proceed to the jury. *Id.* at 834. Here, Plaintiff attacks no specific policy. Instead, he recites lengthy paragraphs regurgitating *Monell* standards for liability. These sorts of conclusory allegations cannot support a *Monell* claim against the City.

The case of *Osberry v. Slusher*, 750 Fed. App'x 385 (6th Cir. Sept. 13, 2018) is instructive. In *Osberry*, the Sixth Circuit ultimately allowed a complaint to proceed under a *Monell* theory against a police chief and the City of Lima. *Osberry*, 750 Fed. App'x at 398. The *Osberry* court however was skeptical — it accepted the plaintiff's allegations of six prior, similar instances in the past five years, and ultimately found these allegations sufficient. *Id.* But unlike *Osberry*, Plaintiff here has not provided any specifics to support his claims. The nearest piece of

evidence timewise is 30 years prior. Because of this, the Court cannot test the plausibility of Plaintiff's allegations.

Accordingly, Plaintiff's Complaint fails to state a plausible claim for relief under *Monell* against the City of Cleveland.

**D.      Plaintiff's Request for Leave to File an Amended Complaint**

Twice at the very end of Plaintiff's briefing, he makes the following request: "should the Court find any deficiency in Plaintiff's complaint, Plaintiff asks that the Court grant him leave to file an amended complaint." (Doc. 23, PageID: 219; Doc. 26-1, PageID: 243). Plaintiff has not filed a formal Motion for Leave to Amend on the docket.

"Requesting leave to amend under Federal Rule of Civil Procedure 15(a) is governed by Rule 7(b), which requires that a motion shall state with particularity the grounds therefor." *Evans v. Pearson Eters.*, 434 F.3d 839, 853 (6th Cir. 2006) (citations omitted). This remains true even though courts "should freely give leave to amend when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Patterson v. Novartis Pharms. Corp.*, 451 Fed. App'x 495, 499 (6th Cir. Aug. 23, 2011). The Sixth Circuit has held numerous times that a party does not make a particular request by requesting leave to amend as an aside in opposition to a dispositive motion. *Begala v. PNC Bank*, 214 F.3d 776, 784 (6th Cir. 2000) ("What plaintiffs may have stated, almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is…not a motion to amend"); *Evans*, 434 F.3d at 853 (a single sentence request leave to amend in an opposition to a motion to dismiss did not provide grounds nor a proposed amendment and therefore not stated with particularity); *Patterson*, 451 Fed. App'x at 499 (the mention of the possibility to amend in the last line in the opposition brief is not a sufficiently particular request).

Based on the above, Plaintiff's request to amend is improper. However, the Court will afford Plaintiff the chance to amend his Complaint given the Court's narrow ruling herein. Therefore, if Plaintiff desires to amend his Complaint against the City, he shall file a Motion for Leave to Amend the Complaint by October 14, 2021 with an attached Amended Complaint. The Motion for Leave to Amend must state with particularity the reasons why the Court should grant relief. The City shall then have fourteen days from the date of filing to file an Opposition. If the City does file an Opposition, Plaintiff shall have seven days to file a Reply.

### III. Conclusion

"*Monell* is a case about responsibility." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986). To allow Plaintiff's Complaint to proceed as drafted would subject the City of Cleveland to a theory of liability just because it employed Defendant Officers. The Supreme Court has consistently rejected this application of *respondeat superior* in this context. *Monell*, 436 U.S. at 691; *Brown*, 520 U.S. at 403 ("We have consistently refused to hold municipalities liable under a theory of *respondeat superior*") (collecting cases). The Court does the same here.

Accordingly, the Court **GRANTS** the City's Motion for Judgment on the Pleadings. (Doc. 14). And as discussed above, Plaintiff shall have until October 14, 2021 to file a Motion for Leave to Amend the Complaint.

**IT IS SO ORDERED.**

 s/ Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**Senior United States District Judge**

**Dated: September 30, 2021**