UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RU-EL SAILOR, | ) | CASE NO. 1:20CV660 |
| | ) | |
| Plaintiff, | ) | SENIOR JUDGE |
| | ) | CHRISTOPHER A. BOYKO |
| vs. | ) | |
| | ) | |
| CITY OF CLEVELAND, et al., | ) | OPINION AND ORDER |
| | ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, SR. J.:**

Before the Court is Plaintiff Ru-el Sailor's Motion for Leave to File Amended Complaint.

(Doc. 33).  Because the proposed Amended Complaint could withstand a motion under Rule

12(b)(6), the Court **GRANTS IN PART** Plaintiff's Motion.  The Court also **GRANTS** Plaintiff's

Motion to Substitute (Doc. 38) as unopposed.

For clarity of the record, Plaintiff shall file the Amended Complaint with the substituted

party as a stand-alone entry on the Docket.

## I. BACKGROUND FACTS

Plaintiff seeks to amend his Complaint after the Court granted Defendant City of

Cleveland's Motion for Judgment on the Pleadings.  (*See* Doc. 31).  In its Rule 12(c) Order, the

Court found that Plaintiff failed to provide sufficient facts to support his *Monell* claim against the

City.  Specifically, the Court found that Plaintiff failed to allege plausible facts that an unlawful

custom or policy continued unabated from the 1960s and 1970s through the investigation that led

to Plaintiff's wrongful conviction.

In his Motion for Leave to Amend, Plaintiff claims that the Amended Complaint "adds facts which establish these patterns with added detail including evidence of these practices over time, including up to and beyond the time of Plaintiff's prosecution." (Doc. 33, PageID: 276). Plaintiff provided new allegations supporting the following three unlawful policies or customs that existed at the time of Plaintiff's wrongful conviction:

1)  *Brady* Violations – "It was a widespread, clear, and persistent pattern and practice of the officers in the CDP [to] destroy and/or not turn over investigative notes, including statements of witnesses, taken during the course of an investigation." (Doc. 33-1, PageID: 298, ¶ 150).

2)  Coercive Witness Practices – "[T]he CDP has a documented historical practice reaching back to the 1970s of using suggestive and/or coercive identification procedures and of coercing witnesses to testify in a manner inconsistent with the truth." (*Id.*, PageID: 302-03, ¶ 151).

3)  Code of Silence – "Defendant City and the CDP have a long history – from well before Sailor's prosecution and continuing beyond his conviction – of failing to supervise, investigate, and discipline allegations of officer misconduct." (*Id.*, PageID: 310, ¶ 164; *see also* PageID: 313, ¶ 175 "Defendant City of Cleveland's training, supervisory, and disciplinary practices supported this code of silence, by protecting from discipline officers who engaged in misconduct and teaching police officers that they must abide by the code").

The City opposes Plaintiff's request for leave to amend. (Doc. 34). According to the City, the proposed amendment would be futile because the new allegations could not withstand a Rule 12(b)(6) attack. (*Id.*). Plaintiff filed a Reply supporting his position that the proposed amendment would not be futile. (Doc. 35).

## II. LAW & ANALYSIS

### A.        Rule 15 & *Monell* Liability

Civil Rule 15 tells district courts that they "should freely give leave [to amend] when

justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, this liberal amendment policy is not

without limits.  The Sixth Circuit has observed: "a motion to amend a complaint should be

denied if the amendment…would be futile."  *Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir.

2010).  "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6)

motion to dismiss."  *Cicchini v. Blackwell*, 127 Fed. App'x 187, 190 (6th Cir. Mar. 24, 2005)

(citing *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 518 (6th Cir. 2001).  It is also well-settled

that "federal courts have a strong preference for trials on the merits."  *Clark v. Johnston*, 413

Fed. App'x 804, 819 (6th Cir. Jan. 25, 2011).

Before holding the City liable for the actions of its Defendant Officers, Plaintiff must

establish that there "exist[ed]…a custom of tolerance or acquiescence of federal rights

violations."  *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019) (quoting *Burgess v.

Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).  This requires demonstrating that the custom is so

"extensive as to still be attributable to the municipality as a whole."  *Lipman v. Budish*, 974 F.3d

726, 748 (6th Cir. 2020); *Bd. of Cty. Comm'r of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997)

(the relevant custom must be "so widespread as to have the force of law").  This also entails

showing that a "clear and persistent pattern of unlawful activity" existed and "that [the city]

tacitly approved" the activity.  *Howse v. Hodus*, 953 F.3d 402, 411 (6th Cir. 2020).  With all this

in mind, it also bears repeating that *Monell* claims are not subjected to a higher pleading

standard, *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163,

168 (1993), but rather the well-known *Twombly* and *Iqbal* plausibility standard.  *Bailey v. City of Ann Arbor*, 860 F.3d 382, 388-89 (6th Cir. 2017).

The City attacks Plaintiff's Motion to Amend on the grounds that the proposed amended complaint would be futile.  While the Court agrees in part, Plaintiff's proposed amendment *could* survive a Rule 12(b)(6) attack.  Therefore, the Court grants Plaintiff's Motion to Amend in part.

### B.    *Brady* Violations

Plaintiff's amended allegations to support his *Brady* violation could survive a Rule 12(b)(6) Motion and thus may go forward.  The essence of Plaintiff's theory claims that police officers in Cleveland routinely fail to turn over their investigative notes and witness statements to prosecutors.  Plaintiff supports this theory by adding allegations that deal with: (1) the 1975 investigation at issue in *Jackson*; (2) the 1995 investigation of Anthony Lemons, where officers failed to disclose various reports and information prior to Lemons' trial; (3) the July 2002 conviction of Michael Buehner, "just months before the murder of Omar Clark," where police withheld "potentially exculpatory interviews with witnesses from the defense and prosecution;" (4) the 2007 conviction of Michael Sutton, where police withheld potentially exculpatory information; and (5) testimony from Detective Veverka in this case that the same practices found problematic in *Jackson* continued through the investigation of Plaintiff.  Specifically, Veverka's handwritten notes were not added to the file sent to prosecutors.  (*See generally*, Doc. 33-1, PageID: 298-302, ¶¶ 150(a)-(f)).

These additional allegations demonstrate that Plaintiff's claim could withstand a motion to dismiss.  While Plaintiff alleges a custom of *Brady* violations that extended over 30 years, the most recent allegations of the Buehner conviction and Veverka's testimony make this claim plausible.  Specifically, Veverka testified that "these practices" continued throughout the

investigation into Omar Clark's murder.  While vague, the Court affords Plaintiff the benefit of the doubt at this stage.

Therefore, Plaintiff's allegations that an unlawful custom of *Brady* violations existed can proceed forward to discovery.

### C.       Coercive Witness Practices

Likewise, the Court finds that Plaintiff's additional allegations concerning his theory that an unlawful policy of coercive witness practices could survive a Rule 12(b)(6) Motion.  Plaintiff buttresses his second theory of an unlawful policy on (1) the 1975 *Jackson* investigation, coercing a minor into certain testimony; (2) the 1988 conviction of Michael Green, where officers used a suggestive photo lineup; and (3) the 1995 conviction of Anthony Lemons, where officers used a suggestive identification procedure.  (*See generally*, Doc. 33-1, PageID: 302-304, ¶¶ 151(a)-(c)).

While the Court understands the City's arguments about time frame and similarity of procedures, the Court will not hold Plaintiff to such a high standard at this stage.  Plaintiff must demonstrate the plausibility of his claim and he has done so here.  Moreover, given the laws preference to proceed to the merits of the matter, *Clark*, 413 Fed. App'x at 819, the Court will allow Plaintiff to proceed on his second theory of an unlawful custom.

### D.       Code of Silence

Unlike the above two unlawful policies, Plaintiff's allegations concerning the code of silence would not withstand a Rule 12(b)(6) Motion.  Plaintiff supports his code of silence theory by adding Cleveland Police Commander William Tell's testimony from the *Jackson* case. Plaintiff then summarily concludes that this code of silence continued:

> [T]hrough the time of all of the misconduct described in this complaint in relation to the prosecutions of Wiley Bridgeman,

> Ronnie Bridgeman, and Rickey Jackson, Anthony Lemons, Michael
> Buehner, Michael Sutton, Kenny Phillips, Anthony Michael Green
> – all of whom were prosecuted in cases where the misconduct of
> CDP officers was not reported by fellow officers during prosecution
> and trial, and did not come to light until years or decades later.

(Doc. 33-1, PageID: 314, ¶ 175(b)).

The Court agrees with the City and finds that these additional allegations do not plausibly demonstrate that a code of silence existed at the time of Plaintiff's investigation.  Procedurally, Plaintiff waived this claim when he failed to respond to Defendant's arguments in his Reply.  *See Humphrey v. U.S. Attorney General's Office*, 279 Fed. App'x 328, 331 (6th Cir. May 15, 2008). Plaintiff's allegations also fail on their merits.  He relies exclusively on testimony that concerned a specific point in time – well before the investigation into Plaintiff.  Plaintiff then asks the Court to infer that, because all these other wrongful convictions occurred, they must have resulted from the City's unwritten 'code of silence' policy.  The Court will not make that inference but rather find that Plaintiff has not provided sufficient allegations to demonstrate a plausible theory of code of silence.

Therefore, Plaintiff may not proceed on a theory that an unlawful code of silence existed through the investigation of Plaintiff.

- 7 -

### III. CONCLUSION

Since the Court finds that Plaintiff's Amended Complaint could withstand a Rule 12(b)(6) Motion at this time, the Court **GRANTS IN PART** Plaintiff's Motion for Leave to Amend the Complaint. (Doc. 33). Plaintiff shall file the Amended Complaint on the Docket as a separate entry and substitute the appropriate party.

**IT IS SO ORDERED.**

 s/ Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**Senior United States District Judge**

**Dated: February 10, 2022**