IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Ru-El Sailor,** | ) | Case No. 1:20-CV-00660 |
| | ) | |
| **Plaintiff,** | ) | Judge David A. Ruiz |
| | ) | |
| vs. | ) | |
| | ) | |
| **City of Cleveland,** *et al.***,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANT CITY OF CLEVELAND'S
## MEMORANDUM IN SUPPORT

Nearly four years ago Plaintiff Ru-El Sailor sued the City of Cleveland and its former officers. (Compl., ECF No. 1). Despite lying during his criminal trial, he blames these defendants for his conviction for the murder of Omar Clark. (*See id.*). Fact discovery has been nearly complete since March 2022. (Joint Status Report, ECF No. 42). And this Court has already stayed discovery against Cleveland so that the claims against the officers may proceed. (Opinion and Order, ECF No. 56).

But Sailor refuses to prosecute his case. He instead noticed a Rule 30(b)(6) deposition of Cleveland. (Exhibit A, Deposition Notice). The topics range from "[p]rosecution of suspects for the murder of Omar Clark" to the homicide investigation. (*Id.*).

Because this Court has already stayed discovery, it should grant Cleveland a protective order. Alternatively, Sailor's noticed deposition is duplicative and overly burdensome, so this Court stay discovery for this reason too.

1

I.  **BACKGROUND**

Sailor lied in 2002 to create an alibi for his best friend. After accepting a perjury charge, he was released and initiated this action. A discovery dispute is now ripe for this Court.

**A. Omar Clark is murdered, and Cleveland's officers investigate.**

The night of November 16, 2002, a group of friends gathered to drink, including Nichole Hubbard and Omar Clark. (First Amended Complaint ("FAC"), ¶ 15, ECF No. 43, PageID # 441). A few left to get "wet cigarettes." (*Id.*, ¶ 18). That is, marijuana cigarettes dipped in a mix of embalming fluid and PCP.[1]

After smoking, there was a dispute over payment. (*Id.*, ¶ 19). Nichole demanded $20 for the wet cigarette, but only $10 was offered. (*Id.*, ¶ 20). Nichole called her brother, Cordell Hubbard, to complain. (*Id.*, ¶ 21). Hubbard and others arrived. (*Id.*, ¶ 26). Tensions were high. (*Id.*, ¶¶ 25, 26). Shots were fired. (*Id.*). Mr. Clark was hit, and later died at the hospital. (*Id.*, ¶ 31). The police investigation started shortly after the murder. (*Id.*, ¶ 35). Hubbard and his best friend, Sailor, were identified as suspects. (*Id.*, ¶¶ 35, 70).

**B. Sailor says he was with Hubbard, and both are convicted.**

Sailor, Hubbard, and Nichole were eventually indicted and then tried together. *See State v. Hubbard, et al.*, CR-435700. Neither Hubbard nor Nichole testified, though multiple witnesses and Nichole's cellphone records confirmed their involvement. Another witness confirmed this version too. (Exhibit B, Trial Transcript, Vol. 6, tr. 1037-1065). This witness saw one person

---

[1] Christopher R. Gilbert, DO, *et al., Smoking Wet: Respiratory Failure Related to Smoking Tainted Marijuana Cigarettes*, TEX. HEART. INST. J., v.40; 2013, *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3568288/#:~:text=%E2%80%9CWet%E2%80%9D%20cigarettes%20are%20conventional%20marijuana,or%20laced%20with%20additional%20substances (last accessed November 15, 2023).

holding a cellphone arguing about his sister and another with a gun. (*Id.*, tr. 1041:5–1046:9). He also identified the shooter as Sailor. (*Id.*, tr. 1065:8).

Sailor then testified. (Exhibit C, Trial Transcript, Vol. 9, tr. 1544:1–1572:25). While he denied involvement, he explained that he spent the night with Hubbard, including trips to multiple bars. (*Id.*, tr. 1547:20–1553:5). They were together the whole night:

> Q: So you are in each other's company throughout that entire set of events?
>
> A: Yes.

(*Id.*, tr. 1572:12–14). Hearing this testimony, the jury convicted Hubbard and Sailor of murder. (Exhibit D, Trial Transcript, Vol. 10, tr. 1798:1–1800:13).

### C. Sailor blames others for his conviction and brings this litigation.

During post-conviction proceedings, Hubbard tried to protect Sailor. Hubbard testified that Sailor was not with him and his sister that evening. (Exhibit D, Trial Transcript, Vol. 10, tr. 1815:4–7). The State of Ohio eventually dismissed all counts against Sailor except those amended to include perjury and obstructing justice. (FAC, ¶ 202, ECF No. 43). The State of Ohio made the amendments because Sailor lied during the trial, presumably to cover for Hubbard. (*Id.*, ¶ 203).

Still, Sailor blames his conviction "100 percent" on everyone else. (Exhibit E, Deposition of Ru-El Sailor, tr. 171:17–172:21). So Sailor then filed a complaint against the City of Cleveland and the officers allegedly involved in the investigation. (Compl., ECF No. 1). The Complaint, filed nearly four years ago, listed ten counts, including state and federal claims. (*See id.*).

This Court granted judgment to Cleveland on the *Monell* claims. (Opinion and Order, ECF No. 31). Sailor then moved to amend the Complaint. (Mot., ECF No. 33). That motion was denied in part. (Opinion and Order, ECF No. 40). This Court found that Sailor failed to

plausibly plead some of the *Monell* pathways. (*Id.*). Sailor then filed his amended complaint, and this has been the operative complaint since March 2022. (FAC, ECF No. 43).

### D. This Court stays discovery against Cleveland.

By around that same time, fact discovery was nearly complete. (Joint Status Report, ECF No. 42). As the Parties confirmed, the only thing left was to "schedule one remaining deposition," that of a defendant officer. (*Id.*). That is because Sailor's counsel had deposed these people: Eugene Jones, Rick Farinacci, Sahir Hasan, Harry Matlock, Barnette Brown, Ronald Snipe, Andrew Desatnik, and Henry Vverka. This included all the living defendants except for one. (*See* FAC, ECF No. 43, PageID # 438). It also included the detectives with personal knowledge of the homicide investigation.

Still, to ensure that discovery did not creep to include Cleveland, the city moved to stay discovery. (Mot., ECF No. 48). As Cleveland explained, it is a herculean task to become familiar with all the policies in effect in 2002, as well as the "all the facts of the investigation itself," among other preparatory work. (*Id.*, PageID # 544). Sailor opposed the motion, arguing that bifurcation would "lengthen the proceedings here." (Opp., ECF No. 50, PageID # 557). That same day, Sailor noticed Cleveland for deposition. (Notice, ECF No. 51-1). Cleveland replied that one fact witness remains, so Sailor is nearly ready to proceed to summary judgment. (Reply, ECF No. 51).

This Court then stayed discovery against Cleveland. (Opinion and Order, ECF No. 56). This Court noted "with certainty" that the "discovery sought by Plaintiff from the City is extensive." (*Id.*, PageID # 589). This Court thus found the noticed deposition disproportional to the needs of the case, especially considering that Sailor proposed "potentially needless and burdensome discovery . . . ." (*Id.*) (quotation marks and citation omitted).

### E. Attorneys for Sailor show there is no difference between fact discovery and *Monell* discovery.

Cleveland's worry about extensive discovery has been confirmed in other cases. Sailor's counsel has conducted many depositions of Cleveland, and these depositions show that there is no distinction between fact discovery and *Monell* discovery against Cleveland. Another court recently considered (and denied) federal and state claims against Cleveland and former officers. *Isaiah Andrews's Est. Adm'r v. City of Cleveland*, No. 1:22-CV-00250, 2023 WL 3025096, at *17 (N.D. Ohio Apr. 20, 2023). In that litigation, Cleveland provided a witness under Fed. R. Civ. P. 30(b)(6), Martin Flask. (Exhibit F, Deposition Notice).

Mr. Flask's testimony showed how policies and procedures and the homicide investigation interact. For example, Mr. Flask was first asked about a policy related to investigations, and then was immediately asked how that policy interacted with the underlying homicide investigation:

> Q. All right. Looking at the same page of section 1.10, titled Arresting Officer, it states, "An arresting officer is responsible for all further investigation of a crime in which an arrest is made except in those cases the arrest is made at the specific request of another investigating officer, in which case, the arresting officer obtains the investigative responsibility."
>
> Do you see that?
>
> A. Yes, I do.
>
> Q. So that sentence essentially describes who the lead detective is in a case, right?
>
> A. Detectives in the Homicide Unit act as a team in the investigation itself. Although it may have started with one specific team, that crime was, whatever the incident was, would be also investigated by other detectives at the direction of a superior officer.
>
> **Q. But according to this section 1.10, this is describing, essentially, the team of lead detectives on the case, right?**

\* \* \*

> Q. Okay. **So in the matter that your deposition pertains to litigation of *Andrews, v. City of Cleveland, et al.*, for the underlying criminal investigation, that would be detective Hubbard and Rowell who were in that role that you just described, right**?
>
> A. Please repeat the question.
>
> Q. Sure. In the investigation of the murder of Regina Andrews, it would be Detectives Hubbard and Rowell who would be in the role that you just described as responsible detectives, right?
>
> A. If we are talking about the Andrews investigation, based on my review of the file itself, it appears that they were, in fact—they had the primary responsibility for the investigation.

(Exhibit G, Flask deposition, Vol. 1, tr. 154:14–156:18) (emphasis added).

### F. Sailor still seeks a Fed. R. Civ. P. 30(b) from Cleveland as "fact discovery."

Sailor's sole remaining officer deposition—identified nearly two years ago—remains uncompleted. Instead, soon after this Court's order, Sailor again noticed a deposition of Cleveland. (Exhibit A, Notice dated June 30, 2023). The Notice contained a new topic, Topic 9, with seven subparts. (*Id.*). The subparts ranged from the "actions by the Cuyahoga County's Prosecutor's Conviction Integrity Unit" to the murder of Omar Clark. (*Id.*).

Sailor's counsel suggested that the deposition of Cleveland was "fact discovery," not *Monell* discovery prohibited by this Court order. (Exhibit H, Emails dated June 30, 2023). Cleveland explained that no such distinction existed. (*Id.*). After a meet-and-confer and then a status update with this Court, the Parties set a briefing schedule. (Joint Motion, ECF No. 61). Cleveland now moves for a protective order.

## II. STANDARD OF REVIEW

Rule 26(c) governs protective orders. That Rule authorizes the Court "for good cause shown" to issue a protective order to protect a party or person "from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). In deciding whether to grant a

protective order, a district court must balance the parties' competing interests and compare the hardships of granting or denying the request. *York v. Am. Med. Sys., Inc.*, No. 97-4306, 1998 WL 863790, at *4 (6th Cir. Nov. 23, 1998).

Generally, the burden of establishing good cause for a protective order rests with the movant. *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001) (citation omitted). But if a protective order is already in place, then the burden shifts to the party attempting modification. *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 315 F.R.D. 103, 107 (D.D.C. 2016) (citation omitted).

A trial court can, in its sound discretion, grant a motion for a protective order. *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 227 (6th Cir.1996). "District courts have broad discretion over docket control and the discovery process." *Pittman v. Experian Info. Sol., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018) (citation omitted). Indeed, "'[i]t is well established that the scope of discovery is within the sound discretion of the trial court.'" *Id*. (quoting *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993)).

Because this Court already stayed discovery against Cleveland, this Court should issue a protective order regarding Sailor's noticed Fed. R. Civ. P. 30(b)(6) deposition.

### III.    ANALYSIS

Because this Court already stayed the discovery sought by Sailor, and it would duplicative and burdensome for Cleveland to prepare a witness, this Court should grant Cleveland a protective order.

### A. Because this Court already stayed discovery, this Court should grant Cleveland a protective order.

This Court already stayed discovery against Cleveland, and Sailor cannot show good cause for this Court to modify the stay. An underlying unconstitutional act is the first

requirement of a *Monell* claim. *Martin v. Maurer*, 581 F. App'x 509, 512 (6th Cir. 2014). Because of this condition precedent, "courts often stay discovery on *Monell* claims until enough information is available on the individual claims" to "assess the strength of a claim that a constitutional violation actually took place." *Oliver v. City of New York*, 540 F. Supp. 3d 434, 436 (S.D.N.Y. 2021); *see also Mayer v. Cuyahoga Cnty.*, No. 1:19-CV-2620, 2021 WL 164216, at *2 (N.D. Ohio Jan. 19, 2021). This is particularly true given the burdensome nature of *Monell* discovery.

This Court already stayed discovery for these reasons. (*See* ECF No. 56). As this Court noted, the discovery proposed by Sailor is "extensive," and staying discovery preserved the resources of the Parties and the Court. (*Id.*, PageID # 589). Moreover, parallel litigation bore out this Court's concern. In one case, *Andrews*, Judge Gwin granted summary judgment without relying on the extensive discovery provided by Cleveland. *Isaiah Andrews's Est. Adm'r v. City of Cleveland*, No. 1:22-CV-00250, 2023 WL 3025096, at *17 (N.D. Ohio Apr. 20, 2023). And in another case, Cleveland and opposing counsel have spent more than a year engaged in discovery. *See Jackson v. City of Cleveland*, Case No. 1:21-cv-01679. Cleveland alone spent hundreds of hours of attorney and non-attorney time preparing for depositions noticed under Fed. R. Civ. P. 30(b)(6) and produced thousands of pages of documents.

Here, despite this Court's stay, Sailor again seeks a deposition from Cleveland. (Exhibit A, Deposition Notice). He offers no good cause in support. (*See* Exhibit H, Emailed dated June 30, 2023). Instead, he tries to distinguish *Monell* discovery from fact discovery. (*Id.*, p. 2) This is a red herring.

First, Cleveland moved for a stay anticipating the burden "learn all of the facts of the investigation itself." (Mem., ECF No. 48, PageID # 544). So this Court's order already

8

considered Sailor's noticed discovery. (Exhibit A, Notice, Topic 9a). Second, Sailor's counsel has issued deposition notices before. (Exhibit F, Notice re *Andrews v. City of Cleveland*; Exhibit I, Notice re *Jackson v. City of Cleveland*). Both notices included the underlying homicide investigation topic under the guise of *Monell* discovery. (Exhibit F, p. 5; Exhibit I, p. 12). Opposing counsel's past therefore shows that the current topic cannot be supposed "fact discovery" excluded from this Court's prior stay. Third, the deposition of Martin Flask shows that there is no difference between *Monell* discovery against Cleveland and so-called fact discovery, especially for a deposition. (Exhibit G, Flask Deposition). The only the value Cleveland might add is the interaction between the facts and the policies—a topic the Parties agree is stayed.

Because there is no difference between "fact discovery" and "*Monell* discovery," and Sailor's noticed deposition falls under this Court's earlier stay, this Court should find that Sailor lacks good cause to reopen this phase of the litigation.

### B. Alternatively, the homicide investigation is too duplicate and burdensome a topic, so this Court should grant Cleveland a protective order (Topic 9a).

This Court should grant the protective order because it already stayed the discovery Sailor seeks through his revised deposition notice. (Opinion and Order, ECF No. 56). Alternatively, this Court should find that the underlying homicide investigation is too duplicative and burdensome a topic as noticed by Sailor.

This Court should grant a protective order because the topic is duplicative of records already produced and it would be burdensome for Cleveland to prepare a witness. A court "must" limit discovery if the discovery sought is "duplicative" or can be "obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Courts therefore regularly limit Rule 30(b)(6) depositions when the needed facts

9

are in the record. *See, e.g.*, *White v. Wal-Mart Stores E., L.P.*, No. 518CV00034TBRLLK, 2018 WL 5083891, at *4 (W.D. Ky. Oct. 18, 2018) (granting protective order when noticed topic is duplicative of record); *Equal Emp. Opportunity Comm'n v. Army Sustainment, LLC*, No. 120CV00234RAHSRW, 2021 WL 6884912, at *3 (M.D. Ala. Oct. 25, 2021) (granting protective order when noticed topic is duplicative of record); *Jones v. Hernandez*, No. 16-CV-1986-W(WVG), 2018 WL 539082, at *2 (S.D. Cal. Jan. 23, 2018), *objections overruled*, No. 16-CV-1986 W (WVG), 2018 WL 1981207 (S.D. Cal. Apr. 27, 2018).

Here, this Court should grant a protective order because the requested deposition about the homicide investigation is duplicative and burdensome. First, it would be duplicative because facts about the "investigation of the murder of Omar Clark" are already in the record. Sailor's theory is that former-officer Eugene Jones somehow tainted the homicide investigation. (FAC, ¶¶ 46–70). Sailor's counsel has a copy of the investigative file. And Jones has already been deposed. (Exhibit J, Deposition of Eugene Jones). He explained that he was not a homicide detective, and had little interaction with the Homicide Unit, including as it relates to this investigation. (*Id.*, tr. 52:14). Instead, in this case his interaction was at the request of the prosecutor. (*Id.*). The homicide detectives were also deposed. Finally, Sailor has a copy of the trial transcript. (*See, e.g.*, Exhibits B–D). Between the investigative file, depositions, and trial records, it is unclear what remains for Cleveland to provide testimony.

Additionally, it would be burdensome for Cleveland to prepare a witness to testify about the homicide investigation. A witness would need to review a dense homicide file. Then read thousands of pages of deposition transcripts. And finally read the ten-volume trial transcript, more than 1,000 pages on its own. This is a large task. So that the witness could have some

10

foundational knowledge, a homicide detective would be a logical choice for a designee. But that would mean one fewer homicide detective solving homicides. This too burdens Cleveland.

Because Sailor asks Cleveland to prepare a witness on a homicide investigation already developed in the record through documents, depositions, and trial transcripts, this Court should grant a protective order.

### C. Alternatively, the remaining topics are too burdensome, so this Court should grant Cleveland a protective order.

The remaining topics are even more off the mark, so this Court should grant a protective order to Cleveland.

#### 1. "Presentation of suspects and/or charges to prosecutors for the murder of Omar Clark." (Topic 9b).

There are several issues with this proposed topic. First, a few terms are unclear. For example, it is unclear what Sailor means by the "presentation of suspects and/or charges" by the prosecutor. It is unclear if the term "prosecutor" refers to the prosecutor handling the trial or the grand jury prosecutor. Second, while the meaning of "presentation" is unclear, this topic is irrelevant to Sailor's underlying claims. Third, as discussed above, this topic would be duplicative and burdensome because Sailor already deposed the investigative detectives. (*See, e.g.*, Exhibit K, Deposition of Veverka, tr. 49). Fourth, the best source of information for this topic is the Cuyahoga County Prosecutor's Office, not Cleveland.

#### 2. "Prosecution of suspects for the murder of Omar Clark." (Topic 9c).

Cleveland did not prosecute Omar Clark. This was instead done by the Cuyahoga County Prosecutor's office. Cleveland therefore lacks the ability to prepare a witness on the prosecution of suspects for the murder of Omar Clark, and forcing Cleveland to do so would be unduly burdensome and duplicative of the trial transcript and any records maintained by Cuyahoga County.

      3. **"Investigation and related actions by the Cuyahoga County Prosecutor's Conviction Integrity Unit in relation to the murder of Omar Clark." (Topic 9d).**

Cleveland does not operate the Cuyahoga County Prosecutor's Conviction Integrity Unit. Cleveland therefore lacks the ability to prepare a witness to testify on this subject. Forcing Cleveland to do so would be unduly burdensome.

      4. **"Communications from and to Amy Spence (NKA Amy Sailor) concerning records requests and responsive records relating to Ru-El Sailor and/or the murder of Omar Clark." (Topic 9e).**

There are several problems with this topic. First, Amy Sailor, not Cleveland, is the best source of information about her public records requests. Cleveland has no ability or reason to know about the all the records requests she sent to and from various public bodies. Second, there are no public records actions before this Court, and Amy Sailor is not a party, so Mrs. Sailor's public records requests are irrelevant to this action. Finally, to the extent this topic seeks to determine why records were to provided to Mrs. Sailor in response to her public records request, this seeks information protected by the attorney-client and privilege and work-product doctrine and is "discovery on discovery," so it is not a proper subject for a deposition. *See, e.g.*, *Black v. W. Virginia State Police*, No. 3:22-CV-00096, 2023 WL 4834948, at *10 (S.D.W. Va. July 27, 2023) (granting protective order regarding proposed Rule 30(b)(6) deposition, including because it seeks discovery on discovery).

      5. **"Communications from and to persons acting on behalf of Ru-El Sailor and/or in his interest concerning records requests and responsive records related to Ru-El Sailor and/or the murder of Omar Clark." (Topic 9f)**

There are several problems with this topic. First, it is unclear what communications to and from "persons acting on behalf of Ru-El Sailor" means. Cleveland has no ability or reason to know about the all the records requests sent by everyone tied to Sailor to various public bodies. Second, there are no public records actions before this Court, so any records requests (and

responses) are irrelevant to this action. Finally, to the extent this topic seeks to determine how Cleveland selected records to provide in response to public records requests, this seeks information protected by the attorney-client and privilege and work-product doctrine as "discovery on discovery," so it is not a proper subject for a deposition. *See, e.g.*, *Black v. W. Virginia State Police*, No. 3:22-CV-00096, 2023 WL 4834948, at *10 (S.D.W. Va. July 27, 2023) (granting protective order regarding proposed Rule 30(b)(6) deposition, including because it seeks discovery on discovery).

6. **"Vacating of Ru-El Sailor's conviction for the murder of Omar Clark." (Topic 9g)**

Prosecutorial decisions for homicides are made by the Cuyahoga County Prosecutor's Office. Cleveland therefore cannot prepare a witness to testify about Sailor's initial conviction or his later indictment for perjury. Forcing Cleveland to do so would be unduly burdensome.

## IV. CONCLUSION

Because this Court already stayed discovery, and Sailor's noticed deposition would be duplicative and burdensome, this Court should grant Cleveland a protective order.

Respectfully submitted,

MARK GRIFFIN (0064141)
Law Director

*s/ Matthew R. Aumann*
William M. Menzalora (0061136)
CHIEF ASSISTANT DIRECTOR OF LAW
Gilbert E. Blomgren (0065240
Matthew R. Aumann (0093612)
ASSISTANT DIRECTORS OF LAW
City of Cleveland, Department of Law
601 Lakeside Avenue E., Room 106
Cleveland, OH  44114
Telephone: (216) 664-2675
wmenzalora@clevelandohio.gov

gblomgren@clevelandohio.gov
maumann@clevelandohio.gov

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties through the Court's electronic filing system. Parties may access this filing through the Court's system.

*s/ Matthew R. Aumann*
Matthew R. Aumann (0093612)