1808

1   THURSDAY MORNING SESSION, JULY 24, 2003

2                    - - - - -

3              THE COURT:    All right.  We're here on

4   Case No. 435700, the State of Ohio vs. Cordell Hubbard,

5   Ru-el Sailor, and Nicole Hubbard.

6              Are you Mr. Cordell Hubbard?

7              DEFENDANT CORDELL HUBBARD:    Yes, your

8   Honor.

9              THE COURT:    You're Mr. Ru-el Sailor?

10             DEFENDANT SAILOR:    Yes, your Honor.

11             THE COURT:    And you're Ms. Nicole Hubbard?

12             DEFENDANT NICOLE HUBBARD:    Yes.

13             THE COURT:    You're here with your

14   respective attorneys.

15             Mr. Watson, where did Mr. Mack go?  He was

16   here a moment ago.  Would you ask Mr. Mack to come on

17   out?

18             Okay.  And Mr. Mack is here for sentencing

19   purposes.

20             It's my understanding Mr. Mancino is here

21   for Appellate and post-trial motions on behalf of

22   Mr. Sailor.

23             And finally, we have Mr. James Willis here on

24   behalf of Ms. Hubbard.

25             On behalf of the State of Ohio, we have

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1803 PKG1
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

11/16/2020 Page 1803
Page 1803

1809

1    Maureen Clancy.

2              I have a motion to amend the indictment filed

3    by the State of Ohio.

4              Any objection, Mr. Watson?

5              MR. WATSON:     Yes, your Honor.

6              THE COURT:    Go ahead.

7              MR. WATSON:     I'd just indicate that I

8    did review the motion that was faxed over to me last

9    night.  I reviewed it and looked at cases relative to

10   the motion to amend.  Certainly that the State of Ohio

11   cited in the code section that -- the code section in

12   which they cited was a conspiracy statute.  I tried to

13   see where this idea of complicity to commit an offense

14   would otherwise cause an enhancement in sentence, and I

15   couldn't find any cases whereby a person had been

16   charged with a substantive offense and was charged with

17   complicity for the same offense, particularly in this

18   case where the theory was that Cordell Hubbard acted in

19   complicity.  And I would suggest to the Court that he

20   was found not guilty on the aggravated murder on the

21   complicity theory, that if she now wants to change the

22   conspiracy charge which she's charging Mr. Hubbard, or

23   wants to change it to complicity, I think at that point

24   you have an inconsistent verdict.

25             But at this time we object, your Honor, and

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

1   we believe that's out of rule, and certainly that any

2   complicity to commit a substantive offense, there should

3   be a lesser degree of penalty, irrespective of the

4   language relative to 2923.03(F), which indicates that

5   the person should be treated as a principal offender,

6   but complicity, in our judgment, has to be attached with

7   a substantive offense.

8          Thank you.

9          THE COURT:    Mr. Mack, do you have anything

10  you would like to add to that?

11         MR. MACK:    Yes, your Honor.  I was not

12  served with those motions.  I have no idea what they're

13  talking about.

14         THE COURT:    Mr. Mancino, were you served

15  with that, the motion to --

16         MR. MANCINO:    Yes, it was left at the

17  office last night.  And I would reiterate and adopt what

18  Mr. Myron Watson stated.

19         THE COURT:    All right.  Mr. Willis, do you

20  have anything you would like to add?

21         MR. WILLIS:    Yes.  I certainly object to

22  the State trying to alter the case at this late date.

23  And this is post verdict.  Admittedly the rules allow

24  for an amendment, but I think more of a showing is

25  required, and certainly we ought to have an opportunity

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1805 PKG1
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

11/16/2020 Page 1805
Page 1805

1   to respond.

2           On the other hand, I'm not seeking to have

3   this -- the sentencing delayed, but I would like to

4   reserve the right to file a post-sentencing motion

5   related to that because I have some theories with

6   reference to the ability of the State to charge somebody

7   with felony murder, and then particularly when they were

8   not there, and we know from the evidence that the

9   evidence is frail so far as they haven't shown that

10  Nicole was -- aided and abetted somebody in doing

11  something to a person that was killed.  At best -- and

12  I'm assuming that the evidence -- I'm relating on the

13  evidence that was presented -- at best, that evidence

14  allows for a belief that there was some animus from --

15  generated by her directed towards a different person,

16  not the person who was ultimately killed.

17          And when I read the prosecutor's statement, it

18  would -- I mean brief, in which she suggested there was

19  some animus against both people, there's nothing in the

20  record that supports that theory, and I need to file an

21  adequate response.

22          THE COURT:    Ms. Clancy, do you have

23  anything you would like to add to your motion?

24          MS. CLANCY:    No, your Honor.  Just that

25  this issue was raised on July 7th by the defense, number

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1806 PKG1
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

1812

1    one.

2            And number two, basically what their argument

3    is, it's sufficiency of the evidence and not whether or

4    not this is complicity or conspiracy, rather, it's a

5    typographical error or not.

6            Rather, as I outlined in my brief, it's clear,

7    under Criminal Rules 7(B) and (D,) that the State is

8    permitted to amend the code section of the indictment at

9    this time, and it's clear from all the evidence that I

10   alluded to in my brief that there was no misleading the

11   jurors, no misleading the defendants, no misleading the

12   defense counsel or the Court that we were trying Cordell

13   under a complicity theory.  It was clear that it was

14   complicity by the reading of the indictment in the

15   beginning of the trial, by any of the arguments made at

16   the end of the trial, by all of the evidence that was

17   produced during trial.

18           THE COURT:     The motion to amend the

19   indictment is granted.  All those counts that say

20   complicity will be amended to 2923.03, in place of the

21   2923.01.  I find it is a typographical error most

22   likely, and furthermore, that the offenses -- the

23   language in each of those counts was indicative of

24   complicity -- or aiding and abetting and did not mention

25   complicity.

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

1813

1          And I note all of your objections from the

2  defense side.

3          All right.  Now, we also have in the case of

4  Mr. Ru-el Sailor, count thirteen, the having the weapon

5  under disability, which was tried to myself, I find the

6  defendant not guilty.

7          And we have with respect to Nicole Hubbard,

8  count fourteen, which is also having a weapon while

9  under disability, I find her not guilty.

10          All right.  And now why don't we begin with

11  Mr. Cordell Hubbard.

12          Mr. Watson, what would you like to say --

13  here's how I propose we do it, have each attorney, then

14  their client, speak, and then the State can speak as to

15  all three defendants, and any representatives of the

16  victims' family may speak.

17          Mr. Watson.

18          MR. WATSON:     Thank you, your Honor.

19          Is it the Court's intention to hear the motion

20  for a new trial at a later day or --

21          THE COURT:     Yes.

22          MR. WATSON:     -- or just address --

23          THE COURT:     Yes.

24          MR. WATSON:     I would just indicate that

25  Mr. Hubbard, prior to this incident, had no felony

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1808 PKG1
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

11/16/2020 Page 1808
Page 1808

1814

1 criminal history at all.

2 I'm not going to belabor the point.  The

3 Court heard all the evidence in this case, and the jury

4 made its verdict.

5 Certainly I think some consideration has to

6 be given relative to the sentencing requirements of

7 Mr. Hubbard, in light of his age and his lack of

8 criminal history, your Honor.

9 I think that the evidence, and the theory of

10 the State's case, was ultimately that he didn't shoot

11 anyone and that he acted in complicity by being

12 present.  But there was no testimony in this case

13 relative that he pulled the trigger or actually hit

14 anyone with his hands.

15 We just hope that the Court would factor that

16 into this scenario and that there was some mitigating

17 factors, not blaming the victim or the victim's family,

18 but there were some mitigating circumstances that

19 brought about this event, which was a very unfortunate

20 event.  And I think that Mr. Hubbard would like to

21 address the Court as well.

22 THE COURT:    Mr. Hubbard, what would you

23 like to say?

24 DEFENDANT CORDELL HUBBARD:    First, your

25 Honor, I would send my condolence to the victim's

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

1     family, you know.

2                    I would also like to apologize to Ru-el

3     Sailor's family, to my sister.

4                    Your Honor, there's a lot of things that the

5     Court doesn't know, that my lawyer doesn't know.  Ru-el

6     Sailor wasn't present and -- this night when this took

7     place.  It was a guy named Will.

8                    THE COURT:    I'm sorry, say that again.  A

9     guy named --

10                   DEFENDANT CORDELL HUBBARD:    A guy named

11    Will.

12                   THE COURT:    And what's his last name?

13                   DEFENDANT CORDELL HUBBARD:    Your Honor, I

14    don't know.  We have a picture of him, though.  It was

15    me and Will there, and I -- you know, and I -- I kept --

16    I -- you know, because I didn't think it was going to

17    turn out like this, I didn't think my best friend was

18    going to get convicted as the shooter, but he wasn't

19    even there, you know.

20                   THE COURT:    And how can Detective Metzler

21    find Will?

22                   DEFENDANT CORDELL HUBBARD:    Your Honor, my

23    understanding, they send indictments, I could tell you

24    where he at, the house where he stay at.

25                   THE COURT:    Go ahead.

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1810 PKGI
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

11/16/2020 Page 1810
Page 1810

```
 1          DEFENDANT CORDELL HUBBARD:     I even talked

 2   to him, you know, and tried to get him to come down here

 3   and tell the truth, you know.

 4          THE COURT:     Well, why don't you tell us

 5   now where he could be found, where he works, where --

 6          DEFENDANT CORDELL HUBBARD:     He works at

 7   Bottom Line there on 68th and St. Clair.  I don't know

 8   the correct address.  I got a cell phone number.  As a

 9   matter of fact, the cell phone number was --

10          THE COURT:     I'm sorry, the cell phone

11   number is what?

12          DEFENDANT CORDELL HUBBARD:     Was presented

13   in this Court, 323 -- 323-0607, and that was his cell

14   phone number.  And at the time, I didn't even know it

15   was -- I -- I didn't even -- I didn't know that until I

16   found out.  That's why I tried to keep it up under my

17   hat, because like me and you just together, I'm like,

18   damn, I ain't know -- excuse my French -- I didn't know

19   it was a brother or nothing like that.

20          And Ru-el Sailor didn't play a part in this,

21   your Honor.  Truthfully, I just told him that -- the day

22   we got convicted of all these charges, I told them in

23   the bullpen, you know, like, "Man, I was there, man, you

24   know," and I told them, like, I was going to tell my

25   lawyer --
```

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

1817

```
1        THE COURT:    You were present at the time of
2   the shooting?
3        DEFENDANT CORDELL HUBBARD:    Yes, I was,
4   your Honor.
5        THE COURT:    And are you telling me that
6   Will did the shooting?
7        DEFENDANT CORDELL HUBBARD:    No, I'm telling
8   you if you find Will, you will find everything was going
9   to come out, the whole truth, everything was going to
10  come out.
11       THE COURT:    Well, if you were there, who
12  did the shooting?
13       DEFENDANT CORDELL HUBBARD:    Your Honor, I
14  would just like to say if you found Will, your Honor, it
15  will come out.  His cousin is the baby mama, you know.
16       THE COURT:    That was discussed during the
17  trial.
18       DEFENDANT CORDELL HUBBARD:    Yes.  You
19  know.  And a lot of things going to come out.  The truth
20  is going to come out, your Honor.
21       That's -- that's what I would like to say.
22  That's it.
23       THE COURT:    All right.  Thank you.
24       Mr. Mack, on behalf of your client,
25  Mr. Sailor.
```

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1812 PKG1
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

11/16/2020 Page 1812
Page 1812

1818

1            MR. MACK:      Your Honor, might I address this

2  matter?

3            THE COURT:      You may.

4            MR. MACK:      Your Honor, in going to trial

5  the evidence came out that none of the descriptions --

6  and you know I harped on that throughout the whole

7  trial -- none of the descriptions of the two men that

8  were there at that particular night ever reflected that

9  this particular gentleman, outlined on the report or

10  everything else, the whole scenario -- and I do believe,

11  your Honor, that's why it's kind of hard for me to stand

12  here and say -- what can I say to this honorable court

13  to show some remorse for this?  Because, of course, the

14  Court is looking for that in any sentencing.  But if a

15  person is truly not there, and I still maintain that,

16  and I think Mr. Mancino filed a subsequent brief that

17  this Court did find that he was not there that

18  particular night, and I thought that the jurors came

19  back, you know, with a verdict that was incorrect.  I

20  don't know based on -- what they based their decision

21  on.  But again, I still say that he wasn't there, your

22  Honor.

23          I do believe he has some additional

24  information.  And I do have a picture.

25            THE COURT:      Of Will?

                OFFICIAL COURT REPORTERS
                 Cuyahoga County, Ohio

1       MR. MACK:       Yes, I do.

2       THE COURT:      All right.  Well, if you could

3  present that to Detective Metzler.

4       MR. MACK:       Is there anyone else I can

5  present it to, your Honor?

6       THE COURT:      You can present it to myself.

7       MR. MACK:       I will do that, your Honor.

8       THE COURT:      All right.  All right.  What

9  would you like to say, Mr. Sailor?

10      DEFENDANT SAILOR:      Your Honor --

11      MR. MANCINO:      May I --

12      THE COURT:      Oh, I'm sorry.  Yes, go ahead.

13      MR. MANCINO:      Just following up with what

14  Mr. Mack said, Mr. Hubbard didn't know the last name of

15  Will, but I believe his name is William Sizemore,

16  S-I-Z-E-M-O-R-E.  As a matter of fact, I issued a

17  subpoena for him.  One subpoena was issued to 10625

18  Columbia Avenue, Cleveland, Ohio, 44108, and that's

19  the --

20      THE COURT:      Slow down just a little bit.

21  What's that address again?

22      MR. MANCINO:      10625 Columbia Avenue,

23  Cleveland, Ohio, 44108.  And that was the address that

24  the Court -- the Common Pleas Court has of him, because

25  he's on probation, as far as I can tell, still on

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

1  probation to Judge Nancy Fuerst.  I have the -- the

2  docket there that he's on probation.

3       I also issued another subpoena for him, in

4  care of the Bottom Line Bar, 1087 Old River Road,

5  Cleveland, Ohio, and I've called out there and no one

6  has responded this morning, but he was issued to be here

7  on July 24th, 2003.

8       And he -- he's got two or three convictions,

9  but I think he's only on probation to the last one.  I

10  want to get the -- the last number is Case No. CR-417003

11  that he's still on probation to Judge Nancy Fuerst for a

12  drug possession case.  The last entry is on January

13  21st, 2003, where he was on a probation -- or community

14  control violation hearing.  The Court found him in

15  violation but continued his probation.  So, you know,

16  he's under the Court's jurisdiction.  He hasn't appeared

17  pursuant to my subpoena.

18       And as Mr. Hubbard has indicated, the Will is

19  that Will who was there, and from the trial evidence,

20  the Will who was there said, you know, something to the

21  effect, "Do not shoot," or "Do not shoot him because

22  somehow the person is related to my baby's mother," or

23  some -- something in that regard, which would support

24  the claim that Mr. Sailor was not the one doing the

25  shooting, that he was not there.

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1815 PKG1
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

11/16/2020 Page 1815
Page 1815

1821

```
 1              And I think it's corroborated, and I think,
 2     you know, that -- you know, at this point it would be a
 3     manifest injustice to state that in these circumstances,
 4     given the evidence and what Mr. Hubbard told Mr. Sailor
 5     after the verdict in the case concerning this matter,
 6     which has been corroborated by him in open court, that,
 7     you know, his conviction should not stand, because I
 8     believe from what is presented in speaking to the
 9     attorneys here that this would be an injustice, and, you
10     know, someone who is truly not guilty of the offense is,
11     you know, facing a substantial sentence in this case
12     when he had no participation, did not do anything, and
13     was not even present, your Honor.
14              THE COURT:    What would you like to say,
15     Mr. Sailor?
16              DEFENDANT SAILOR:    I would just like to
17     say, I send my condolences to you and his family and
18     Omar's kids' mother.  You know what I'm saying?  Because
19     I'm a father and a son and a brother to somebody, too.
20     And I'd like to apologize to the Court.
21              But I would stress my innocence from the
22     beginning, that no -- but nobody listened to me at all,
23     nobody.
24              THE COURT:    Mr. Willis, on behalf of Nicole
25     Hubbard.
```

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1816 PKG1
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

11/16/2020 Page 1816
Page 1816

1  MR. WILLIS:    Your Honor, the Court has, of

2  course, heard all of the evidence, and the Court is

3  aware of the neatness of the testimony involving this

4  lady and her alleged participation.  I feel that

5  inasmuch as the Court has -- still has before it a

6  judgment -- a motion for a judgment of acquittal, that

7  this situation will rectify itself.

8  But if the Court feels that it will sentence

9  her today, I'm hopeful that the Court will recognize

10  that her involvement comes down to whether or not she

11  had a phone call with her brother, whether or not she

12  identified somebody.  And the person that was identified

13  is not the person who was killed.  So to the extent that

14  the State takes the position that somehow she was

15  involved in the shooting of a different person, at least

16  her participation was meek, and to that extent, I feel

17  the sentence imposed on the defendant should be on the

18  bottom and it should all be concurrent.

19  THE COURT:    Thank you, Mr. Willis.

20  Ms. Hubbard, what would you like to say?

21  DEFENDANT NICOLE HUBBARD:    First off, I

22  would like to send my condolence off to the family who

23  lost a loved one and to the families that -- my brother

24  and Ru-el Sailor.  And I'm sorry for using my phone or

25  whatever and making a phone call.  And I would just like

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1817 PKG1
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

11/16/2020 Page 1817
Page 1817

1823

1    to thank the Court.

2              THE COURT:     On behalf of the State of

3    Ohio.

4              MR. THOMAS:     Your Honor, we would like

5    to defer our comments until after the family has

6    spoken.

7              THE COURT:     Sure.

8              Sir, would you come forward, please?  Because

9    of the court reporter, it's difficult to hear from the

10   back of the courtroom.

11             Okay.  Would you mind standing at the podium,

12   sir?

13             MR. CLARK:     Your Honor --

14             THE COURT:     And just for the record, could

15   you tell us your full name and spell your last name?

16             MR. CLARK:     My name is Umar Clark,

17   C-L-A-R-K, U-M-A-R.

18             THE COURT:     Mr. Clark.

19             MR. CLARK:     From November 17th, 2002,

20   you know, I been living on my toes, you know what I'm

21   saying, because of Nicole Hubbard and Cordell, you

22   know.

23             After all this happened, I talked to

24   Cordell.  He lied, told me, "Man, you know I wasn't

25   there, man, I'm your dude," you know what I'm saying,

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

1824

1     and this and that.

2          I couldn't -- I wasn't allowed to come in the

3     courtroom, you know, just to see this.  And knowing that

4     my brother's assailants was in here, and the whole time

5     they laughed, they showed no remorse, they laughed, they

6     smirked and -- you know, like this was a joke.  And all

7     of a sudden this, you know, have mercy and this and

8     that.  Cordell, you know, if it wasn't for him or his

9     sister, this man wouldn't even be here, if it wasn't for

10    him and his sister.  And if it wasn't for him and his

11    sister, we wouldn't be here.

12         My brother has took -- has lost his life,

13    and now they play and gamble on another man's life,

14    which was his friend.  How can the Court have mercy and

15    leniency on a man who gambled on his best man's life?

16    You know, he gambled.

17         THE COURT:     Thank you, Mr. Clark.   I

18    appreciate you coming forward.

19         MR. THOMAS:     Mr. Clark, Sr.

20         THE COURT:     Good morning, sir.

21         MR. MATHIS:     Good morning.

22         THE COURT:     Would you please state your

23    name and spell your last name for the record?

24         MR. MATHIS:     Rasheem Mathis, M-A-T-H-I-S.

25         THE COURT:     Mr. Mathis, what would you like

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1819 PKGl
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

11/16/2020 Page 1819
Page 1819

1    to tell me?

2              MR. MATHIS:    I would just like to say that

3    since November 16th, you know, my life has changed in

4    more ways than one.

5              THE COURT:    What's your relationship to

6    the --

7              MR. MATHIS:    My brother.

8              THE COURT:    That's your brother who died?

9              MR. MATHIS:    Yes.  I'm the youngest

10   brother.  I lost a big brother.  I lost a friend.  My

11   family lost a loved one, you know, my brother lost.  The

12   baby's mother, the baby, she lost a father.

13             I want to say that it was a very senseless

14   act on all three of you all parts.  It was no -- it's no

15   excuse.  It's -- it's no way to explain why would you

16   kill a man like that?  And for $10 or what have you,

17   whatever it may have been, you know, my brother is

18   dead.

19             And these three, they sitting here, life,

20   looking at a long time in prison, you know.

21             Like Ru-el said, he got kids, you know.  He

22   won't see his kids, hopefully he won't, you know.

23             I just want to say that every day that you

24   all spend in prison, I want you to think of Omar.    I

25   want you to think about how you gunned him down that day

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

1826

1   for no reason.  I want you all to think about him every

2   day until your sentence is up.

3            As far as Ru-el go, him not being there, I

4   feel like it's a puzzle.  Everybody played a part

5   somehow, some way, some fashion, somebody played a

6   part.  He may not have did the shooting, but he was

7   there on the scene, just like this Will guy and so

8   forth.  So all of them need to face the consequences,

9   because they was there.  He had knowledge of it.  It was

10  his best friend.  He need to face the consequences with

11  the rest of them.

12            I also would like to thank the Court for

13  everything you all done as far as trying this case and

14  so forth, you know.  I just hope that you all give him a

15  stiff -- stiff sentence.

16            THE COURT:     Thank you, Mr. Mathis.

17            MR. MATHIS:     Thank you.

18            THE COURT:     Ma'am, could you please tell

19  us your full name and spell your last name for the

20  record.

21            MS. BROOKS:     Pamela Brooks, B-R-O-O-K-S.

22            THE COURT:     Ms. Brooks, what's your

23  relationship to the deceased?

24            MS. BROOKS:     Omar is my brother.

25            THE COURT:     What would you like to tell

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

1    me?

2         MS. BROOKS:    I would just like to say that

3    that was a senseless and a very selfish act to shoot

4    anybody like that, even a wild animal, you know.  He had

5    life.

6         My brother's greatest goal in life was to

7    become a father.  He has a little baby that he will

8    never see grow up.  This child will never know her

9    father.  He could never hold her in his arms, play with

10    her, you know?  All these things was taken away.

11         And at this late date in the game, how could

12    they come forward now and state that this young man had

13    no part in this?  I don't understand that.

14         But we are not the only people here with a

15    loss to our families.  Each and every one of their

16    family members has also sustained a great loss.  And I

17    think it was a senseless act.

18         And I also would like to thank the Court for

19    listening.

20         THE COURT:    Thank you, ma'am.

21         Sir, would you please state your name and

22    spell your last name for the record.

23         MR. SIMPSON:    Kenneth Simpson,

24    S-I-M-P-S-O-N.

25         THE COURT:    Mr. Simpson, what's your

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1822 PKG1
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

11/16/2020 Page 1822
Page 1822

1828

| | |
|---|---|
| 1 | relationship to the -- |
| 2 | MR. SIMPSON:    Friend. |
| 3 | THE COURT:    You're a friend of his? |
| 4 | MR. SIMPSON:    Yes, sir -- yes, ma'am. |
| 5 | Only thing I want to say is, you know, I spoke |
| 6 | to Cordell, you know what I'm saying, and he told me he |
| 7 | had nothing to do with it, and he wasn't there.  You |
| 8 | know what I'm saying?  That's a friend of mine, |
| 9 | also.  And it was wrong the way they killed my friend, |
| 10 | you know?  You don't kill nobody like that.  I mean, |
| 11 | have mercy on somebody, I mean, come on.  All those |
| 12 | times they shot him, it was wrong.  He told me he had |
| 13 | nothing to do with it.  He looked me in my face.  And he |
| 14 | had no mercy, you know what I'm saying, flat out. |
| 15 | So I feel the Court should do what they |
| 16 | need to do.  You know what I'm saying?  These people |
| 17 | suffering. |
| 18 | That man, he couldn't even hold his baby.  You |
| 19 | know what I'm saying?  That's all he had, was a child, |
| 20 | and they took that from him.  It ain't right, your |
| 21 | Honor. |
| 22 | That's all I got to say. |
| 23 | THE COURT:    Thank you, Mr. Simpson. |
| 24 | Good morning, sir. |
| 25 | MR. FRED MATHIS:    Good morning. |

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1823 PKGI
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

11/16/2020 Page 1823
Page 1823

1     THE COURT:     You're Omar's dad?

2           MR. FRED MATHIS:     Yes.  I'm Omar's father.

3           THE COURT:     Could you tell us your full

4     name and --

5           MR. FRED MATHIS:     My name is Fred Mathis.

6           THE COURT:     Okay.  Mr. Mathis, what would

7     you like to tell me?

8           MR. FRED MATHIS:     Well, I sat through the

9     whole trial, and I think the prosecutor should have --

10    they proved their case, you know, as far as I'm

11    concerned, with all the evidence.  To me it was beyond

12    a reasonable doubt.  I -- I imagine some little

13    discrepancy here and there, but basically I think that

14    they -- they -- the jury was correct in bringing back

15    the guilty verdict on -- on the ones they brought it

16    back on.

17          Now, I'm wondering why, through the whole

18    trial, nothing of this nature was mentioned or

19    anything.  If they had something to say, looked to me

20    they would have said it before their conviction.  And

21    now the conviction, it seems like they trying to find

22    some kind of escape route, trying to make their sentence

23    less or whatever.  But why come up with it now?  I think

24    they had ample enough time to bring this information

25    forward before the jury reached a verdict, before the

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

1830

1    trial is over.  Now the trial is over and -- and they

2    come in here with everything.

3         So I can't do nothing.  I go along with what

4    the prosecution proved, and I go along with the jury's

5    verdict of the individuals they brought it back on.  I

6    go along with that.

7         And I hope the Court will carry it out just,

8    you know, like the jury brought back, because it was a

9    long -- you know, it was a very tiresome trial.

10        And then after the trial, they going to come

11   up with this?  No, he didn't do it, I did it, and I'm

12   the one did the shooting?  Well, why not say that before

13   the sentences, before they brought back the guilty

14   verdict?

15        That's what I want to say.  And --

16                 - - - - -

17        (Thereupon, a discussion was had off the

18   record.)

19                 - - - - -

20        MR. FRED MATHIS:    Yes.  Omar, he's my son,

21   like you say.  And I love my son.  My son look like he

22   had -- he had turned his life around, you know?  He

23   had a child.  He was working every day.  And then his

24   little daughter -- he had a little daughter by his

25   fiancee and they had nice plans, and I was behind him

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1825 PKGl
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

11/16/2020 Page 1825
Page 1825

1　　100 percent.  And we had come close -- I was right on

2　　him because I want him to stay on the right track.

3　　　　　　　And he was, until that fateful day that he

4　　wandered back down there on 105th Street, which he had

5　　stopped even associating down there, but that day he

6　　went.  So I don't know.

7　　　　　　　And I do know -- I don't think my son was

8　　involved with the -- the wet and all of that, that part

9　　of it, because I think he came up as an innocent person,

10　　not knowing the circumstances of what was going on

11　　between Nicole and Dude, or whoever the other guy was,

12　　about the wet.  I think he came in blind and he didn't

13　　really know what was happening and -- and after it all

14　　happened, I mean, when they came down there, he didn't

15　　feel that he had no need to run or to  -- you know, he

16　　was only trying to make peace, you know, because even he

17　　hadn't did nothing to Nicole.  Nicole knew he hadn't

18　　done anything to her.

19　　　　　　　And I don't understand why -- I think that she

20　　could have prevented his killing by whoever she made

21　　that phone call to, her brother or whoever, but to say,

22　　"Well, Omar didn't have anything to do with it.  It was

23　　me and Dude that was bugging.  Omar was just there."

24　　And maybe it would have spared his life.  You know?  But

25　　I guess she was so distraught about being beat and all

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1826 PKG1
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

11/16/2020 Page 1826
Page 1826

1832

1    that out of some money that she just included him, too,

2    because he was all right with this other guy, you know.

3    And I think it's a little too late now to come up with

4    that.

5         And I just hope the judge consider all the

6    evidence that was -- which I know you will in your

7    sentences.  And that's all I got to say.

8         I think it's -- the way the trial went down,

9    the verdict and everything, I think it's a just verdict,

10   and I think it's -- I don't think that verdict need to

11   be turned around any, not now.  If they had anything to

12   say, I think they should have said it before the

13   conviction.  That's all.

14        THE COURT:    Thank you.

15        MR. FRED MATHIS:    I would like to thank the

16   Court.

17        THE COURT:    Thank you, Mr. Mathis.

18        Ma'am, would you please state your name and

19   spell your last name.

20        MS. SIZEMORE:    Marquetta Sizemore,

21   S-I-Z-E-M-O-R-E.

22        THE COURT:    You need to speak up.

23        MS. SIZEMORE:    Marquetta Sizemore, last

24   name spelled S-I-Z-E-M-O-R-E.  First name,

25   M-A-R-Q-U-E-T-T-A.  And I'm Omar's fiancee.

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

1833

```
 1                THE COURT:     What would you like to tell
 2      me?
 3                MS. SIZEMORE:     Because of all this, like
 4      December 13th, he had another baby on the way that he
 5      won't get to see.  I lost that baby because of this.
 6                THE COURT:     I'm sorry.
 7                MS. SIZEMORE:     My daughter will never
 8      get to see him because all three of you, all of them,
 9      are cowards.  Especially you.  All of you are
10      cowards.  But because of this, he won't get to see his
11      child.  You all -- you can -- your kids can come visit
12      you and everything.  She won't know what her daddy --
13      from pictures she will know what he looked like.  She
14      won't be able to hold her father, nothing.  None of
15      that.  But you all still walking around here free,
16      whoever the shooter was.
17                They need to get the death penalty for that,
18      whoever the shooter was.
19                If you wasn't there, you should have never
20      came down here and lied.  You shouldn't have lied.  I
21      don't know if you was there or not, Ru-el, but if you
22      were there, you need to get the same thing, just like my
23      cousin, if he was there at all -- all of you -- all of
24      you all are guilty, as far as I'm concerned.
25                But you, you the main one.  You're the
```

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

1   coward.  You started all this.  You could have stopped

2   that, whoever made the phone call.  You could have

3   stopped that.  If Omar didn't have nothing to do with

4   that, you could have told him that.  But you want to

5   take the cowardly way out, just like these other two.

6           And so I hope you all get what you got

7   coming.

8           That's all I have to say.

9           THE COURT:     Thank you, Ms. Sizemore.

10          Mr. Thomas.

11          MR. THOMAS:     Thank you, your Honor.

12          Your Honor, it's very difficult to be more

13   eloquent than the family members have been today,

14   especially Mr. Umar Clark and Mr. Mathis, the father of

15   the victim.  They bring out some very good and obvious

16   points about the proceedings in this matter.

17          And I would state that prior to the final

18   reindictment of this case, the State did make repeated

19   overtures to both Defendants Cordell and Nicole Hubbard

20   as to a willingness to provide information, and we were

21   rebuffed at our return.  It was only through the hard

22   work of the Cleveland Police Department Homicide Unit

23   that the investigation was concluded as to the identity

24   of the shooter of Omar Clark.

25          And the jury heard all the evidence through

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

1  vigorous cross-examinations as to identity and reached

2  its conclusion, and we stand by the theory presented at

3  trial, that Ru-el Sailor is, in fact, the shooter on

4  that night.

5  We also would point out that through Ru-el's

6  testimony, he admitted to being present with Cordell the

7  entire time of that night.  He never said that he was

8  absent from Cordell, if you recall his testimony.

9  THE COURT:    I do.

10  MR. THOMAS:    And I would also point out

11  that it was apparent to everyone in the trial that the

12  remorse that you're seeing today was never present, that

13  there was a lighthearted attitude from all the

14  defendants, that there was banter and taunts from the

15  defendants' table to the family members of the victim

16  during the course of the trial.

17  All of those things that we all observed

18  during the course of the trial belie the statements that

19  were made to you today by each of the defendants.

20  And we would ask you to consider, as we know

21  you will, the fact that there are two victims in this

22  case, not only Omar, but Clark Williams.  And we know

23  that your sentence will be just.

24  Thank you.

25  THE COURT:    All right.  Mr. Cordell

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

1836

1    Hubbard, this is your sentence.

2            Count two, complicity in the commission of

3    aggravated murder, twenty years to life, plus a one-year

4    gun specification sentence.

5            Count three, murder, fifteen years to life,

6    plus a one-year gun specification.

7            Count four, complicity to commit murder,

8    fifteen to life, plus the one-year gun specification.

9            Count five, kidnapping, three years, plus one

10   year for the gun specification.

11           Count six, complicity in kidnapping, three

12   years, plus one year for the gun specification.

13           Count seven, kidnapping, three years, plus one

14   year for the gun specification.

15           Count eight, complicity in kidnapping, three

16   years, plus one year for the gun specification.

17           Count nine, felonious assault, two years, plus

18   one year for the gun specification.

19           Count ten, felonious assault, two years, plus

20   one year for the gun specification.

21           Count eleven, complicity to felonious assault,

22   two years, plus one year for the gun specification.

23           Count twelve, complicity to felonious assault,

24   two years, plus one year for the gun specification.

25           Counts two, three, and four merge for

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1831 PKG1
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

11/16/2020 Page 1831
Page 1831

1837

1     sentencing.

2           Counts five and six, counts seven and eight,

3     counts nine and eleven, and counts ten and twelve merge

4     for sentencing.

5           Counts ten and twelve will be served

6     concurrent to one another but consecutive to counts

7     two, three, four, five, six, seven, eight, nine, and

8     eleven.

9           Counts two, three, four, five, six, seven,

10     eight, nine and eleven will be served concurrent to each

11     other.

12           All the gun specifications will be served

13     concurrently to the other gun specifications.

14           Mr. Ru-el Sailor, count one, aggravated

15     murder, twenty years to life, plus three years for the

16     gun specification.

17           Count two, complicity to aggravated murder,

18     twenty to life, plus three years for the gun

19     specification.

20           Count three, murder, fifteen to life, plus

21     three years for the gun specification.

22           Count four, complicity to murder, fifteen to

23     life, plus three years for the gun specification.

24           Count five, kidnapping, three years, plus

25     three years for the gun specification.

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1832 PKG1
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

11/16/2020 Page 1832
Page 1832

1838

1          Count six, complicity to kidnapping, three

2     years, plus three years for the gun specification.

3          Count seven, kidnapping, three years, plus

4     three years for the gun specification.

5          Count eight, complicity to kidnapping, three

6     years, plus three years for the gun specification.

7          Count nine, felonious assault, two years, plus

8     three years for the gun specification.

9          Count ten, felonious assault, two years, plus

10    three years for the gun specification.

11         Excuse me.

12         Count eleven, complicity to felonious assault,

13    two years, plus three years for the gun specification.

14         Count twelve, complicity to felonious assault,

15    two years, plus three years for the gun specification.

16         Counts one, two, three, and four merge for

17    sentencing.

18         Counts five and six, counts seven and eight,

19    counts nine and eleven, counts ten and twelve merge for

20    sentencing.

21         Counts ten and twelve will be served

22    concurrent to one another but consecutive to the

23    sentences in counts one, two, three, four, five, six,

24    seven, eight, nine, and eleven.

25         Counts one, two, three, four, five, six,

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1833 PKG1
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

11/16/2020 Page 1833
Page 1833

1839

1  seven, eight, nine, eleven will be served concurrently

2  to each other.

3      All gun specifications will be -- will be

4  served concurrently to the other gun specifications.

5      Nicole Hubbard, counts one and two do not

6  apply to you.

7      Count three, you are found not guilty.

8      Count four, complicity to murder, fifteen

9  years to life.

10      Count five you were found not guilty.

11      Count six, complicity to kidnapping, three

12  years.

13      Count seven you were found not guilty.

14      Count eight, complicity to kidnapping, three

15  years.

16      Count nine, felonious assault, two years.

17      Count ten, felonious assault, two years.

18      Count eleven, complicity to felonious assault,

19  two years.

20      Count twelve, complicity to felonious assault,

21  two years.

22      Counts nine and eleven will merge for

23  sentencing.

24      Counts ten and twelve merge for sentencing.

25      The sentences in counts ten and twelve will

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1834 PKGI
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

11/16/2020 Page 1834
Page 1834

1840

1    be served concurrent to one another but consecutive to

2    the sentences in counts four, six, eight, nine, and

3    eleven.

4            Counts four, six, eight, nine, and eleven will

5    be served concurrent to each other.

6            Ms. Hubbard, you will receive 73 days credit

7    for jail.

8            Mr. Ru-el Sailor, you will receive 113 days.

9            Mr. Cordell Hubbard, you'll receive 92 days

10   credit for the time you have served thus far.

11           Now, as to my findings as to why consecutive

12   sentences are necessary.  I find it is necessary to

13   protect the public from future crimes and to punish each

14   and every one of you for the horrible thing that

15   occurred on that night to both victims.  There are two

16   victims in this case.

17           And I also find that consecutive sentences are

18   not disproportionate to the seriousness of the conduct

19   and are not disproportionate to the danger posed to the

20   community.

21           Obviously there can be no more serious

22   conduct than to cause the death of another and to

23   attempt to cause serious physical harm to the other

24   gentleman, Mr. Clark Williams, by means of that gun.

25   Obviously you are all three a serious danger to the

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

1841

1 community.

2        I also find that the harm was so great that
3 no single prison term adequately reflects the
4 seriousness of the offense, and the history of criminal
5 conduct of each of you makes multiple terms necessary
6 for the protection of the public from these offenders.

7        I base my above findings on the following.
8 All three defendants adamantly denied their guilt to
9 the probation department in the presentence report.
10 Obviously there is no sincere remorse.

11        Also, as I pointed out, there are two victims
12 in this case.  There is the victim Omar Clark, whose
13 life is gone, forever, and lost, and also to Clark
14 Williams, who was there and a bullet grazed him.  It's
15 but for the grace of God that he wasn't murdered as well
16 that evening.

17        Now, I would like to point out that Cordell
18 Hubbard has a significant juvenile record, including
19 assault, domestic violence, aggravated robbery, and
20 preparation of drugs for sale.

21        I would like to point out that Mr. Ru-el
22 Sailor has two prior adult felony convictions, one for
23 possession of drugs and one for trafficking in drugs.
24 He also has a juvenile record for aggravated riot.

25        Then Nicole Hubbard has both a significant

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

1842

```
 1     juvenile record as well as a prior burglary conviction
 2     as an adult.
 3             Clearly consecutive sentences are necessary
 4     and appropriate in this particular case.
 5             Now, Mr. Hubbard, Mr. Sailor, and Ms. Hubbard,
 6     you each have the right to appeal your case to the
 7     Eighth District Court of Appeals.  That appeal must be
 8     perfected within -- I believe it's -- is it 30 days?
 9             MR. WATSON:     Yes, Judge.
10             THE COURT:     30 days from today's date.
11             If you do not have the funds to hire an
12     attorney, the Court will appoint one for you at no cost
13     to you.
14             Mr. Hubbard, Mr. Cordell Hubbard, do you wish
15     to appeal this, the conviction, as well as the sentence
16     I just imposed?
17             DEFENDANT CORDELL HUBBARD:     Yes, your
18     Honor.
19             THE COURT:     And do you have the funds to
20     hire an attorney?
21             MR. CORDELL HUBBARD:     Yes, your Honor.
22             THE COURT:     So you're going to hire an
23     attorney?
24             MR. CORDELL HUBBARD:     Yes, your Honor.
25             THE COURT:     All right.  Next we have
```

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

1843

1    Mr. Ru-el Sailor.  Would you like to appeal this verdict

2    and sentencing, sir?

3              DEFENDANT SAILOR:     Yes, your Honor.

4              THE COURT:     And it's my understanding

5    you've already hired Mr. Mancino; is that correct?

6              DEFENDANT SAILOR:     Yes.

7              THE COURT:     And he will be perfecting your

8    appeal for you; is that correct?

9              DEFENDANT SAILOR:     Yes.

10             THE COURT:     All right.  Ms. Hubbard, do

11   you wish to appeal the verdict and the sentence of this

12   Court?

13             DEFENDANT NICOLE HUBBARD:     Yes.

14             THE COURT:     And do you have the funds to

15   hire an attorney to do that?

16             DEFENDANT NICOLE HUBBARD:     Yes.

17             THE COURT:     All right.  All right.  All of

18   you have been given your appellate rights.

19             And anything further on behalf of the State of

20   Ohio?

21             MR. THOMAS:     No, your Honor.  Thank you.

22             THE COURT:     Anything further on behalf of

23   Cordell Hubbard?

24             MR. WATSON:     Just one thing, your Honor.

25             The pending case, when does the Court like to

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

1844

1    proceed to sentencing on that case, the drug case that

2    you referenced?

3            THE COURT:    Oh, I'm sorry, I neglected to

4    do that.  I think as soon as we're done with this we

5    should proceed with that.

6            MR. WATSON:    Okay.  Thank you, your Honor.

7            THE COURT:    All right.  Thank you,

8    Mr. Watson.

9            Anything further, Mr. Mancino or Mr. Mack, on

10   behalf of Ru-el Sailor?

11           MR. MANCINO:    Well, we still have the

12   motion for a new trial, if the Court rules --

13           THE COURT:    I have not ruled on it yet.

14           MR. MANCINO:    Because that will toll the

15   appellate time.

16           THE COURT:    All right.  No, I have not

17   ruled on that.

18           Anything further?

19           MR. MANCINO:    No, nothing further.

20           THE COURT:    Mr. Willis?

21           MR. WILLIS:    Yes, your Honor.  I certainly

22   would like the opportunity to -- to respond to the

23   State's response to a new trial that I received

24   yesterday, I feel I should respond in kind, and I'm

25   hoping the Court would set that down for a hearing.

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1839 PKGl
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

1845

```
 1                    THE COURT:    That will be fine.  When this
 2        is concluded, if all of the lawyers will meet with
 3        Ms. Mahoney, and she will give you a day for the
 4        hearing.
 5                    All right.  With respect to the -- can I have
 6        the other file on Mr. Cordell Hubbard?
 7                    Do you have the number, Mr. Watson?
 8                    MR. WATSON:    Not with me, your Honor.
 9                    THE COURT:    All right.  Mr. Sailor and
10        Ms. Hubbard are done.
11                              - - - - -
12                    (Thereupon, Defendant Nicole Hubbard and
13        Defendant Ru-el Sailor exited the courtroom.)
14                              - - - - -
15                    THE COURT:    Mr. Watson and the State, would
16        you approach the bench for one moment?
17                              - - - - -
18                    (Thereupon, a discussion was had at the
19        sidebar off the record.)
20                              - - - - -
21                    MR. MACK:    Can I approach the bench with
22        Paul for a second?
23                    THE COURT:    Sure.
24                              - - - - -
25                    (Thereupon, a discussion was had at the
```

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1840 PKG1
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

11/16/2020 Page 1840
Page 1840

1846

```
 1        sidebar off the record.)

 2                    - - - - -

 3               THE COURT:    All right.  We're going to go

 4        back into session.

 5               All right.  Mr. Cordell Hubbard, you're also

 6        being sentenced in Case 437646, in which you pled no

 7        contest to count one, carrying a concealed weapon, a

 8        felony of the fourth degree; count two, drug

 9        trafficking, a felony of the third degree with a firearm

10        specification; count three, possession of drugs, a

11        felony of the third degree with a one-year firearm

12        specification; count four, having a weapon while under

13        disability, a felony of the third degree, and count

14        five, possessing criminal tools, a felony of the fifth

15        degree.

16               Mr. Watson, what would you like to say?

17               MR. WATSON:    Your Honor, for the record,

18        we would just incorporate the presentence investigation

19        report that was done in the other case relative to the

20        prior sentencing.

21               Judge, Mr. Hubbard has already been given a

22        lengthy prison sentence.  And it is my hope -- and he's

23        still a very young man.  The evidence bore out that he

24        was employed.  He worked in a family business.  He, too,

25        has children of his own that he does support and had
```

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1841 PKGl
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

11/16/2020 Page 1841
Page 1841

1847

```
 1        supported, even during the trial in which this case was

 2        pending and prior to that.

 3              It's just my hope that the Court will

 4        entertain the minimum sentence and have that sentence

 5        run concurrently.

 6              I believe that the offenses -- there's no

 7        presumption either way.  Certainly we are not -- our

 8        comments are not to be taken that we're trying to

 9        minimize his role in this particular offense, but

10        certainly we would hope that the Court will take into

11        consideration the lengthy sentence that he's already

12        been given.  I think that it wouldn't really serve any

13        utility, in light of the sentence, to give him

14        consecutive time.

15              THE COURT:    What would you like to say,

16        Mr. Hubbard?

17              DEFENDANT CORDELL HUBBARD:    Nothing, your

18        Honor.

19              THE COURT:    Mr. Thomas?

20              MR. THOMAS:    Your Honor, this Court, I

21        know, is well aware, but I feel compelled to make a

22        record, that these offenses occurred while this

23        defendant was on bond to this Court for the case the

24        Court just pronounced sentence on, the aggravated murder

25        case of Omar Clark.  Brazen disregard of this individual
```

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

1848

1    to, while on bond to this Court, conduct himself by

2    having in his possession a felony three quantity of

3    marijuana and a loaded firearm, all of which he

4    acknowledged during his testimony in the motion hearing

5    as being his property, demands not only consecutive

6    sentences, but more than minimum sentences.

7    Thank you.

8    THE COURT:    All right.  Count one, I

9    sentence you to a year.

10   Count two, I sentence you to a year, plus an

11   additional one year for the gun specification.

12   Count three, I sentence you to a year, plus

13   one year additional for the gun specification.

14   Count four, I sentence you to a year.

15   Count five, I sentence you to a year.

16   They will all be served concurrently to one

17   another.  The gun specifications will obviously be

18   consecutive to the underlying sentence.  And they will

19   also be consecutive to Case No. 435700.

20   I already stated the reasons for consecutive

21   sentences, but I think it's necessary that I make the

22   findings with respect to this case.

23   I find it is necessary to protect the public

24   from future crimes.  You're out on bond for a murder,

25   and you have a gun in your possession.  I think it's

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1843 PKG1
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

11/16/2020 Page 1843
Page 1843

1849

1    also necessary to punish you.  It is as the prosecutor

2    said, absolutely brazen that you would be involved in

3    this kind of activity at that time, at any time,

4    frankly, but at this time in particular.

5              I also find that consecutive sentences are not

6    disproportionate to the seriousness of the conduct and

7    are not disproportionate to the danger imposed to the

8    community.  You're involved in a murder with a gun, and

9    shortly thereafter you're selling drugs with a gun.  The

10   public needs to be protected from you, Mr. Hubbard.

11             I also find that the harm was so great that

12   no single prison term would adequately reflect the

13   seriousness of the offense, and your history of criminal

14   conduct makes multiple terms necessary for the

15   protection of the public from these offenders.

16             You had quite a significant amount of

17   marijuana on your person.  You were carrying a gun.

18   You were carrying that gun while you were under a

19   disability.

20             And I base all of my -- I base my sentence on

21   all of those factors.

22             And just for the record again, your prior

23   convictions are a significant juvenile record, including

24   assault, domestic violence, aggravated robbery,

25   preparation --

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

1850

```
 1                    DEFENDANT CORDELL HUBBARD:      I --
 2                    THE COURT:     -- preparation of drugs for
 3          sale.
 4                    THE DEFENDANT:     Your Honor --
 5                    THE COURT:     Sir, upon your release from
 6          jail you'll be subject to post-release control for five
 7          years.  All right.
 8                    MR. WATSON:     Your Honor, may we approach?
 9                    THE COURT:     Sure.
10                              - - - - -
11                    (Thereupon, a discussion was had at the
12          sidebar off the record.)
13                              - - - - -
14                    THE COURT:     All right.  Mr. Hubbard, one
15          last thing.
16                    Mary Jean, I'm sorry.
17                    Sir, as you pled no contest to these charges,
18          you have a right to appeal this matter to the Eighth
19          District Court of Appeals, just as you do your murder
20          sentence and conviction.
21                    Do you wish to appeal this particular case
22          that you were just sentenced on to the Eighth District
23          Court of Appeals?
24                    DEFENDANT CORDELL HUBBARD:      Yes, your
25          Honor.
```

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1845 PKG1
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

11/16/2020 Page 1845
Page 1845

1851

```
 1                    THE COURT:    You do?
 2                    DEFENDANT CORDELL HUBBARD:    Yes.
 3                    THE COURT:    And do you have the money to
 4        hire an attorney to do that?
 5                    DEFENDANT CORDELL HUBBARD:    Yes, your
 6        Honor.
 7                    THE COURT:    All right.  Thank you.
 8                    Thanks, Myron.
 9                         - - - - -
10                    (Thereupon, Defendant Cordell Hubbard
11        exited the courtroom.)
12                         - - - - -
13                    (Thereupon, Defendant Ru-el Sailor entered
14        the courtroom.)
15                         - - - - -
16                    THE COURT:    All right.  We're back on the
17        record on 435700 A, State of Ohio vs. Cordell Hubbard.
18                    MR. MACK:    No, this is B.
19                    THE COURT:    Oh, I'm sorry.  I'm sorry.
20        I'm looking at the wrong one.  435700-B, the State of
21        Ohio vs. Ru-el Sailor.
22                    Is that you, sir?
23                    DEFENDANT SAILOR:    Yes, sir.  Yes, ma'am.
24        Sorry about that.
25                    THE COURT:    That's all right.
```

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1846 PKG1
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

11/16/2020 Page 1846
Page 1846

1851-A

```
 1               Mr. MACK:     He couldn't -- if he was Ray
 2    Charles or Stevie Wonder, who was blind, he couldn't
 3    make that mistake, your Honor.
 4               THE COURT:     Thank you, Mr. Mack.
 5               You're here with your attorney, Mr. Mack.
 6               I neglected to tell you, sir, that you'll be
 7    subject to five years post-release control when you're
 8    released from jail.  That's it.
 9                         - - - - -
10               (Thereupon, Defendant Ru-el Sailor exited
11    the courtroom.)
12                         - - - - -
13               (Thereupon, Defendant Nicole Hubbard entered
14    the courtroom.)
15                         - - - - -
16               THE COURT:     All right.  We're here on
17    4357000 C, the State of Ohio vs. Nicole Hubbard.
18               Is that you, ma'am?
19               DEFENDANT NICOLE HUBBARD:     Yes.
20               THE COURT:     All right.  You're here with
21    Mr. Watson, as Mr. Willis has gone to a trial in another
22    matter.  Do you have any objection to him standing in at
23    this time?
24               DEFENDANT NICOLE HUBBARD:     No.
25               THE COURT:     All right.  At the time of
```

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1847 PKG1
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

11/16/2020 Page 1847
Page 1847

1851-B

```
 1        the sentencing, I neglected to tell you that upon your

 2        release you'll be subject to five years post-release

 3        control.

 4                    Anything further, Mr. Watson?

 5                    MR. WATSON:     None, your Honor.

 6                    THE COURT:     All right.   Thank you.

 7                         - - - - -

 8                    (Proceedings adjourned.)

 9                         - - - - -

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

OFFICIAL COURT REPORTERS
Cuyahoga County, Ohio

```
1                    C E R T I F I C A T E

2

3                         We, Robert S. Kraska, Lisa

4     Hrovat, Kathleen A. Kilbane & Mary Jean Cooley,

5     Official Court Reporters for the Court of

6     Common Pleas, Cuyahoga County, Ohio, do hereby

7     certify that as such reporters we took down in

8     stenotype all of the proceedings had in said

9     Court of Common Pleas in the above-entitled

10    cause; that we have transcribed our said

11    stenotype notes into typewritten form, as

12    appears in the foregoing Transcript of

13    Proceedings; that said transcript is a complete

14    record of the proceedings had in the trial of

15    said cause and constitutes a true and correct

16    Transcript of Proceedings had therein.

17

18    _____
      Robert S. Kraska
19    Official Court Reporter

20    _____
      Lisa Hrovat
21    Official Court Reporter

22    _____
      Kathleen A. Kilbane, RMR
23    Official Court Reporter

24    _____
      Mary Jean Cooley, RMR
25    Official Court Reporter
```

1  THURSDAY MORNING SESSION, SEPTEMBER 4, 2003

2                    - - -

3            THE COURT:        We are here on

4  Case No. 435700, the State of Ohio versus

5  Cordell Hubbard, Ru-el Sailor and Nicole

6  Hubbard.  Mr. Watson is here for Cordell

7  Hubbard and Nicole Hubbard, is that correct?

8            MR. WATSON:        That's correct,

9  Your Honor.

10            THE COURT:        And Mr. Mancino

11  is here for Mr. Ru-el Sailor, is that correct?

12            MR. MANCINO:        Yes, it is.

13            THE COURT:        Miss Clancy is

14  here on behalf of the State of Ohio.  I have a

15  motion for new trial on Miss Hubbard,

16  Mr. Hubbard and Mr. Sailor.  The Hubbards also

17  have along with their motion for new trial a

18  judgment of acquittal.

19            Miss Clancy, it's my understanding

20  there have been appeals filed on behalf of

21  Cordell Hubbard and Nicole Hubbard, is that

22  correct?

23            MS. CLANCY:        That's correct,

24  Your Honor.

25            THE COURT:        Do you have the

```
 1        date or some information from the Court of
 2        Appeals?
 3                 MS. CLANCY:          I believe I
 4        provided a copy to Tom yesterday.  I think I
 5        left it in the back room.  I believe the date
 6        was August 27th of this year.
 7                 THE COURT:          Mr. Watson, is
 8        that correct?
 9                 MR. WATSON:          That's correct,
10        Your Honor.
11                 THE COURT:          Would you like to
12        say anything relevant to that, Miss Clancy?
13                 MS. CLANCY:          Your Honor, we
14        request at this time that since the defendants
15        have filed their notice of appeals that any
16        ruling on the motion for new trial be held in
17        abeyance at that time until the Court of
18        Appeals rules on their appeal.  These are two
19        inconsistent requests being made, one to the
20        trial court and one to the Court of Appeals so
21        at this time we would request any ruling on
22        these motions for new trial be held in abeyance
23        until the Court of Appeals has made their
24        determination.
25                 THE COURT:          And what is the
```

```
 1      case law relative to whether or not  -- can you
 2      have a trial court rule on a motion for new
 3      trial when the Court of Appeals has already
 4      received the appeal of the defendants?
 5              MS. CLANCY:        Well, the case
 6      law seems to suggest that the trial court is
 7      divested of any jurisdiction regarding the
 8      motion for new trial once the defendants file
 9      their notice of appeal.
10              THE COURT:        Mr. Watson, would
11      you agree with that?
12              MR. WATSON:        Not exactly, Your
13      Honor.
14              THE COURT:        Do you have any
15      case law to show the Court and Mr. Watson?
16              MS. CLANCY:        Your Honor the
17      State of Ohio versus Peter A. Kenny.  It was
18      decided April 24th of 2003.
19              THE COURT:        Where are you
20      directing our attention?
21              MS. CLANCY:        I think it's page
22      four in the first column, four and five.
23              THE COURT:        All right.  In
24      paragraph 58 of page 5 we note Kenny filed
25      their motion for a new trial, it's referring
```

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1852 PKG1
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

11/16/2020 Page 1852
Page 1852

```
 1        to, after he filed a notice of appeal from his
 2        conviction.  When a case has been appealed, the
 3        trial court retains all jurisdiction not
 4        inconsistent with the reviewing court's
 5        jurisdiction to reverse, modify or affirm the
 6        judgment.  A motion for a new trial is
 7        inconsistent with a notice of appeal of the
 8        judgment sought to be retried.  Therefore, the
 9        defendants filing a notice of appeal divests
10        the trial court of jurisdiction to consider a
11        motion for new trial.  Is that what you're
12        referring to?
13                MS. CLANCY:         That's what I'm
14        referring to.
15                THE COURT:          Do you see that,
16        Mr. Watson?
17                MR. WATSON:         What part?
18                THE COURT:          On page 5 it's
19        the second column and it's paragraph 58.
20                MR. WATSON:         I see that
21        paragraph, Your Honor, but in terms of, I think
22        this case is a little bit distinguishable
23        because we're dealing with issues of
24        post-conviction claims.  Certainly the trial
25        court can deal with post-conviction claims.
```

1    There have been cases where the Court has had

2    appeals pending where motions for

3    post-convictions on newly discovered evidence,

4    for example, are certain instances where the

5    Court can make a ruling.  Certainly I think the

6    Court can make a ruling on the motions here

7    because, namely, if the Court of Appeals

8    decides in favor of the State, certainly the

9    revisiting of the motion for new trial would be

10   irrelevant at that point, so I think the Court

11   could be empowered to make a decision.

12            THE COURT:            Okay, I'm going

13   to deny the motion.  Actually I don't know if I

14   have jurisdiction to rule on it since it says,

15   the plain language is page 5, paragraph 58.

16   Therefore, the defendant's filing of a notice

17   of appeal divests the trial court of

18   jurisdiction to consider a motion for new trial

19   so I'm going to take my lead from the 8th

20   District Court of Appeals, and I believe I am

21   divested of jurisdiction since a notice of

22   appeal has been filed.  That's the plain

23   language of that case.  If you have something

24   that would contradict that, I'm certainly

25   willing to listen to it.

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1854 PKG1
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

11/16/2020 Page 1854
Page 1854

```
 1              MR. WATSON:          Okay, Your Honor,
 2     if you would hold it in abeyance and if there
 3     is --
 4              THE COURT:          I'm not going to
 5     rule because I'm divested of the ability to
 6     rule from that case, and I might say it's State
 7     versus Kenny, No. 81752, 81879, 8th District
 8     Court of Appeals decided April 24, 2003, so
 9     Mr. Hubbard and Miss Hubbard are done, and I
10     know you have a deputy shortage.  If you'd like
11     to take those two defendants back, that's fine
12     or if you want to leave them in the courtroom.
13     Deputy, it's really whatever is easiest for
14     you.
15              MR. MANCINO:          Your Honor, we
16     request Mr. Hubbard remain because we need him
17     as a witness to confirm his affidavit.
18              THE COURT:          He did not file a
19     motion or affidavit to Mr. Ru-el Sailor, did
20     he?  I thought only Mr. Ru-el Sailor filed it.
21              MR. MANCINO:          No, we filed a
22     supplement here with Mr. Hubbard's affidavit on
23     August 12th.  Affidavit of Cordell Hubbard.
24     Motion for new trial.
25              THE COURT:          All right.
```

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1855 PK01
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

11/16/2020 Page 1855
Page 1855

1    Mr. Hubbard can stay.  Deputies, if you want to

2    take Miss Hubbard down, you may.  If you want

3    to leave her here, that's fine as well.  All

4    right.  With respect to Mr. Ru-el Sailor, do

5    you want to say anything in way of an opening

6    statement, Mr. Mancino?

7              MR. MANCINO:          Yes, just briefly

8    in connection with our motion for a new trial.

9    I would point out we have been unsuccessful in

10   securing the appearance of William Sizemore who

11   was the person now identified being with

12   Mr. Hubbard on the day of the shooting.

13   Mr. Sizemore you know was a witness.  He wasn't

14   a participant in connection with the case.  He

15   was there although he's on probation to Judge

16   Fuerst.  I think we pointed out last time he

17   finally ran down, Mr. Watson ran down the

18   probation officer but apparently he switched

19   probation officers.  He's not scheduled for

20   another meeting I think until September the

21   11th that he's on probation.  We did issue a

22   subpoena to the address that the court records

23   show he's at 12625 Columbia Avenue.  That's the

24   address we gave the Court the last time we were

25   here when the detectives were here, but when

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1856 PKG1
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

11/16/2020 Page 1856
Page 1856

1    the subpoena was issued on August the 22nd,

2    August the 23rd, Mrs. Patrick or Miss Patrick

3    apparently resides there.  She called my office

4    and she says that Sizemore does not live there.

5    Apparently they were residents of that property

6    but they were evicted by the landlord.

7            As a matter of fact, she even informed

8    me that the detectives after our last hearing

9    went to that address trying to locate

10   Mr. Sizemore.  He wasn't there.  He's no longer

11   living there.  I don't have the current

12   address.  The records still have that 12625

13   Columbia Avenue.  We even issued a subpoena

14   where I understood he worked here I think it

15   was Bottoms Up.  Bottom Line Club.  The Bottom

16   Line Bar on, I mean 1087 Old River Road.  He

17   never responded to our subpoenas in connection

18   with the case.

19           We would ask that in connection with

20   the case that he's not available, I believe

21   Mr. Hubbard can confirm the fact that it was

22   Mr. Sizemore.  We do have an exhibit we'd like

23   to offer when Mr. Hubbard testifies to identify

24   a photograph of Mr. Sizemore who from the trial

25   testimony as I understand it fits exactly the

1   description given of the person who was with

2   the shooter.  I understand even Omar Clark's

3   brother, Umar Clark, when he heard the

4   description given by one of the witnesses,

5   Mr. Braxton, as the description of the shooter,

6   he says he's the one who shot the weapon that

7   evening, the description given was that of

8   Cordell Hubbard, and we would request to call

9   Cordell Hubbard to the stand, Your Honor.

10          THE COURT:          All right.  Did

11  you want to say anything by way of opening?

12          MS. CLANCY:          No, Your Honor.

13  Just I mean briefly I would just incorporate

14  all the argument that I previously made in my

15  brief.  I didn't add or provide an amendment

16  once I received a copy of the affidavit of

17  Cordell Hubbard, but still there are a

18  considerable number of factors that must be

19  considered in granting the motion for new

20  trial, and I believe even through the evidence

21  and testimony of Cordell Hubbard and his

22  affidavit, I still don't believe the defendant

23  can prevail in satisfying all six of those

24  factors in order to get a new trial.

25          Again it is within the sound

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1858 PKG1
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

11/16/2020 Page 1858
Page 1858

```
 1          discretion of this Honorable Court to decide
 2          whether or not to grant that motion, and I
 3          think the case law is clear that the
 4          discretionary decision to grant a new trial is
 5          an extraordinary measure which should be used
 6          only when the evidence presented weighs heavily
 7          in favor of the moving party.  I believe any of
 8          the evidence that you will hear through the
 9          witness or through any of the affidavits that
10          have been provided are going to be cumulative
11          and aren't going to be providing any additional
12          facts then what we have already heard.
13                    THE COURT:          All right.  Do
14          you want to call a witness, Mr. Mancino?
15                    MR. MANCINO:         Yes.  We'll call
16          Cordell Hubbard, Your Honor.
17                    THE COURT:          Sir, would you
18          approach the bench please?  Would you raise
19          your right hand?
20                         - - -
21
22
23
24
25
```

1       THE DEFENDANT, to maintain the issues on his

2       part to be maintained, called as a witness,

3       CORDELL HUBBARD, who, being first duly sworn,

4       was examined and testified as follows:

5          THE COURT:     Be careful.

6       There are two steps there.

7            - - -

8       **DIRECT EXAMINATION OF CORDELL HUBBARD**

9  **BY MR. MANCINO:**

10  Q.    State your name.

11  A.    Cordell J. Hubbard, sir.

12  Q.    Okay, Mr. Hubbard, you were the defendant in

13  the case, the aggravated murder trial involving Omar

14  Clark; is that correct?

15  A.    Yes, sir.

16  Q.    At the trial you did not testify, is that

17  correct?

18  A.    Correct.

19  Q.    And when the verdict, when the jury returned

20  verdicts, did you inform Mr. Sailor about the

21  information you put in your affidavit?

22  A.    When I went back to the holding cell, sir.

23  Q.    That was after the trial in the case?

24  A.    Correct.

25  Q.    That was after the jury had returned its

1   verdict in open court?

2   A.      Yes, sir.

3   Q.      And prior to that time you never had told --

4   had you ever told Mr. Sailor that information?

5   A.      No, sir, I kept it to myself.

6   Q.      Now you signed an affidavit here on August the

7   9, 2003; is that correct?

8   A.      Yes, sir.

9   Q.      Do you remember where you were when you signed

10  it?

11  A.      In Lorain Correctional facility.

12  Q.      And the notary public you signed it before was

13  whom?

14  A.      Mr. Watson.

15  Q.      Are all of these statements in this affidavit

16  that you signed, the ten paragraphs, are they true?

17  A.      Yes, sir.

18          (Thereupon, Defendant's Exhibit A was marked

19          for the purpose of identification.)

20  Q.      Mr. Hubbard, showing you Defendant's Exhibit A,

21  and first tell us what it is.

22  A.      It's a picture.

23  Q.      And in that picture can you, do you recognize

24  who is shown in that picture?

25  A.      Yes, sir.

1   Q.      Looking at Defendant's Exhibit A there is a

2   person who has, looks like a football jersey or a

3   jersey, it looks like a 92 on it; is that correct?

4   A.      Yes, sir.

5   Q.      Who is that person?

6   A.      That's Will.

7   Q.      Will.  Did you know his last name at that time?

8   A.      No, sir, just Will.

9   Q.      And do you know Will's last name now?

10  A.      I believe it's William Sizemore.

11  Q.      And on the evening of the shooting of Omar

12  Clark, was Mr. Sizemore with you?

13  A.      Yes, sir.

14  Q.      Was Ru-el Sailor anywhere present at the time

15  of the shooting?

16  A.      No, sir.

17  Q.      Previously that evening had you been with

18  Mr. Sailor?

19  A.      We was at the bar.

20  Q.      And do you remember what bar that was?

21  A.      The Benjamin.

22  Q.      What's the name of it again?

23  A.      The Benjamin.  Now it's the 4U2B Lounge.

24  Q.      Where is that located?

25  A.      Benjamin's Lounge is located on 152nd off St.

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1862 PKG1
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

11/16/2020 Page 1862
Page 1862

1 Clair and 4U2B bar is out at 260 and Euclid.

2 Q.     And at these two bars, were you always side by

3 side with Mr. Sailor?

4 A.     No.  No, sir.

5 Q.     Were you doing whatever you wanted to do on

6 your own there?

7 A.     Yes, sir, it was a bar.

8 Q.     When you went to the scene of the shooting, was

9 Mr. Sailor with you?

10 A.     No, sir.

11 Q.     Did you tell him you were leaving or anything?

12 A.     No, sir, I just left.

13 Q.     And how was it that Mr. Sizemore, Will Sizemore

14 or William Sizemore, was with you?

15 A.     Because we rode.

16 Q.     Pardon?

17 A.     We rode together.

18 Q.     From the bar?

19 A.     From the 4U2B Lounge.  We rode from the 4U2B

20 Lounge and went down on 105 and Englewood.

21 Q.     Did you tell Mr. Sailor that you were going to

22 leave or where you were going?

23 A.     No, sir.

24 Q.     After the shooting did you return to either of

25 these bars?

```
 1   A.      No, sir.  I went to St. Aloysius.

 2   Q.      Where is St. Aloysius located?

 3   A.      On I believe it's 109 and St. Clair.

 4   Q.      Did you meet up with Ru-el Sailor there at

 5   St. Aloysius?

 6   A.      Yes.

 7   Q.      I mean did you come there together or was he

 8   there when you arrived or what was the situation?

 9   A.      We didn't go together, me and Will.  I dropped

10   Will off and I went and told him I was going.  My

11   cousin called and told me to come up there so it was

12   like we met there.

13   Q.      Do you know if you were there first or Ru-el

14   was there first?

15   A.      I was there first.

16   Q.      Then Ru-el arrived?

17   A.      Yes, sir.

18   Q.      Did Ru-el Sailor have anything to do with the

19   shooting of Omar Clark?

20   A.      No, sir.

21   Q.      Did he ever ask you to do anything to Omar

22   Clark?

23   A.      No, sir.

24   Q.      Did he ever encourage you to do anything to

25   Omar Clark?
```

```
 1    A.      No, sir.

 2    Q.      As far as the shooting of Omar Clark, you were

 3    the one who shot him according to your affidavit, is

 4    that right?

 5    A.      Yes, sir, in self-defense.

 6    Q.      Just coming back to Defendant's Exhibit A, you

 7    are shown in this picture also; is that correct?

 8    A.      Yes, sir.

 9    Q.      Where are you in that picture?

10    A.      Second person from the left.  The third from

11    the right in the tan.

12    Q.      And is Ru-el Sailor shown in this picture also?

13    A.      Yes, sir.  He's in the back.

14    Q.      How would you describe your coloring?

15    A.      Light skinned.

16    Q.      How would you describe Will Sizemore's

17    coloring?

18    A.      Light skinned.

19    Q.      How would you describe Ru-el Sailor's coloring?

20    A.      Dark skin.

21    Q.      You know who this fourth person is here?

22    A.      My cousin Sherome.

23                    MR. MANCINO:        We would offer

24            Defendant's Exhibit A, Your Honor.

25                    THE COURT:        All right. You
```

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1865 PKG1
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

11/16/2020 Page 1865
Page 1865

```
 1            can leave that with the court reporter.  That's

 2            the picture from the trial, right?

 3                    MR. MANCINO:        I don't believe

 4            so.  It's a different picture.

 5                    THE COURT:          I thought it was

 6            from the trial.  Oh, but the same -- okay.

 7  Q.    Is there any doubt in your mind that Ru-el

 8  Sailor was not with you?

 9  A.      No, sir.

10                    MR. MANCINO:        I have no further

11            questions.

12                    THE COURT:          Miss Clancy.

13                    MS. CLANCY:         Thank you, Your

14            Honor.

15                         - - -
```

16            **CROSS-EXAMINATION OF CORDELL HUBBARD**

17  **BY MS. CLANCY:**

```
18  Q.    So what you're telling us today is on November

19  16th of 2002 you were with Ru-el Sailor for the

20  evening.  However, when you went to Englewood he

21  wasn't with you?

22  A.      Repeat that question, ma'am.

23  Q.    On November 16th of 2002 when you killed Omar

24  Clark the defendant, Ru-el Sailor, was with you

25  throughout the evening except for when you went over
```

1   to Englewood?

2   A.      Me and Ru-el was the guy at the Benjamin's

3   Lounge Bar.  We was together and at the 4U2B Lounge

4   Bar and he was not with me at 105.  We was together

5   afterwards at St. Aloysius.  Me and William was there.

6   Q.      When did you meet up with Ru-el Sailor that

7   night?

8   A.      Early, like about around ten o'clock.

9   Q.      Ten o'clock in the evening?

10  A.      Yes.

11  Q.      Once you met him, what did you do?

12  A.      I had a few drinks at the Benjamin's Lounge

13  Bar.  I was rapping.

14  Q.      Where did you meet him?

15  A.      At the bar, Benjamin's Lounge Bar.  Benjamin's.

16  Q.      What color car were you driving that night?

17  A.      It was a gray car.

18  Q.      What kind of car was he driving that night?

19  A.      I think it was a white car.

20  Q.      Once you got to the Benjamin's Bar, what did

21  you do?

22  A.      Nothing.  We all sat, drank.  I rapped so we

23  was rapping.  We had a rap contest then we all decided

24  to go to the 4U2B Lounge.  We left all in different

25  cars and went for the 4U2B Lounge and had more drinks.

1    That's it.

2    Q.    Well how long did you stay at Benjamin's?

3    A.    For about an hour, yeah, about an hour or two

4    probably.  We was there for a minute.  About an hour

5    or two.

6    Q.    What time did you leave Benjamin's?

7    A.    I can't really give you an exact time but I

8    know it was before one o'clock.

9    Q.    One o'clock in the morning?

10   A.    Yes.

11   Q.    When you left to go, who was driving with you?

12   A.    Me and William.

13   Q.    Will Sizemore?

14   A.    William, yes.  William Sizemore.

15   Q.    So when you sat here and you listened to the

16   testimony of Ru-el Sailor then everything that he

17   testified to was wrong, is that what you're telling us

18   today?

19   A.    No, ma'am.

20   Q.    It's not wrong?

21   A.    No, ma'am.

22   Q.    Well, didn't Ru-el Sailor testify that he was

23   in the car with you the entire evening?

24   A.    Ru-el had to get his hat.  I didn't tell him --

25   he didn't even have knowledge of what happened so

1    myself trying to cover myself up, I was, you know,

2    trying to tell him I don't remember.  I was with you.

3    We was at the bar, you know, so it happened last year.

4    It's about to be a whole year so I was trying to make

5    him remember like I was with you, remember we was

6    doing all this, you know so --

7    Q.    So when he said he was with you that whole

8    night, that's not true then?

9    A.    Not the whole night, no, ma'am.

10   Q.    All right.  So you left Benjamin's Bar then you

11   went to the 4U2B Bar?

12   A.    Yes.

13   Q.    All right.  Do you remember what time you got

14   there?

15   A.    It had to be about like I said I know it was

16   before one o'clock.  It was about, as a matter of

17   fact, it had to be about 11:00 something.

18   Q.    Once you got to the 4U2B Bar, what did you do?

19   A.    Drank.

20   Q.    Okay, Ru-el Sailor was there with you?

21   A.    Yeah, he was in there too.

22   Q.    How did it come about that you left that bar?

23   A.    I got a phone call.

24   Q.    And once you got the phone call, what did you

25   do?

```
1    A.      I left.  I just upped and left.  Will was
2    riding with me.  I told him I was leaving.  He said he
3    was riding with me.
4    Q.      All right.  He rode with you and where did you
5    go?
6    A.      Englewood.  105 and Englewood.
7    Q.      And before you left did you see Ru-el Sailor?
8    A.      I mean I seen him not right before I left.  I
9    just, the 4U2B is real big.  I got the phone call,
10   went into the bathroom.  I just hung up and walked
11   right out.  Will was like, "What's up?"  I said, "I'm
12   about to leave."  He said, "I'm leaving with you", and
13   we left.
14   Q.      What was Will wearing that night?
15   A.      Excuse me?
16   Q.      What was Will wearing that night?
17   A.      Will?
18   Q.      What was Will wearing?
19   A.      He had a white T-shirt on and like white cream
20   shorts.
21   Q.      He had shorts on?
22   A.      Yeah.  Yes.  Some white cream shorts like.
23   Q.      What was Ru-el Sailor wearing that night?
24   A.      That jersey.  The New Jersey jersey.  It was
25   gray.  New Jersey jersey.
```

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1870 PKG1
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

11/16/2020 Page 1870
Page 1870

```
 1   Q.    Ru-el had a red jersey on that night?

 2   A.    No, gray.

 3   Q.    Gray jersey on that night?

 4   A.    Yeah.

 5   Q.    What did you have on that night?

 6   A.    I had on red, gray-like suede material sweater.

 7   Q.    And who was wearing red headbands that night?

 8   A.    I had a red headband on.

 9   Q.    Who else did?

10   A.    Ru-el probably·had one on.  I know he had one

11   on in the picture but we take them on and off.

12   Certain spots don't let you wear headbands in the bar

13   like for the 4U2B Bar, you can't wear them in the bar.

14   Q.    All right.  You were here during the trial when

15   other photographs were introduced as exhibits, right?

16   A.    Correct.

17   Q.    Okay, no one other than you and Ru-el Sailor

18   were in those photographs, right?

19   A.    Me, Ru-el and my cousin Sherome, some other

20   females.

21   Q.    Was anyone else in any of those photos?

22   A.    Yes, my cousin, a female.  I don't even know.

23   People would be hopping in the pictures.

24   Q.    Was William Sizemore in any of those photos?

25   A.    We only went one place and took photos.  That
```

1  was at St. Aloysius.  I dropped him off before I went

2  there.

3  Q.    So during the entire trial this photo,

4  Defendant's Exhibit A, wasn't available?

5  A.    That wasn't the night we took it.  That was

6  this year.

7  Q.    This Defendant's Exhibit A, when was this

8  taken?

9  A.    This year.

10  Q.    This wasn't taken on the night of November

11  16th?

12  A.    No.  The one that was produced in trial --

13  Q.    The one that was produced in trial was taken on

14  November 16th of 2002?

15  A.    Yes.

16  Q.    Okay, so this photo, Defendant's Exhibit A,

17  wasn't taken on November 16th of 2002?

18  A.    No.

19  Q.    When was this photo taken?

20  A.    This year, ma'am.

21  Q.    When this year?

22  A.    As a matter of fact, that's when I got out.

23  That's the day I got out of jail.

24  Q.    Okay, so none of the photos that were produced

25  at trial had William Sizemore in those photos, right?

1 A.     We only took one photo, well, that one place we

2 took photos that was at St. Aloysius.  I told you I

3 dropped him off before I went to St. Aloysius.

4 Q.     There were two photos taken that were

5 introduced at trial, is that correct?

6 A.     Correct.

7 Q.     Okay, so there was more than one photo taken at

8 St. Aloysius?

9 A.     Yes, but at the same spot, St. Aloysius.

10 Q.     In none of those photos was William Sizemore

11 present?

12 A.     No, he wasn't there.

13 Q.     He never made it to St. Aloysius that night?

14 A.     I dropped him off before I went to

15 St. Aloysius, ma'am.

16 Q.     Where did you drop him off?

17 A.     I can't really tell you where.  It was like in

18 the heat of the moment.  Just told me to drop him.  I

19 dropped him off.

20 Q.     I thought he had a car with you?  Didn't you

21 testify he had his own car with him?

22 A.     I was driving, ma'am.

23 Q.     Okay, I thought you testified that at the

24 beginning of this evening Ru-el Sailor was driving a

25 white car.

```
 1   A.      He was.

 2   Q.      Okay, so what happened to the white car?

 3   A.      Who we talking about?  Will or Ru-el?

 4   Q.      Ru-el Sailor.

 5   A.      You just asked me was William Sizemore present

 6   when the picture, photo was taken.  Now you jumped to

 7   Ru-el.  You confuse me.

 8   Q.      Sorry about that.  Was Ru-el Sailor present at

 9   St. Aloysius?

10   A.      Yes, he was.

11   Q.      Was William Sizemore present at St. Aloysius?

12   A.      No, he wasn't.

13   Q.      So after you killed Omar Clark, then you took

14   William Sizemore home, is that correct?  That's what

15   you're telling us today?

16   A.      After I left the scene of 150 and Englewood, I

17   dropped William Sizemore off.

18   Q.      Then where did you go?

19   A.      I went to St. Aloysius.

20   Q.      And that's when you took the photos with Ru-el

21   Sailor?

22   A.      Yes, and my cousin, some females, yes.

23   Q.      All right.  Now you testified that you shot

24   Omar Clark.  It was in self-defense, right?

25   A.      Yes.
```

**Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1874 FKGI**
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

**11/16/2020 Page 1874**
Page 1874

1  Q.     That's what you're testifying to?

2  A.     Yes, self-defense.  Yes.

3  Q.     That's what's included in your affidavit?

4  A.     Yes.

5  Q.     And how was this self-defense?

6  A.     Because Omar Clark had a weapon.  He drew a

7  weapon on me, not once but twice.

8  Q.     Well, when did he draw the weapon up the first

9  time?

10  A.     When he walked up to the scene.

11  Q.     And then what did you do?

12  A.     Nothing.  Will knew him.  I don't know him.  I

13  didn't know none of the guys out there.  He put a gun

14  up and walked to the car.  There was another parked

15  car on the right-hand side.  He walked up, asked who

16  that was.  He pulled his gun out on him.  Dude got out

17  of the car, told him nigger, get away from my car.

18  Said get the fuck away from my car, then he walked

19  back, pointed the gun at me.

20  Q.     All right.  So once he pointed the gun at you,

21  what did you do?

22  A.     I drew my gun when he turned around.

23  Q.     And then you shot him?

24  A.     No.

25  Q.     Once you drew your gun, what did you do?

```
 1   A.      Told Will to tell him.  Will said, man, he seen
 2   me pull out the gun.  He said don't shoot.  I was like
 3   man, don't shoot.  He is woo'd.  He said, man he isn't
 4   going to shoot.  I don't know.
 5                   THE COURT:        You don't know if
 6           he was what?
 7                   THE WITNESS:      I'm sorry, Your
 8           Honor, under the influence of PCP but he was.
 9                   THE COURT:        Who was under the
10           influence?
11                   THE WITNESS:      Omar Clark
12           because he was dangling the gun just, you know,
13           I'm like Will told him to put the gun up.  He's
14           like, man he's going -- he put it up the first
15           time and then he walked to the car, pulled it
16           back out on the dude.  I guess it was the
17           peoples who came to testify, uncle or
18           something.  They were saying he was sitting in
19           the car.  That's when he pulled it out on me.
20           He walked up on Will.  That's when Will smacked
21           his hand like man, get the fuck off me and he
22           turned around and that's what happened.
23   Q.      And he turned around?
24   A.      Put the gun away.  Turned around like this.
25   (Indicating).
```

```
 1    Q.      The gun pointed at you?

 2    A.      Yeah.

 3    Q.      Turned around with the gun pointed at you?

 4    A.      As he was turning, that's when I shot.

 5    Q.      How many times did you shoot him?

 6    A.      I couldn't tell you, ma'am.

 7    Q.      More than once?

 8    A.      I don't know.  I just know I shot him.  I

 9    couldn't tell you.  I couldn't be exact.  I just know

10    I shot him.

11    Q.      Was it more than once?

12    A.      Yeah.

13    Q.      Yes?

14    A.      Yes, I was just shooting.  I don't know.  I

15    couldn't tell you exactly how many times I shot him,

16    ma'am.

17    Q.      Was anyone else shooting on that night?

18    A.      Yeah, some guy.  The way it happened, the way

19    it happened, I couldn't  -- it happened.  It was so

20    messed up.  I had a firearm on me.  Omar Clark had a

21    firearm.  There was another guy on the cut and a

22    cousin had a firearm on him also.

23    Q.      Who is this other guy?

24    A.      I don't know.

25                    THE COURT:      What did you say
```

```
1              his name was?
2                     THE WITNESS:        I don't know.
3                     THE COURT:          Did you say cut?
4                     THE WITNESS:        He was off on a
5         cut.
6                     THE COURT:          I thought you
7         said his name was Cut.  He was off on a cut?
8                     THE WITNESS:          When we pulled up
9         to the scene, the guys, you know, we were out
10        here.  The dude was right here.  Dude, you know
11        what I'm saying.  "What's up?", so I called my
12        sister.  "What do you have on him?"  My sister
13        is like, "Man, forget it.  I'm cool.  It's
14        cool.  I'm all right", so I'm on the phone with
15        my sister and Will is having words.  William
16        Sizemore was like -- Will was having words.
17        "It's cool fucker.  I'm cool.  Hang up."  I'm
18        like, "Come on.  I don't even know this guy",
19        so I'm like it's just him by himself at this
20        time, and then when we were walking off Omar
21        Clark walks up with the firearm.
22                    I'm like, "What's up, nigger?  What's
23        up?"  Then that's when I'm like, you know, Will
24        is like, "Nigger, you know me", and that's when
25        they were talking like, "Yeah, what's up?  This
```

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1878 PKG1
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

11/16/2020 Page 1878
Page 1878

1    is my dude."  He didn't even get involved in

2    the first place.

3   Q.    Let me stop you there.  You're telling us today

4   that Omar Clark walked up to you and pointed the gun

5   at you?

6   A.    No, he walked up on the scene.  He had the gun

7   out.

8   Q.    He walked up on the scene and just had the gun

9   out?

10  A.    Yeah.

11  Q.    You just pulled up and all of a sudden you see

12  Omar Clark there standing with the gun?

13  A.    No man, I told you.  We pulled up.  I pulled up

14  on the dude.  Asked him, "Is your name Dude?"  I

15  called my sister.  She said, "Fuck it" like forget it

16  like I'm cool, I'm all right.  She was like, "I'm

17  cool."  I hang up.

18        At the time Dude and Will was having words.  I

19  get off the phone.  I'm like -- she said it's cool.

20  As we get in the car, while I was getting in the car,

21  Will was still standing there.  Omar Clark walked up

22  with the gun out to his side like, "What's up, nigger?

23  What's up?"

24        I don't know, you know, around the neighborhood

25  guys I don't know, but he walked up with the gun.

 1   "What's up?"  Will is like, "You know me", and he's

 2   like, I'm like, "Will, what's up?  Tell him to put the

 3   gun up."  I don't know him.  I don't know Dude so I'm

 4   not comfortable with him with the gun out.

 5   Q.     Then you pulled your gun out?

 6   A.     No.  He put his gun up and he had like a

 7   little, I don't know, he put it up like this and

 8   then --

 9                   THE COURT:          Put it up like

10          this.  I can't see you, sir.

11                   THE WITNESS:        He had a jacket

12          on.  He had a jacket on, a coat.  I guess the

13          pockets went like this.  (Indicating).

14                   THE COURT:          Like in the

15          front?

16                   THE WITNESS:        Yeah.  He put it

17          up like this.

18                   THE COURT:          So he put his gun

19          in his jacket?

20                   THE WITNESS:        Yeah, somewhere

21          like around his waistband.  It was right there

22          and he walked up to the car, parked car.  Like

23          who the fuck is this.  Pulled the gun out.  It

24          was a big dude.  Big, dark-skinned dude.  He

25          had on glasses.  He said, "Man, get the fuck

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1880 PKG1
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

11/16/2020 Page 1880
Page 1880

```
 1          away from my car."  That's when he turned

 2          around.  He said blase, blase.

 3   Q.     When you say blase, blase, what do you mean?

 4   A.     I can't remember what he was saying after he

 5   said you better get the fuck away from my car with

 6   that shit.  I can't say what he was telling Omar Clark

 7   so Omar Clark turned around.  He still had the gun

 8   out.  I pulled out my gun.  I had a gun on me.  I

 9   pulled it out, put it behind my back like this.  He

10   pointed to my stomach like.  Then I'm like, he turned

11   around I mean to William.  Will was like, you know, he

12   tried -- I don't know.  He tried to touch him or

13   something.  Will smacked his hand down.  I was like,

14   "Will, tell him to put his gun up."

15          He turned around like this, and that's when I

16   shot him.

17   Q.     He turned around.  He wasn't really pointing a

18   gun at you when you shot him?

19   A.     After he pointed the gun at my stomach and said

20   you ain't the only one with the stomach, he turned to

21   Will.  Will smacked his hand off him.  "Man, get the

22   fuck off."  I'm like, "Will, tell him to put his gun

23   up."  When the gun was like this, he turned around

24   like this.  Say I'm the sheriff.  He's like this.  He

25   turned around like this.  That's when I shot him.
```

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1881 PKG1
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

11/16/2020 Page 1881
Page 1881

1   Q.      And you shot him a number of times?

2   A.      Ma'am, I just told you I don't know how many

3   times I shot him.

4   Q.      Was anyone else shooting besides you?

5   A.      No.

6   Q.      Just you?

7   A.      A guy.  The guy that had the gun in the cut.

8   He was shooting.  I don't believe he was shooting at

9   us.  He shot.  We are on the left-hand side of the

10  street.  The gunshots came from the right-hand side of

11  the street.

12  Q.      Okay, so are you saying now those gunshots

13  could have hit Omar Clark also?

14  A.      No.

15  Q.      Okay, so after you killed him then what did you

16  do?

17  A.      After I left the scene on Englewood, we got in

18  the car.  We pulled off and Will was like, you know,

19  he was like dang.  I was still in shock.  Will was

20  like "Man, drop me off."  I dropped him off to my

21  cousin.  He said, "I'm at St. Aloysius."  I said,

22  "Come up here."  I was like, "Man, come up here.

23          "What's up?"  I said, "I'm on my way up there."

24  Q.      You went to St. Aloysius?

25  A.      Yes.

1   Q.      That's when you saw Ru-el Sailor?

2   A.      That's when we met back up.

3   Q.      That is when you took those photos that were

4   introduced during trial?

5   A.      Yes.

6   Q.      Okay, and how long did you stay at

7   St. Aloysius?

8   A.      Until it was over.

9   Q.      And then what did you do?

10  A.      I went home with a female.

11  Q.      And you weren't driving at all with Ru-el

12  Sailor?

13  A.      No.

14  Q.      And you didn't take him home that night?

15  A.      No.

16  Q.      And you never drove with him in the car?

17  A.      Yes.

18  Q.      When was it that you drove with him in the car?

19  A.      After St. Aloysius.

20  Q.      After St. Aloysius you and Ru-el Sailor were in

21  the car together?

22  A.      Yes.

23  Q.      Who else was in the car?

24  A.      Just me and him.  I parked the car because I

25  was scared.

1  Q.    Where was Ru-el Sailor's car?

2  A.    At St. Aloysius.

3  Q.    Okay, where did you go with Ru-el Sailor?

4  A.    We met up at St. Aloysius.  I left my car over

5  there and got in the car with him and we was just

6  riding around.

7  Q.    What were you doing riding around?

8  A.    Just riding around.  Still had a bottle of

9  champagne.  We were sipping champagne.

10  Q.    You said what?

11  A.    I had a bottle of champagne.  We were sipping

12  champagne.  He smoked some weed.

13  Q.    And did you tell him what you did?

14  A.    No.

15  Q.    And how long were you driving around with him?

16  A.    Not that long.  About a half an hour or 40

17  minutes.  My phone kept ringing.

18  Q.    So when Ru-el Sailor came in and testified that

19  he was with you for the entire evening, then that's a

20  lie; right?

21  A.    We was together the whole time except when I

22  went on 105 and Englewood.  He didn't know I left.  I

23  didn't tell nobody.  I didn't have plans on going, and

24  after I did it and the situation happened, I

25  definitely wasn't telling nobody that I did it.

```
 1   Q.      So then you weren't together all night?

 2   A.      Not on 105 and Englewood, no, ma'am.

 3                   MS. CLANCY:          I have nothing

 4           further, Your Honor.

 5                   THE COURT:           Anything further,

 6           Mr. Mancino?

 7                   MR. MANCINO:         Yes.

 8                          - - -

 9           REDIRECT EXAMINATION OF CORDELL HUBBARD

10   BY MR. MANCINO:

11   Q.      When you go in these bars, how big of a bar is

12   Benjamin's?

13   A.      Benjamin's is like half of this room.

14   Q.      Are there a lot of people in there?

15   A.      Sometimes, but not really, not this night

16   because not when we first got there because we was

17   rapping.  You know we would be cussing.  I would be

18   cussing and stuff on the mike so as people started

19   coming I stopped so it started getting like a little

20   crowded but we left.

21   Q.      But you wouldn't be right next to Ru-el the

22   entire evening, would you?

23   A.      No.

24   Q.      He would be doing what he wanted to do and you

25   would be doing what you wanted to do, right?
```

```
 1   A.      Yes, we were at a bar.

 2   Q.      That's when you went to the other bar?

 3   A.      The 4U2B.

 4   Q.      The what?

 5   A.      The 4U2B.

 6   Q.      The 4U2B?

 7   A.      Yes.

 8   Q.      You went there for the same thing?

 9   A.      Yes, but it's much bigger.  They have a dance

10   floor.  They have two sides of it.  There is a side

11   over there where you can shoot pool.  A bar in the

12   middle.  You can eat and there is a dance floor over

13   here.

14   Q.      Were you able to actually see Ru-el when you

15   were in that bar?

16   A.      We were -- I called him.  I was like where are

17   you?  Man, I'm over here by the pooltable or something

18   like that.

19   Q.      When you say you called him, how did you call

20   him?

21   A.      Went in the bathroom.

22   Q.      But you never told him you were leaving out to

23   go somewhere, is that right?

24   A.      No, sir.  My sister called.  I heard her crying

25   and I just left.  Will bumped into me.  I said, "I'm
```

1    leaving man."  He said, "I'll ride with you" and we

2    left.  I didn't tell nobody.  I was there with my

3    friend Sammy Brown.  I didn't tell him either.  I just

4    left.

5    Q.    Ru-el Sailor had nothing to do with causing the

6    death of Omar Clark, is that correct?

7    A.    No, sir.

8                    MR. MANCINO:        All right.

9          Nothing further.

10                   THE COURT:        Miss Clancy.

11                   MS. CLANCY:        Nothing further,

12         Your Honor.

13                   THE COURT:        You may step

14         down.  Anything further, Mr. Mancino?

15                   MR. MANCINO:        No, we don't,

16         Your Honor.

17                   THE COURT:        Miss Clancy.

18                   MS. CLANCY:        No, Your Honor.

19                   THE COURT:        All right.  Would

20         you like to be heard in argument?

21                   MR. MANCINO:        Just briefly,

22         Your Honor.  I think in my opinion and my

23         experience this is a pretty compelling case

24         that the Court should exercise its discretion

25         in granting a new trial on this case.  I mean

1     here you have someone who was a co-defendant

2     obviously at the trial.  Mr. Sailor did not

3     know the information that Mr. Hubbard had.  He

4     only told him after the verdict in the case,

5     and even if Mr. Sailor did know it, he could

6     not call Cordell Hubbard.

7           There was a joint Hubbard.  He could

8     not call him as a witness in the case because

9     Mr. Hubbard would obviously have the right to

10    exercise his Fifth Amendment Right and not

11    testify.  He could not be compelled to testify

12    in this particular case.  You know I mean this

13    to me puts a whole different slant on the

14    testimony.  There is no real physical evidence

15    connecting Ru-el Sailor to this.  You have some

16    eyewitness identification.  Eyewitness

17    identification really doesn't describe Ru-el

18    Sailor as being there.  Light-skinned

19    individual.

20          When you look at the picture there and

21    you see Will Sizemore, he is light skinned.

22    Mr. Sailor says I'm the one who did the

23    shooting.  I don't know how much more

24    compelling it can be, and it seems in these

25    circumstances that this, certainly it is

```
1    material.  It's not cumulative to anything in
2    this case.  Had Mr. Hubbard obviously testified
3    at the first trial and then we were bringing
4    him in, then you could say well, this is
5    cumulative but it's not cumulative.  It is new.
6    It's compelling and you have somebody that
7    states I am the one who did the shooting.
8              Mr. Sailor was convicted of the
9    offense, was nowhere there, had nothing to do
10   with it, didn't encourage me, didn't tell me to
11   do anything.  I never told him anything
12   concerning the matter where I was on that
13   particular night, and you know obviously they
14   were together, but you know young males when
15   they go to a bar, they aren't hand in hand with
16   one another.  They go in there.  They talk to
17   whoever they want to talk to whether it's a
18   female, with their friends or whoever.  They
19   aren't watching everybody every particular
20   minute.
21             You could say yes, I was in a bar with
22   him.  Now whether he left or not, he wouldn't
23   have any way of knowing whether he left because
24   he's doing his own thing.  You just assume you
25   see somebody and you see him later, you assume
```

1     that person was there the entire time, and I

2     think you know in this evidence I think in the

3     interest of justice I think we have a situation

4     where one who is actually innocent of the

5     offense has been convicted and the Court should

6     exercise its discretion and grant him a new

7     trial.

8           THE COURT:        Miss Clancy, on

9     behalf of the State of Ohio.

10          MS. CLANCY:       Thank you, Your

11     Honor.  I want to put on the record in the

12     State of Ohio versus Petro, the six factors

13     that must be satisfied before the Court can

14     grant a motion for new trial.  One being that

15     the newly discovered evidence discloses a

16     strong probability that it will change the

17     result if the new trial is granted.  Two, that

18     it has been discovered since the trial, is such

19     that it could not in the exercise of due

20     diligence have been discovered before the

21     trial, is material to the issues, is not merely

22     cumulative to former evidence and does not

23     merely impeach or contradict the former

24     evidence.

25          As you are aware, Ru-el Sailor

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1890 PKG1
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

11/16/2020 Page 1890
Page 1890

1  testified during the trial and testified that

2  he was with Cordell Hubbard the entire evening

3  of the trial.  I do believe that he even stated

4  under oath that to be honest my whole day

5  consisted of 150 and Benjamin's and Euclid and

6  then later that night went to a little party at

7  St. Aloysius all with Cordell Hubbard.

8        After the sworn testimony the

9  defendant now comes in and wants you to believe

10  everything that Cordell Hubbard has presented

11  to you today.  I believe that it is cumulative,

12  and that we heard all of the evidence during

13  trial that Omar Clark was shot, that he was

14  killed and this defendant, Cordell Hubbard, was

15  identified as being there and the defendant

16  Ru-el Sailor was identified as being there so

17  what he has to present today is just in

18  addition to.  He came in today and confessed

19  that he was the shooter, but we already heard

20  all this testimony during that trial of who was

21  shooting and who was there and who was present

22  and what happened through other witnesses.

23        In addition to that, you haven't heard

24  an affidavit or you haven't heard from William

25  Sizemore to say he was present, and the

1    witnesses, Tenitta Johnson and Larry Braxton,

2    testified there were more than just a few

3    people in that area, that there were people in

4    addition to Cordell Hubbard and Ru-el Sailor

5    talking to Omar Clark and Dude at the time of

6    the shooting that occurred and not one time was

7    anyone identified during that trial wearing a

8    white T-shirt and white shorts.  There was no

9    identification of that.  The identification was

10   red sweatpants and red T-shirts, red jerseys,

11   and the defense admitted into evidence photos

12   of both Ru-el Sailor and Cordell Hubbard.

13   Nowhere in that photo was William Sizemore or

14   anyone else other than those two and they were

15   both wearing the red sweatpants and the

16   jerseys, the red jerseys and jeans.  There was

17   no identification of anyone wearing any white

18   shorts at the time.

19         Your Honor, in addition in looking at

20   the fact that this testimony completely

21   contradicts the testimony of Ru-el Sailor

22   during the trial and under oath, Cordell

23   Hubbard doesn't even come clean and testify as

24   to what happened and that now he's stating it's

25   self-defense.  Again we never heard anything

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1892 PKG1
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

11/16/2020 Page 1892
Page 1892

1    about self-defense and there was never any

2    testimony through any of the witnesses who came

3    in here and said that Omar Clark had a weapon,

4    that there was anything that looked like

5    self-defense.  There was never any testimony

6    about this other guy who is shooting somewhere

7    in the air.  This is all brand new information,

8    and none of the witnesses who came in and

9    testified during trial testified to any of this

10   so you have to question the credibility of

11   Cordell Hubbard, and that now in this motion

12   for a new trial he's telling you he was the

13   shooter but he still qualifies it by saying it

14   was self-defense.

15        Omar Clark was going to shoot him.  We

16   never heard about that.  There was never a gun

17   recovered close to Omar Clark.  There was never

18   a gun recovered in that vicinity, so again in

19   order to prevail on their motion they must have

20   satisfied all six of these elements as required

21   by the State of Ohio versus Petro and it's

22   clear that they have not satisfied this.

23   William Sizemore could have been there but the

24   witnesses who came in and testified identified

25   Ru-el Sailor as being there and Cordell Hubbard

1    and they also through the testimony of Larry

2    Braxton, he picked Ru-el Sailor out of a photo

3    array, and then when he was in court was able

4    to identify him as being there as well as Dude

5    came into court and was able to identify him

6    being there, so again, Your Honor, the granting

7    of this motion is within the sound discretion

8    of the Court, and I don't believe that the

9    defense has been able to come in here and

10   satisfy all of those elements that are required

11   by the State of Ohio versus Petro.

12            You have to look at the testimony and

13   the affidavit of this, of Cordell Hubbard, with

14   questions in that he still can't come clean as

15   to what really happened.  In addition to that,

16   the testimony of Ru-el Sailor throughout trial

17   completely contradicts the testimony today so

18   for all of those reasons, Your Honor, we would

19   request that you deny this motion for a new

20   trial.

21            THE COURT:            Mr. Watson, did

22   your client, Mr. Hubbard, file a notice of

23   alibi?

24            MR. WATSON:            Notice of alibi

25   was in fact filed, yes.

```
 1          THE COURT:          Did it indicate
 2   Mr. Hubbard's notice of alibi indicating that
 3   he was with Ru-el.Sailor all night?
 4          MR. WATSON:          The notice of
 5   alibi indicated two different places.  There
 6   was actually a discussion about that.
 7          THE COURT:          Do you have a
 8   copy of that?
 9          MR. WATSON:          No, I didn't
10   bring that because the defense --
11          THE COURT:          What did it say
12   as best you can remember?
13          MR. WATSON:          What the notice
14   said they were in two places together.  The
15   Benjamin's --
16          THE COURT:          Say that again.
17          MR. WATSON:          The Benjamin's
18   Night Club.
19          THE COURT:          They -- who are
20   the people?
21          MR. WATSON:          There were a
22   number of witnesses other than Ru-el.
23          THE COURT:          Who was in the
24   notice of alibi?
25          MR. WATSON:          Cordell, but the
```

**Cuyahoga County Prosecutor's Office** 5091247 198502 V7887561-1895 PKG1
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

**11/16/2020 Page 1895**
Page 1895

```
 1        witnesses are you saying --
 2               THE COURT:        No.  My question
 3   is, is the notice of alibi -- did Mr. Hubbard
 4   file a notice of alibi saying he was with the
 5   defendant, Ru-el Sailor, that night?
 6               MR. WATSON:        Not just one
 7   witness, Your Honor.
 8               THE COURT:        Was that in the
 9   affidavit or in the notice of alibi?  That's my
10   only question.
11               MR. WATSON:        Right.
12               THE COURT:        Mr. Hubbard
13   listed Mr. Sailor as his alibi witness.
14               MR. WATSON:        One of them.
15               THE COURT:        Right, one of
16   them, okay.  All right.  I'm going to deny the
17   motion for a new trial based on all the
18   evidence and the applicable law.  Thank you.
19                      - - -
20        (Thereupon, the proceedings were concluded.)
21
22
23
24
25
```

Cuyahoga County Prosecutor's Office 5091247 198502 V7887561-1896 PRG1
Pages 63-1896 - Transcripts - Cuyahoga County Prosecutor's Office Civil Division 01/25/2024

11/16/2020 Page 1896
Page 1896