Motion No.  <u>4930256</u>



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**May 12, 2021 21:23**

By: TONY SHANG 100246

Confirmation Nbr. 2252147

RU-EL SAILOR                              CV 20 931518

vs.

STATE OF OHIO                    **Judge:**  SHERRIE MIDAY

**Pages Filed:**  45

# IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| **RU-EL SAILOR**, | : | |
| | : | Case No. CV-20-931518 |
| Plaintiff, | : | |
| | : | |
| v. | : | Judge Sherrie Miday |
| | : | |
| **STATE OF OHIO**, | : | |
| | : | Case Type: Wrongful Imprisonment |
| Defendant. | : | |

---

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Defendant State of Ohio ("State"), through counsel, hereby moves this Court for summary judgment pursuant to Civ.R. 56. A Memorandum in Support is attached.

Respectfully submitted,

DAVE YOST (0056290)
Ohio Attorney General

*/s/ Tony H. Shang*
TONY H. SHANG (0100246)
Assistant Attorney General
Criminal Justice Section, Corrections Unit
30 E. Broad Street, 23rd Floor
Columbus, Ohio 43215
(614) 644-7233; (866) 440-5704 fax
Tony.Shang@ohioago.gov

*Counsel for Defendant State of Ohio*

## **MEMORANDUM IN SUPPORT**

## I.    INTRODUCTION

Plaintiff Ru-El Sailor's ("Plaintiff") was an inmate previously in custody of the Ohio Department of Rehabilitation and Correction ("ODRC"). On March 27, 2020, Plaintiff filed the present lawsuit to be declared a wrongfully imprisoned individual under R.C. §2743.48.  Plaintiff's lawsuit should be dismissed and summary judgment should be granted as he has failed to meet the mandatory requirements under R.C. §2743.48.

## II.   STATEMENT OF THE CASE/PROCEDURAL HISTORY

In early 2003, Sailor was indicted for the murder of Omar Clark. On April 3, 2003, Sailor entered a plea of not guilty. On June 5, 2003, jury found Sailor guilty on twelve counts. The Eighth District Court of Appeal affirmed Sailor's conviction. *State v. Sailor*, 8th Dist. Cuyahoga no. 83552, 2004-ohio-5207, appeal not accepted, 105 Ohio St.3d 1464, 2005-ohio-1024.

According to the Complaint, Sailor declared he is a "wrongfully imprisoned individual" because he satisfies each of the necessary requirements set forth in R.C. 2743.48(A).  *See generally* Complaint.  On March 28, 2018, Sailor and the State of Ohio filed a joint motion to vacate his conviction based on new evidence. (Complaint at ¶ 28). The Court granted the joint motion to vacate on March 28, 2018. (*Id.* at ¶ 29). In a hearing on the same day, the State nollied Counts 1, 2, 4, 6, 7, 8, 9, 10, 11, and 12. (*Id.* at ¶ 30). The State amended Count 3 of the indictment to a charge of Perjury, in violation of R.C. 2921.11 (A), a felony of the third degree, and amended Count 5 of the indictment to a charge of Obstructing Justice, in violation of R.C. 2921.32(A), a felony of the third degree. (*Id.* at ¶ 31). Amended Counts 3 and 5 charged his conduct at trial. (*Id.* at ¶ 32). Sailor **entered a plea of guilty** to the amended indictment for Counts 3 and 5. (*Id.* at ¶ 33) (emphasis added); (Def's Exhibit 1, Journal Entry; Def's Exhibit 2, Resentencing Transcript, pages 11-18)

Under the plain language of the wrongful imprisonment statute, a guilty plea to a charged violation under Ohio law by an indictment or information, including felonies, is a complete bar to compensation and precludes Sailor from being declared a "wrongfully imprisoned individual." R.C. 2743.48(A)(1)-(2). Plaintiff's guilty plea to the amended indictment for the charges of perjury and obstruction of justice at trial—both felonies under Ohio law—directly arise from the same nexus of criminal conduct for which he was originally charged. The State subsequently admitted Paragraph 33 of the Complaint in its Answer dated May 15, 2020. *See* Def. Answer at ¶ 7 ("In response to Paragraph 33, Defendant admits."); (Def's Exhibit 1, Journal Entry 3.29.18).  For these reasons, as Sailor pleaded guilty to the amended counts of perjury and obstruction of justice—both felonies under Ohio law—the Court must dismiss Plaintiff's claim as he fails to allege any set of facts upon which this Court could grant relief.

## III.    LAW AND ARGUMENT

### A.  Standard of Review: Ohio Civ. R. 56(C).

In considering a motion for summary judgment, the narrow question the court must decide is whether there is a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Civ.R. 56(C). The court cannot try issues of fact on a Civ.R. 56 motion, but is empowered to determine only whether there are any issues to be tried. *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir. 1982). A court may grant summary judgment only when no genuine issue of material fact remains to be litigated, the moving party is entitled to judgment as a matter of law, and, viewing the evidence in the light most favorable to the nonmoving party, reasonable minds can reach a conclusion only in favor of the moving party. *M.H. v. City of Cuyahoga Falls*, 134 Ohio St. 3d 65, 979 N.E.2d 1261, 2012-Ohio-5336, ¶ 12, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977), citing Civ.R.

56(C). The Ohio Supreme Court has also specifically held that a court may take judicial notice of public court records available on the internet. *See, e.g., State ex rel. Everhart v. McIntosh*, 115 Ohio St.3d 195, 2007-Ohio-4798, 874 N.E.2d 516, ¶ 8.).

### B.  Ohio's Wrongful Imprisonment Statute: R.C. 2743.48.

Ohio's wrongful imprisonment statute, R.C. 2743.48, was added to the Revised Code in 1986 "to authorize civil actions against the state, for specific monetary amounts, in the Court of Claims by certain wrongfully imprisoned individuals." *Doss v. State*, 135 Ohio St.3d 211, 2012-Ohio-5678, 985 N.E.2d 1229, ¶ 10.  More importantly, the statute was intended only to compensate the innocent for wrongful imprisonment. *Jones v. State of Ohio*, 2011-Ohio-3075, 2011 Ohio App. LEXIS 2616, ¶ 8, n.3 (citing *Walden v. State*, 47 Ohio St.3d 47, 49, 547 N.E.2d 962 (1989)).  The statute was never intended to compensate—as directly articulated by the Supreme Court of Ohio— those who have "merely avoided criminal liability."  *Gover v. State*, 67 Ohio St.3d 93, 95, 616 N.E.2d 207 (1993) (citing *Walden*, 47 Ohio St.3d at 52); *Doss*, 135 Ohio St.3d at ¶ 14.

Since its original enactment, the wrongful imprisonment statute has been amended a number of times including, most recently, by the 132nd General Assembly effective March 22, 2019.  (H.B. No. 411).  Despite these amendments, the Supreme Court of Ohio has explained that "[e]ven though the statute examined in *Walden* was an earlier version of R.C. 2743.48, the *Walden* holding is still applicable." *Doss*, 135 Ohio St.3d at ¶ 14.  Accordingly, the Courts of Common Pleas are to actively separate those who were wrongfully imprisoned from those who merely avoided criminal liability by requiring a plaintiff to satisfy all five elements of R.C. 2743.48, by a preponderance of the evidence.  *Dunbar v. State*, 136 Ohio St.3d 181, 2013-Ohio-2163, 992 N.E.2d 1111, ¶ 11; *Griffith v. City of Cleveland*, 128 Ohio St.3d 35, 2010-Ohio-4905, 941 N.E.2d 1157, ¶ 30.

Under the statute's current version, a "wrongfully imprisoned individual" is a person who satisfies **each** of the following requirements:

(1) The individual was charged with a violation of a section of the Revised Code by an indictment or information, and the violation charged was an aggravated felony, felony, or misdemeanor.

(2) ***The individual was found guilty of, but did not plead guilty to***, the particular charge or a lesser-included offense by the court or jury involved, ***and the offense of which the individual was found guilty was an aggravated felony, felony, or misdemeanor***.

(3) The individual was sentenced to an indefinite or definite term of imprisonment in a state correctional institution for the offense of which the individual was found guilty.

(4) The individual's conviction was vacated, dismissed, or reversed on appeal and all of the following apply:

(a) No criminal proceeding is pending against the individual for any act associated with that conviction.

(b) The prosecuting attorney in the case, within one year after the date of the vacating, dismissal, or reversal, has not sought any further appeal of right or upon leave of court, provided that this division does not limit or affect the seeking of any such appeal after the expiration of that one-year period as described in division (C)(3) of this section.

(c) The prosecuting attorney, city director of law, village solicitor, or other chief legal officer of a municipal corporation, within one year after the date of the vacating, dismissal, or reversal, has not brought a criminal proceeding against the individual for any act associated with that conviction, provided that this division does not limit or affect the bringing of any such proceeding after the expiration of that one-year period as described in division (C)(3) of this section.

**(5)** Subsequent to sentencing or during or subsequent to imprisonment, an error in procedure was discovered that occurred prior to, during, or after sentencing, that involved a violation of the Brady Rule which violated the individual's rights to a fair trial under the Ohio Constitution or the United States Constitution, and that resulted in the individual's release, or it was determined by the court of common pleas in the county where the underlying criminal action was initiated either that the offense of which the individual was found guilty, including all lesser-included

offenses, was not committed by the individual or that no offense was committed by any person. In addition to any other application of the provisions of this division regarding an error in procedure that occurred prior to, during, or after sentencing, as those provisions exist on and after the effective date of this amendment, if an individual had a claim dismissed, has a claim pending, or did not file a claim because the state of the law in effect prior to the effective date of this amendment barred the claim or made the claim appear to be futile, those provisions apply with respect to the individual and the claim and, on or after that effective date, the individual may file a claim and obtain the benefit of those provisions.

R.C. 2743.48(A) (emphasis added).

### C. Sailor pleaded guilty to the amended indictment, therefore would not fit the requirements of R.C. 2743.48(A)(2).

The existing plain and unambiguous language of R.C. 2743.48(A)(2) bars Sailor from recovery. The power to make law is vested only within the legislature—not the judicial branch. *See, e.g., Wright v. State*, 69 Ohio App.3d 775, 781, 591 N.E.2d 1279 (10th Dist.1990). The Supreme Court of Ohio has declared it is not the judiciary's function to rewrite laws according to what the court perceives, but to instead enforce the literal writing of the statute whenever possible. *See Bd. of Edn. v. Fulton Cty. Budget Comm.*, 41 Ohio St.2d 147, 156, 70 O.O.2d 300, 324 N.E.2d 566 (1975) ("[T]his court does not sit as a superlegislature to amend Acts of the General Assembly…. The remedy desired by appellants from this court must be obtained from the source of their problem—the General Assembly.").

"Statutory interpretation involves an examination of the words used by the legislature in a statute, and when the General Assembly has plainly and unambiguously conveyed its legislative intent, there is nothing for a court to interpret or construe, and therefore, the court applies the law as written." *State v. Kreischer*, 109 Ohio St.3d 391, 394 (2006); *Mansaray v. State*, 138 Ohio St.3d 277, 280 (2014). "After all, only the words on the page constitute the law[.]" *Bostock v. Clay County*, 140 S.Ct. 1731, *12 (2020). "[F]undamental to maintaining the separation of powers is

our recognition that 'a court may not rewrite the plain and unambiguous language of a statute[.]'" *Pelletier v. Campbell*, 153 Ohio St.3d 611, ¶ 20 (2018). "Whatever temptations the statesmanship of policy-making might wisely suggest, the judge's job is to construe the statute—not make it better." *Jones v. Bock*, 549 U.S. 199, 216 (2007). "The people are entitled to rely on the law as written, without fearing that courts might disregard its plain terms based on some extratextual consideration." *Bostock*, at 44. Therefore, "[t]here is no need to consult extratextual sources when the meaning of a statute's terms is clear. Nor may extratextual sources overcome those terms." *McGirt v. Oklahoma*, 2020 U.S. LEXIS 3554, *31 (2020); *see also* SCALIA & GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS, 101 (2012) ("Without some indication to the contrary, general words . . . are to be accorded their full and fair scope. They are not to be arbitrarily limited.").

As bluntly stated by the Supreme Court of Ohio in *Ohio Neighborhood Fin., Inc. v. Scott*, 139 Ohio St.3d 536, 2014-Ohio-2440, 13 N.E.3d 1115, ¶ 36:

> Indeed, the legislature, not the courts, should resolve any incongruity between the legislature's intent and the statutory language enacted. ***The question is not what the General Assembly intended to enact but the meaning of that which it did enact.*** (internal citations omitted) (emphasis added).

Thus, to the extent the wrongful imprisonment statute precludes Sailor from recovery, the appropriate remedy would be statutory amendments via the Ohio General Assembly. Therefore, Defendant State of Ohio correctly relies on the unambiguous language of R.C. 2743.48 as the Supreme Court has intended, and thus, is entitled to its motion for summary judgment.

In the present matter, Sailor pleaded guilty to the amended indictment which included the felonies of perjury (R.C. 2921.11(A)) and obstruction of justice (R.C. 2921.32(A)).  (Complaint at ¶¶ 28-33).  Consistent with the plain language of R.C. 2743.48, the statute does not specify when the specific conduct must occur. Rather, the statue only requires that an individual claiming he was

wrongfully imprisoned *did not plead guilty* to the charge. R.C. 2743.48(A)(2). Here, Sailor is disqualified from recovery simply *because* he pleaded guilty to the amended indictment.  The statute, therefore, does not allow Sailor to commit perjury and obstruction of justice at trial and still seek recovery as a "wrongfully imprisoned individual."  Furthermore, committing perjury and obstruction of justice *at trial* makes no difference under the plain and unambiguous language of the statute given Plaintiff pleaded guilty to an amended indictment.  Consistent with the *Jones* Court, the statute was intended only to compensate the innocent for wrongful imprisonment, and Sailor is neither "innocent" nor absolved of his wrongdoing having committed, been charged with, and pleaded guilty to perjury and obstruction of justice at trial.

Under the plain and unambiguous language of R.C. 2743.48(A)(2), the statute only permits compensation to individuals where "the individual was found guilty of, *but did not plead guilty to*, the particular charge" and "the offense of which the individual was found guilty was an aggravated felony, felony, or misdemeanor."  R.C. 2743.48(A)(2) (emphasis added).  Even when read in the context of the statute as a whole, Plaintiff still pleaded guilty to the amended indictment of two felonies under Ohio law. (Def's Exhibit 1, Journal Entry 3.29.18). The statute does not permit compensation for individuals who have pleaded guilty to any charges in connection to the crime he was wrongfully imprisoned. Sailor intentionally committed the additional felony at trial. It was his own dishonestly that directly resulted in the amended indictment in the first place. It is Sailor's own conduct at trial and in pleading guilty to the amended indictment, which superseded the original indictment, that disqualify him from recovery as a "wrongfully imprisoned individual" pursuant to R.C. 2743.48(A)(2).  These actions were indeed part of a continuing course of criminal conduct and thus make him ineligible to be declared a "wrongfully imprisoned individual." *Id.*

> **D.  Sailor pleaded guilty to the new charges brought against him for acts associated with that original conviction, therefore he would not fit the requirements of R.C. 2743.48(A)(4)(c).**

The plain and unambiguous language of R.C. 2743.48(A)(4)(c) also bars Sailor from recovery. R.C. 2743.48(A)(4)(c) requires a claimant seeking to be declared a wrongfully imprisoned individual to demonstrate that "within one year after the date of the vacating, dismissal, or reversal," a prosecutor "has not brought a criminal proceeding against the individual **for any act associated with that conviction**." R.C. 2743.48(A)(4)(c) (Emphasis added.). Claimant must establish that no criminal proceeding can be or have been brought against him for any act associated to the original conviction. *C.K. v. State*, 2015-Ohio-3421, ¶ 21, 145 Ohio St. 3d 322, 327, 49 N.E.3d 1218, 1223.

Here, the prosecuting attorney, within one year of the vacating of his sentence, brought criminal proceedings under an amended indictment. (Complaint at ¶ 31); (Def's Exhibit 1, Journal Entry 3.29.18). This timely-brought criminal proceedings for Sailor's actions during the trial, is directly associated to his conviction.

Due to this, Sailor cannot satisfy the plain language of the statute. This reading is not diminished by looking at the legislative intent regarding the bill's analysis as-enrolled:

> (3) The prosecuting attorney or municipal chief legal officer, within one year after the date of the vacating, dismissal, or reversal, has not brought a criminal proceeding against the individual for any act associated with the conviction. But a finding that the prosecuting attorney or municipal chief legal officer has not brought a criminal proceeding within one year does not affect or negate any right or authority the prosecuting attorney may have to bring a criminal proceeding against the individual after the one-year period for any act associated with the conviction.

The as-enrolled analysis continues:

> Formerly, this criterion required that the individual's conviction was vacated, dismissed, or reversed on appeal, that the prosecutor in the case could not or would not seek any further appeal regarding that conviction, and that no criminal

proceeding could or would be brought by any prosecutor against the individual for any act associated with that conviction.

Thus, looking at the statute, its plain meaning, and the legislative intent as illustrated by the as-enrolled analysis, if a prosecutor attempts to bring a criminal proceeding against the individual for any act associated with that conviction within one year after the date of the vacating, dismissal, or reversal, the individual does not meet the mandatory requirements under 2443.48(4). Here, the prosecuting attorney did indeed bring a criminal proceeding against him and Sailor pleaded guilty to the new charges associated to the conviction. Therefore, Sailor does not conform to the wrongful imprisonment statute.

## IV. CONCLUSION

For the foregoing reasons, the State of Ohio respectfully requests that the Court grant summary judgment in its favor, dismiss Plaintiff's Complaint with prejudice, assess costs to Plaintiff, and award the State of Ohio any other relief deemed necessary and just by this Court.

Respectfully submitted,

DAVE YOST (0056290)
Ohio Attorney General

*/s/ Tony H. Shang*
TONY H. SHANG (0100246)
Assistant Attorney General
Criminal Justice Section, Corrections Unit
30 E. Broad Street, 23rd Floor
Columbus, Ohio 43215
(614) 644-7233; (866) 440-5704 fax
Tony.Shang@ohioago.gov

*Counsel for Defendant State of Ohio*

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2021, a copy of the foregoing *Defendant's Motion for Summary Judgment was* electronically filed using the Court's electronic filing system which shall send notifications of this filing to the following counsel of record:

Jacqueline Greene (0092733)
Sarah Gelsomino (0084340)
Marcus Sidoti (0077476)
Terry H. Gilbert (0021948)
**Friedman & Gilbert**

50 Public Square, Suite 1900
Cleveland, OH 44113
Tel: (216) 241-1430
Fax:(216) 621-0427
jgreene@f-glaw.com
sgelsomino@f-glaw.com
marcus@f-glaw.com
tgilbert@f-glaw.com

*Attorneys for Plaintiff Ru-el Sailor*

*/s/ Tony H. Shang*
TONY H. SHANG (0100246)
Assistant Attorney General



103154884

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

STATE OF OHIO
    Plaintiff

Case No: CR-03-435700-B

Judge: NANCY R MCDONNELL

RU-EL SAILOR
    Defendant

INDICT: 2903.01 AGGRAVATED MURDER W/FIREARM
    SPEC.
2903.01 COMPLICITY IN COMMISSION OF AGG
MURDER W/FIREARM
2903.02 MURDER WITH FIREARM
SPECIFICATIONS.
ADDITIONAL COUNTS...

## JOURNAL ENTRY

DEFENDANT IN COURT WITH COUNSEL KIMBERLY CORRAL, MARK GODSEY, JENNIFER PASCHEN BERGERON.
PROSECUTING ATTORNEY(S) RUSSELL TYE, MICHAEL O'MALLEY, JOSE TORRES PRESENT.
COURT REPORTER KATHLEEN KILBANE PRESENT.
DEFENDANT FULLY ADVISED IN OPEN COURT OF HIS/HER CONSTITUTIONAL RIGHTS AND PENALTIES.
ON RECOMMENDATION OF PROSECUTOR COUNT(S) 3 IS/ARE AMENDED TO PERJURY 2921.11 A F3.
ON RECOMMENDATION OF PROSECUTOR COUNT(S) 5 IS/ARE AMENDED TO OBSTRUCTING JUSTICE 2921.32 A(1)
F3.
DEFENDANT RETRACTS FORMER PLEA OF NOT GUILTY AND ENTERS A PLEA OF GUILTY TO PERJURY 2921.11 A F3
AS AMENDED IN COUNT(S) 3 OF THE INDICTMENT.
DEFENDANT RETRACTS FORMER PLEA OF NOT GUILTY AND ENTERS A PLEA OF GUILTY TO OBSTRUCTING
JUSTICE 2921.32 A(1) F3 AS AMENDED IN COUNT(S) 5 OF THE INDICTMENT.
REMAINING COUNTS ARE NOLLED.
COURT ACCEPTS DEFENDANT'S GUILTY PLEA.
DEFENDANT ADDRESSES THE COURT, VICTIM/REP ADDRESSES THE COURT.
PROSECUTORS RUSSELL TYE AND MICHAEL O'MALLEY ADDRESS THE COURT.
THE COURT CONSIDERED ALL REQUIRED FACTORS OF THE LAW.
THE COURT FINDS THAT PRISON IS CONSISTENT WITH THE PURPOSE OF R. C. 2929.11.
THE COURT IMPOSES A PRISON SENTENCE AT THE LORAIN CORRECTIONAL INSTITUTION OF 10 YEAR(S).
COUNT 3: 5 YEARS
COUNT 5: 5 YEARS.
COUNTS TO RUN CONSECUTIVE TO EACH OTHER.
CONSECUTIVE FINDINGS: CONSECUTIVE SENTENCE IS NECESARRY TO PROTECT THE PUBLIC, AND PUNISH THE
OFFENDER. CONSECUTIVE SENTENCE IS NOT DISPROPORTIONATE. THE HARM WAS SO GREAT AND UNUSUAL
THAT A SINGLE TERM DOES NOT ADEQUATELY REFLECT SERIOUSNESS OF CONDUCT. DEFENDANT'S HISTORY
OF CRIMINAL CONDUCT DEMONSTRATES CONSECUTIVE TERMS AND NEEDED TO PROTECT THE PUBLIC.
POST RELEASE CONTROL IS PART OF THIS PRISON SENTENCE FOR UP TO 3 YEARS DISCRETIONARY WITH THE
PAROLE BOARD FOR THE ABOVE FELONY(S) UNDER R.C.2967.28. DEFENDANT ADVISED THAT IF/WHEN POST
RELEASE CONTROL SUPERVISION IS IMPOSED FOLLOWING HIS/HER RELEASE FROM PRISON AND IF HE/SHE
VIOLATES THAT SUPERVISION OR CONDITION OF POST RELEASE CONTROL UNDER RC 2967.131(B), PAROLE
BOARD MAY IMPOSE A PRISON TERM AS PART OF THE SENTENCE OF UP TO ONE-HALF OF THE STATED PRISON
TERM ORIGINALLY IMPOSED UPON THE OFFENDER.
THE COURT HEREBY ENTERS JUDGMENT AGAINST THE DEFENDANT IN AN AMOUNT EQUAL TO THE COSTS OF
THIS PROSECUTION.
ALL MOTIONS NOT SPECIFICALLY RULED ON PRIOR TO THE FILING OF THIS JUDGMENT ENTRY ARE DENIED AS
MOOT.
SENT
03/28/2018

RECEIVED FOR FILING
03/29/2018 11:21:03
NAILAH K. BYRD, CLERK

Page 1 of 2

**Defendant's MSJ Exhibit
1 Page 1 of 2**



103154884

\* DEFENDANT ORDERED RELEASED. \*

03/28/2018
CPEDB 03/29/2018 09:27:00

_Judge Signature_                    03/29/2018

SENT
03/28/2018

RECEIVED FOR FILING
03/29/2018 11:21:03
NAILAH K. BYRD, CLERK

Page 2 of 2

```
 1   THE STATE OF OHIO, )
                       )   SS:    NANCY R. MCDONNELL, J.
 2   COUNTY OF CUYAHOGA.)

 3             IN THE COURT OF COMMON PLEAS

 4                   CRIMINAL DIVISION

 5   THE STATE OF OHIO,          )
                                 )
 6                   Plaintiff,  )
                                 )
 7      -v-                      ) Case No. CR-435700-B
                                 ) C/A:  N/A
 8                               )
     RU-EL SAILOR,               )
 9                               )
                     Defendant.  )
10
                         - - - -
11
            DEFENDANT'S TRANSCRIPT OF PROCEEDINGS
12
                         - - - -
13
     APPEARANCES:
14

15   MICHAEL C. O'MALLEY, ESQ., Prosecuting Attorney,
     Russell Tye, Esq., Assistant County Prosecutor &
16   Jose Torres, Esq., Assistant County Prosecutor,

17
             on behalf of the Plaintiff;
18
     Kimberly Kendall Corral, Esq. &
19   Jennifer Bergeron, Esq.,

20           on behalf of the Defendant.

21

22

23

24   Kathleen A. Kilbane, RMR
     Official Court Reporter
25   Cuyahoga County, Ohio
```

```
 1  THE STATE OF OHIO,    )
                          )   SS:   NANCY R. MCDONNELL, J.
 2  COUNTY OF CUYAHOGA.   )

 3              IN THE COURT OF COMMON PLEAS

 4                   CRIMINAL DIVISION

 5  THE STATE OF OHIO,            )
                                  )
 6                  Plaintiff,    )
                                  )
 7      -v-                       )  Case No. CR-435700-B
                                  )  C/A:  N/A
 8                                )
    RU-EL SAILOR,                 )
 9                                )
                    Defendant.    )
10                          - - - -

11        DEFENDANT'S TRANSCRIPT OF PROCEEDINGS

12                          - - - -

13

14            BE IT REMEMBERED, that at the January

15       A.D., 2018 term of said Court, to-wit,

16       commencing on Wednesday, March 28, 2018, this

17       cause came on to be heard before the Honorable

18       Nancy R. McDonnell, in Courtroom No. 17-B,

19       Courts Tower, Justice Center, Cleveland, Ohio,

20       upon the indictment filed heretofore.

21

22                      - - - -

23

24

25
```

```
1   WEDNESDAY AFTERNOON SESSION, MARCH 28, 2018
2                    - - -
3            THE COURT:          All right.
4   We're here on 435700, the State of Ohio versus
5   Ru-el Sailor.  Is that you, sir?
6            THE DEFENDANT:      Yes.
7            THE COURT:          You're here
8   today with your attorneys, and you are both
9   from The Innocence Project, is that correct?
10           MS. CORRAL:         No, Your Honor.
11  I'm Kimberly Kendall Corral.  Jennifer
12  Bergeron is with the Ohio Innocence Project.
13           THE COURT:          And Miss
14  Kilbane, do you have their names?
15           COURT REPORTER:     Yes.
16           THE COURT:          Okay.  Who is
17  present here on behalf of the State of Ohio?
18           MR. O'MALLEY:       Your Honor,
19  Cuyahoga County prosecutor, Mike O'Malley.
20  Criminal chief prosecutor, Russell Tye.
21           MR. TYE:            Good afternoon,
22  Your Honor.
23           MR. O'MALLEY:       Assistant
24  prosecutor, Jose Torres.
25           MR. TORRES:         Good afternoon,
```

1    Your Honor.

2              THE COURT:              I have in my

3    possession the parties' joint motion to vacate

4    the conviction.  On behalf of Mr. Sailor, who

5    would like to speak to that motion?

6              MS. CORRAL:              I will, Your

7    Honor.  Thank you, Your Honor.  Miss Bergeron

8    and I on behalf of Mr. Sailor have been

9    working tirelessly with the Conviction

10   Integrity Unit, and it is now our intention to

11   enter a joint motion to vacate the conviction

12   pursuant to Rule 33(B).

13             THE COURT:              And on behalf of

14   the State of Ohio, would you care to make any

15   statement?

16             MR. TYE:                Yes, Your Honor.

17   May it please the Court on behalf of the State

18   of Ohio.  Your Honor, as articulated, there is

19   a joint motion to vacate the conviction.

20   That's contingent upon the Court accepting

21   that by the parties as well as contingent upon

22   the Court accepting what we have as the notice

23   of written agreement of the parties as well.

24             If that is forthcoming on behalf of

25   Mr. Sailor, then we would move to vacate his

1   conviction with the Court's permission
2   obviously, and we would ask the Court to do
3   so.
4           THE COURT:          All right, and I
5   also have notice of the parties' agreement as
6   to Mr. Sailor entering into a plea agreement
7   and being sentenced today, so is that correct,
8   Mr. Tye?
9           MR. TYE:          Yes.  That is in
10  fact the parties' intention to enter into a
11  plea as to the amended indictment at the
12  appropriate time with the Court's permission
13  as well as go straight to sentencing.  We do
14  have representatives from the victim's family
15  here who would like to address the Court at
16  the appropriate time.
17          THE COURT:          Thank you,
18  Mr. Tye.
19          MR. TYE:          Thank you.
20          THE COURT:          And on behalf of
21  the defense, should I grant the joint motion
22  of conviction, is it your intention that your
23  client would enter into a plea to an amended
24  indictment and be immediately sentenced?
25          MS. CORRAL:          Yes, Your Honor,

**Defendant's MSJ Exhibit 2**
**Page 5 of 32**

1    that is our intention.  As you're aware, there
2    were some changes made to that agreement so we
3    don't have an executed copy yet, but it is his
4    intention to execute it on the record.
5            THE COURT:              I have given
6    this a great deal of thought.  I was the
7    original trial judge who heard this case and
8    then heard subsequent motions over the years
9    relative to what actually occurred on that
10   certain day.  I had the opportunity to hear
11   and see the witnesses, consider their
12   credibility, their believability.
13           I had the opportunity to hear from
14   the State and the defense both in opening and
15   closing, and I also had the opportunity to
16   hear from family members of the deceased in
17   this matter.
18           I carefully read the report of the
19   Conviction Integrity Unit of the Cuyahoga
20   County Prosecutor's Office, and I, first of
21   all, I'm impressed with the thoroughness of
22   the report and the number of interviews that
23   were conducted, and based on your
24   investigation which as I said was extensive,
25   found witnesses who were not present at the

1   time of the trial or subsequent hearings

2   relative to a new trial on earlier dates, and

3   so I am going to grant the motion to vacate

4   the conviction.

5          I now have in my possession the

6   notice of the parties' agreement.  Before

7   coming out on the record we discussed this and

8   there were some changes made and, Mr. Sailor,

9   did you have an opportunity to go over the

10  entire agreement with your lawyers?

11          THE DEFENDANT:          Yes, Your Honor.

12          THE COURT:              And

13  specifically, did you have an opportunity to

14  go over the addition that was made this

15  afternoon which indicates that you agree that

16  if you are ever called as a witness by any

17  party herein or by co-defendant Nichole

18  Hubbard and Cordell Hubbard, you will

19  immediately testify truthfully and consistent

20  with this interview with the Conviction

21  Integrity Unit in October of 2017.

22          Failure to do so will result in the

23  original charges and sentencing reinstated

24  without a hearing.  Did they go over that with

25  you?

```
 1            THE DEFENDANT:         Yes, Your Honor.
 2            THE COURT:             Do you have any
 3    questions about the agreement that I
 4    anticipate you are going to sign here in a few
 5    moments?
 6            THE DEFENDANT:         No, Your Honor.
 7            THE COURT:             Did you have an
 8    opportunity to read everything?
 9            THE DEFENDANT:         Yes, Your Honor.
10            THE COURT:             Did you have an
11    opportunity to discuss all of it with your
12    lawyers?
13            THE DEFENDANT:         Yes, Your Honor.
14            THE COURT:             At this time do
15    you have any questions of me?
16            THE DEFENDANT:         No, Your Honor.
17            THE COURT:             And we are clear
18    that if there should ever be another hearing
19    regarding this matter, you'll testify
20    truthfully and consistently with the interview
21    you gave these gentlemen over here at the
22    prosecutor's table.
23            THE DEFENDANT:         Yes, Your Honor.
24            THE COURT:             If you don't,
25    all the charges for which you were convicted
```

```
 1   will be reinstated as well as your sentence.
 2   Do you understand that?
 3              THE DEFENDANT:        Yes, Your Honor.
 4              THE COURT:            And you would go
 5   immediately back to the penitentiary without
 6   any hearing.  Do you understand that?
 7              THE DEFENDANT:        Yes, Your Honor.
 8              THE COURT:            All right.  So I
 9   am going to give the agreement to counsel, and
10   I believe it is Mr. Tye who is going to sign
11   on behalf of the State.
12              MR. TYE:              Yes, Your Honor.
13              THE COURT:            Mr. Sailor,
14   you'll be asked to sign it as well as well as
15   your lawyer, Miss Corral.  Thank you, Mr. Tye.
16              I didn't see there was a signature
17   line for you as well.  I'm sorry I neglected
18   to say that.
19              MS. BERGERON:         Sorry, Your
20   Honor.
21              MR. O'MALLEY:         Your Honor, I
22   have an executed copy of the agreement signed
23   by the parties in open court.
24              THE COURT:            Thank you,
25   Mr. O'Malley.  Mr. Sailor, is this in fact
```

1    your signature on this?
2              THE DEFENDANT:        Yes, Your Honor.
3              THE COURT:             I can see you
4    from here signed it but is that your
5    signature?
6              THE DEFENDANT:        Yes, Your Honor.
7              THE COURT:             So we now must
8    move to a plea.  Mr. Tye, would you be
9    outlining the plea agreement?
10             MR. TYE:               Yes, Your Honor.
11   Thank you.  Again, may it please the Court.
12   At this time we would with respect to Case
13   Number CR-435700, it is now active on the
14   docket pursuant to the Court's ruling.  We
15   would ask to amend Count 3 of the original
16   indictment in this case and make it reflect
17   that it's a charge of perjury pursuant to Ohio
18   Revised Code 2921.11 Subsection A.
19             Also, Your Honor, with respect to the
20   original indictment, we would ask to amend
21   Count 5 and make that a new charge being
22   obstruction of justice pursuant to Ohio
23   Revised Code 2921.32(A).
24             Your Honor, other than what's been
25   outlined in open court as well as our

1    agreement by the parties that the Court has

2    reviewed as well as executed and reviewed by

3    Mr. Sailor and his counsel, there have been no

4    other threats or promises articulated on

5    behalf of the State of Ohio.

6           Thank you.

7           THE COURT:          Thank you,

8    Mr. Tye.  And on behalf of the defense, do you

9    waive any defect in the fact that the charges

10   to which it is proposed he is going to plead

11   are not lesser included offenses of the charge

12   of which he was convicted.

13          MS. CORRAL:          Correct, Your

14   Honor.  Neither perjury nor obstruction are

15   lesser included of the charges as amended.  We

16   recognize that is the case and waive any error

17   on that.

18          THE COURT:          And is it your

19   understanding your client will in fact enter

20   into this plea here?

21          MS. CORRAL:          Yes, Your Honor.

22   That is my understanding.

23          THE COURT:          And he will be

24   sentenced this afternoon as well.

25          MS. CORRAL:          Yes, Your Honor.

1   He's been counselled accordingly.

2   THE COURT:            Mr. Sailor,

3   would you stand please?  How old are you, sir?

4   THE DEFENDANT:         Thirty-eight,

5   Your Honor.

6   THE COURT:            How far did you

7   go in school?

8   THE DEFENDANT:         Tenth grade.

9   THE COURT:            Are you now

10  under the influence of any drug or alcohol?

11  THE DEFENDANT:      No, Your Honor.

12  THE COURT:            Are you an

13  American citizen?

14  THE DEFENDANT:      Yes.

15  THE COURT:            Are you on

16  probation, community control sanctions, parole

17  or post-release control?

18  THE DEFENDANT:      No, Your Honor.

19  THE COURT:            Are you

20  satisfied with the representation of your

21  attorney?

22  THE DEFENDANT:      Yes, Your Honor.

23  THE COURT:            Do you

24  understand that by entering a plea of guilty

25  you are giving up certain constitutional

1  rights?

2  THE DEFENDANT:     Yes, Your Honor.

3  THE COURT:     Do you

4  understand you have the right to a trial by

5  jury or you can waive that right and try your

6  case to a judge without a jury?

7  THE DEFENDANT:     Yes, Your Honor.

8  THE COURT:     Do you

9  understand you have the right to an attorney,

10  either one you hired yourself or if you can't

11  afford one, one the Court appoints for you at

12  no cost to you?

13  THE DEFENDANT:     Yes, Your Honor.

14  THE COURT:     Do you

15  understand you have the right to subpoena

16  witnesses to appear at trial and testify on

17  your behalf, and that means if you wanted a

18  witness to come in and testify for you but

19  they would not come in voluntarily, you could

20  use the Court's subpoena power to make them

21  come in and testify.

22  THE DEFENDANT:     Yes, Your Honor.

23  THE COURT:     Do you

24  understand you have the right to confront and

25  cross-examine witnesses?

```
 1              THE DEFENDANT:          Yes, Your Honor.
 2              THE COURT:          Do you
 3     understand you have the right to have the
 4     State of Ohio prove your guilt by evidence
 5     beyond a reasonable doubt?
 6              THE DEFENDANT:          Yes, Your Honor.
 7              THE COURT:          Do you
 8     understand you have the right to remain silent
 9     and not testify and no one can comment on the
10     fact that you did not testify at trial.
11              THE DEFENDANT:          Yes, Your Honor.
12              THE COURT:          Do you
13     understand the two offenses to which it's
14     proposed you're going to plead as well as the
15     potential penalty?
16              THE DEFENDANT:          Yes, Your Honor.
17              THE COURT:          I'm going to
18     review that with you, sir.  It's proposed
19     you're going to plead guilty to Count 3 as
20     amended.  It's being amended to perjury in
21     violation of 2921.11(A), a felony of the third
22     degree.  Do you understand that?
23              THE DEFENDANT:          Yes, Your Honor.
24              THE COURT:          You'll also be
25     pleading guilty to amended Count 5,
```

```
 1    obstruction of justice, in violation of
 2    2921.32(A), also a felony of the third degree.
 3    Do you understand that?
 4              THE DEFENDANT:        Yes, Your Honor.
 5              THE COURT:            Now I believe
 6    the State and the defense have agreed that
 7    under the old law these would be low-tier
 8    felonies of the third degree punishable by one
 9    to five years in prison.  Is that right,
10    Mr. Tye?
11              MR. TYE:              That is correct.
12              THE COURT:            On behalf of the
13    defense, is that your understanding as well?
14              MS. CORRAL:           Yes, Your Honor.
15              THE COURT:            So, sir, your
16    sentences could be served concurrently which
17    means at the same time or consecutively which
18    means one after another.  Do you understand
19    that?
20              THE DEFENDANT:        Yes, Your Honor.
21              THE COURT:            The maximum you
22    could get would be ten years.  Do you
23    understand that?
24              THE DEFENDANT:        Yes, Your Honor.
25              THE COURT:            You already
```

1    served more than ten years.  Do you understand
2    that?
3                 THE DEFENDANT:        Yes, Your Honor.
4                 THE COURT:            So in essence
5    you have already served your time.  Do you
6    understand that?
7                 THE DEFENDANT:        Yes, Your Honor.
8                 THE COURT:            Now you could
9    also be fined up to $10,000 on each of these
10   counts.  Do you understand that?
11                THE DEFENDANT:        Yes, Your Honor.
12                THE COURT:            Do you
13   understand if a sentence of community control
14   sanction is imposed and the terms of the
15   sanction are violated you could be sentenced
16   to prison?
17                THE DEFENDANT:        Yes, Your Honor.
18                THE COURT:            Do you
19   understand if you're sentenced to prison you
20   may be subject to a discretionary three-year
21   period of post-release control?
22                THE DEFENDANT:        Yes, Your Honor.
23                THE COURT:            Do you
24   understand if you violate post-release control
25   the Parole Board has the authority to impose

1    up to one half the original sentence imposed?

2    THE DEFENDANT:    Yes, Your Honor.

3    THE COURT:    And do you

4    further understand if while you're on

5    post-release control you fail to report to

6    your parole officer, you can be charged with

7    escape which is a felony?

8    THE DEFENDANT:    Yes, Your Honor.

9    THE COURT:    Do you have any

10   questions about your rights, the charges, the

11   penalties, or anything that's being done here

12   today?

13   THE DEFENDANT:    No, Your Honor.

14   THE COURT:    Have any threats

15   or promises been made to you other than what's

16   been placed on the record in open court in

17   order to induce you to enter into this plea

18   here today?

19   THE DEFENDANT:    No, Your Honor.

20   THE COURT:    Mr. Sailor,

21   knowing all that I outlined for you, how do

22   you plead to the amended third count, perjury,

23   in violation of 2921.11(A), a felony of the

24   third degree?

25   THE DEFENDANT:    Guilty, Your

```
1   Honor.
2             THE COURT:          And, sir, how do
3   you plead to Count 5 as amended, obstruction
4   of justice, in violation of 2921.32(A), a
5   felony of the third degree?
6             THE DEFENDANT:        Guilty, Your
7   Honor.
8             THE COURT:          Let the record
9   reflect I find you knowingly, voluntarily and
10  with a full understanding of your rights
11  entered your changes of plea.  I accept them,
12  make findings of guilt.  On recommendation of
13  the prosecutor's office, nolle the remaining
14  counts.
15            On behalf of the defense, are you
16  satisfied I complied with Criminal Rule 11?
17            MS. CORRAL:          We are, Your
18  Honor.
19            THE COURT:          On behalf of the
20  State?
21            MR. TYE:             Yes, Your Honor.
22  Thank you.
23            THE COURT:          All right.  So
24  we will now go forward with sentencing.  You
25  may have a seat at this time if you care to.
```

| | |
|---|---|
| 1 | Generally, I have the counsel for the defense |
| 2 | go first and then the defendant, and on behalf |
| 3 | of the State, do you have anybody from the |
| 4 | deceased victim's family here who would like |
| 5 | to speak? |
| 6 | MR. O'MALLEY:        Your Honor, we |
| 7 | have the brother of the decedent, Omar Clark, |
| 8 | here.  His name is Umar Clark and wishes to |
| 9 | address the Court. |
| 10 | THE COURT:        Maybe we should |
| 11 | hear from Mr. Clark first if that's all right |
| 12 | with the defense. |
| 13 | MS. CORRAL:        That's fine, |
| 14 | Your Honor.  Thank you. |
| 15 | THE COURT:        Mr. Clark, come |
| 16 | up please.  Just come up to the podium.  Sir, |
| 17 | could you please state your full name and |
| 18 | spell, in this instance, your first name for |
| 19 | the record. |
| 20 | MR. CLARK:        Umar Clark. |
| 21 | U-M-A-R. |
| 22 | THE COURT:        And, sir, what |
| 23 | is your relationship to the deceased? |
| 24 | MR. CLARK:        That was my |
| 25 | brother. |

```
 1          THE COURT:            And you came
 2    here to court as is your right, and I am happy
 3    to give you an opportunity to say whatever you
 4    would like relative to the sentencing of
 5    Mr. Sailor.
 6          MR. CLARK:            Yes, I would,
 7    Your Honor.
 8          THE COURT:            What would you
 9    like to say?
10          MR. CLARK:            For the last
11    fifteen years this has really been painful.  I
12    lived with this for so long.  During the trial
13    I wasn't able to, you know, be in the
14    courtroom.  It was hard so I didn't get a
15    chance to see Ru-el, Cordell or Nichole.
16    After the sentence, the Sailors, the family of
17    the Sailors, came to me out in the hallway and
18    just about each one of them hugged me and --
19          THE COURT:            Take your time,
20    sir.
21          MR. CLARK:            And gave me
22    condolences.  They was hurt.  You know what I
23    am saying.  They were passionate, and I felt
24    it.  You know what I'm saying.  That lived
25    with me for so long just to know that not only
```

1  I lost somebody but in a sense they lost
2  somebody too.  They hugged me and told me
3  we're going to pray for you.
4          At that time I just didn't care.  I
5  really didn't care who went down.  I went over
6  my life.  I tried to.  I tried to.  2010
7  things started to change for me bettering
8  myself.  I was growing.
9          I had small children that was
10 growing, and somebody asked me one day, asked
11 me what would you want to do before you left
12 this place.  I told them I said I want to see
13 an innocent man walk out of jail.  That day I
14 vowed to just do all I can to see change to
15 see this man right here come home.
16         As I started growing and started
17 watching my children grow, I think that that
18 man deserved for that for his children as
19 well.  There is nothing like being a father,
20 being an active father as well, and I started
21 valuing life more, and once I started valuing
22 life, my life, I started valuing those lives
23 around me.
24         I hope that when he walks out this
25 door he will value his life and also those

1   that surround us.

2           THE COURT:          Sir, I don't

3   mean to interrupt you but our court reporter

4   has to take down everything that's said, so if

5   you turn to Mr. Sailor, she can't take down

6   what you say.

7           MR. CLARK:          Don't nobody

8   value life like they should and especially

9   those that surround us.  We lose so many of

10  our youth, so many in the community, and I

11  think that if I can start to see change and

12  see that this man comes home, that's all I

13  want to see, Your Honor.

14          THE COURT:          Thank you.  I

15  appreciate you coming in today.  And so on

16  behalf of Mr. Sailor, would either/or both of

17  you like to speak?

18          MS. CORRAL:          Yes, Your Honor.

19  I think now is just an appropriate time to say

20  we entered an agreement and the Court is aware

21  of that in considering a sentence, but we just

22  wouldn't be here today without the hard work

23  of Prosecutor O'Malley and criminal division

24  chief, Russell Tye.

25          Under his leadership of the

1  Conviction Integrity Unit, his thorough
2  investigation I think solidified in everyone's
3  mind Mr. Sailor's innocence, and without their
4  dedication and perseverance, this road to
5  justice would not have been paved, and so
6  recognizing this is the end of Mr. Sailor's
7  case, you know, we acknowledge that it's the
8  beginning of what is, you know, a hopeful and
9  active and productive Cuyahoga County
10 Conviction Integrity Unit, and I don't think I
11 could understate what a journey we have all
12 been through.
13         It's interesting to work together on
14 the same side in pursuit of justice, and I'm
15 thankful on behalf of Mr. Sailor and his
16 family and to the prosecutor's office that we
17 achieved that today.
18         But I don't want to undermine the
19 fact Mr. Sailor spent fifteen years of his
20 life away from his family in prison for a
21 murder he has adamantly asserted his innocence
22 of, and so in righting that wrong here today,
23 I think, you know, we moved justice forward in
24 our community, and I would like to see that
25 continue to grow as Mr. Clark stated, and I

1    would just like the Court to consider all of

2    those factors in making a decision for the

3    sentence.

4                THE COURT:          Would you like

5    to speak on behalf of your client?

6                MS. BERGERON:         Thank you, Your

7    Honor.  I would just like to reiterate the

8    appreciation for Mr. Tye's hard work and

9    Prosecutor O'Malley for being willing to take

10   a look at his case and to the hard work that

11   needed to be done to get to where we are

12   today.

13               Thank you.

14               THE COURT:          Mr. Sailor, is

15   there anything you would like to say before

16   sentence is imposed?

17               THE DEFENDANT:        Yes, Your Honor.

18               THE COURT:           Please stand.

19   What would you like to say, sir?

20               THE DEFENDANT:        First and

21   foremost, I would like to apologize to the

22   Court and to the victim's family for

23   committing perjury in this courtroom on your

24   behalf.  I apologize for doing so.

25               I also wanted to speak to Mr. Clark

**Defendant's MSJ Exhibit 2**
**Page 24 of 32**

1. personally and the victim's family. I
2. apologize for my actions fifteen years ago in
3. this courtroom. I carried myself because I
4. figured I was innocent. It didn't matter and
5. I was wrong for that.
6.       Somebody lost their life, a father or
7. brother. You know what I'm saying. Just
8. everything like, and I know I value life
9. totally different now. I just want to
10. apologize to the Court and say thank you to
11. the Conviction Integrity Unit, Russell Tye
12. especially, because he worked hard.
13.       He dealt with my fiance, Amy, driving
14. him crazy throughout this whole ordeal. Kim,
15. my lawyer, and he stayed through it. I
16. appreciate all you here to see this long road
17. come to an end.
18.       THE COURT:      All right.
19. Thank you.
20.       THE DEFENDANT:      Thank you, Your
21. Honor.
22.       THE COURT:      Mr. O'Malley,
23. anything further on behalf of the State of
24. Ohio before sentence is imposed?
25.       MR. O'MALLEY:      Your Honor,

1   again this was a long road.  It's unfortunate

2   that the prior trial occurred.  Mr. Sailor

3   today acknowledged his wrong that he committed

4   in that trial.

5         He's agreed to the sentence -- he's

6   agreed to the sentence the Court is going to

7   impose, but I think it's been a hard, long

8   lesson, and as Umar Clark indicated, the world

9   that Ru-el Sailor is going to come out to is

10  not the same world he left fifteen years ago,

11  and in these courtrooms and this Justice

12  Center we see time and time again young men

13  much the age of Mr. Sailor when this crime

14  occurred, you know, committing violent crimes

15  that are just basically throwing their lives

16  away.

17        And I appreciate the victim's family

18  in their emotional support for our work in

19  this particular case to want to see a wrong

20  turned into a right, and I want to thank the

21  family.  Again, I offer them my condolences to

22  their loss to their brother Omar and again,

23  this was not an easy case.  None of them are

24  but I know in this particular case we made the

25  right decision, and I hope that Mr. Sailor

1    takes this opportunity and perhaps helps make

2    a very positive change within our community

3    and perhaps mentor the young men that we see

4    before us each day who are also in a situation

5    where they can go one way or the other, Your

6    Honor, and I'm hopeful that Mr. Sailor will

7    join us and try to work with those individuals

8    to get them on the right path to perhaps teach

9    them and give them a bit of his experience

10   that he has learned over these last fifteen,

11   sixteen years that perhaps he can impart to

12   those individuals and perhaps save some lives

13   and perhaps do something really good to our

14   community in the years to come, and I'm

15   optimistic Mr. Sailor can do that, and again I

16   just appreciate the work of the family who

17   joined us in this effort today.

18           Thank you.

19           THE COURT:           Thank you.  All

20   right.  Mr. Sailor, we had a trial here some

21   years ago and you came into this courtroom and

22   you lied.  Maybe you weren't involved but you

23   knew your friend Cordell was, and so you

24   thought, well, I didn't do it so I'm just

25   going to tell a lie so Cordell could get off

1    and then there would be no justice for the
2    family of Mr. Umar Clark and all his
3    relatives, and your lie put them through so
4    much over the last fifteen years.  If you
5    would have just told the truth, you would not
6    have spent fifteen years in prison.
7            You put yourself in prison.  You told
8    a lie that couldn't be believed, and that's
9    why you got convicted, and you did it
10   apparently to help your friend Cordell.  Was
11   lying for Cordell, and this is a rhetorical
12   question, worth fifteen years of your life?
13   I'm sure it was not, and I commend Mr. Umar
14   Clark.  I really do, sir.  I don't know that I
15   could be as generous of spirit as you are.
16   It's impressive.
17           So on Count 3 as amended, the felony
18   of the third degree, I sentence you to five
19   years.  On Count 5, the felony of the third
20   degree, I sentence you to an additional five
21   years.  They'll be served consecutively.
22   Because you have already served fifteen,
23   you'll get credit for time served.
24           I also want to inform you that you
25   may be subject to a discretionary three-year

1   period of post-release control. You will have

2   to report to the Parole Authority upon your

3   release. I want you to understand if while

4   you're on post-release control you fail to

5   report to your parole officer, you could be

6   charged with escape which is a felony.

7        And if while you're on post-release

8   control you fail to report to your parole

9   officer, you can be charged with escape which

10   is a felony.

11        Anything further on behalf of the

12   defense?

13        MS. CORRAL:       No, Your Honor.

14        THE COURT:       Anything further

15   on behalf of the State of Ohio?

16        MR. TYE:       Your Honor, yes,

17   may it please the Court. I may have missed it

18   but I believe there are certain findings that

19   the Court has to make.

20        THE COURT:       Yes. Mr. Tye,

21   you are exactly right and I appreciate it. I

22   have to make findings as to why a consecutive

23   sentence is appropriate, and I find it is

24   necessary to protect the public and punish

25   you. You cannot come into court and tell a

1   lie and cause murder convictions and people to

2   suffer.

3          The suffering of the Clark family is

4   immeasurable, and so I find that it's

5   necessary to protect the public and to punish

6   you.

7          I also find it's not disproportionate

8   to other cases similar to this in this county

9   and throughout the state of Ohio.  I further

10  find that the harm was so great or unusual

11  that a single term does not adequately reflect

12  the seriousness of the conduct.

13         As I've already stated, to lie in a

14  murder case is one of the most serious things

15  you can do.  You know, it's just a fraud on

16  the system and it's a fraud on the public, and

17  it's a fraud on the Clark family.

18         I also find that your criminal

19  history shows consecutive terms are needed to

20  protect the public.  As you're well aware, you

21  have two prior drug abuse offenses, and so for

22  all of those reasons I find that the

23  consecutive sentences are necessary.

24         Again on behalf of the defense,

25  anything further?

```
1              MS. CORRAL:           No, Your Honor.
2              THE COURT:            On behalf of the
3     State?
4              MR. TYE:              No, Your Honor.
5              THE COURT:            Thank you for
6     bringing that to my attention, Mr. Tye.  I
7     appreciate that.
8              You're ordered released.  Thank you.
9
10                       - - -
11    (Thereupon, the proceedings were concluded.)
12                       - - -
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1              C E R T I F I C A T E

 2

 3              I, Kathleen A. Kilbane, Official

 4      Court Reporter for the Court of Common Pleas,

 5      Cuyahoga County, Ohio, do hereby certify that

 6      as such reporter I took down in stenotype all

 7      of the proceedings had in said Court of Common

 8      Pleas in the above-entitled cause; that I have

 9      transcribed my said stenotype notes into

10      typewritten form, as appears in the foregoing

11      Transcript of Proceedings; that said

12      transcript is a complete record of the

13      proceedings had in the trial of said cause and

14      constitutes a true and correct Transcript of

15      Proceedings had therein.

16

17                          _____
                            Kathleen A. Kilbane
18                          Official Court Reporter
                            Cuyahoga County, Ohio
19

20

21

22

23

24

25
```