**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RU-EL SAILOR, | ) | CASE NO. 1:20-cv-00660 |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF CLEVELAND, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR DISMISSAL

Defendants moved to dismiss this case because Plaintiff Ru-El Sailor made fraudulent allegations in his pleadings, lied at his deposition, and tampered with witnesses.  ECF 88-1. Sailor's only defense is that he did not commit murder.  This is irrelevant, and the rest of his response brief is legally unsound.  He admits he perjured himself but claims he did so under duress—a consequence of "mental anguish, trauma, and distrust resulting from 15 years of wrongful incarceration."  ECF 102, PageID#2035.  He compares his deposition to "being interrogated," but fails to mention that he spent the last three years repeating his false testimony on podcasts and reality television.  *Id.*  He insists he wants to "correct the record."  *Id.*  But then he misrepresents the substance of his lies.  Elsewhere, he concedes that he felt no need to tell the truth until Defendants moved for sanctions.  *Id.*  And most troublingly, he distorts the record once again, accusing the City of brokering a "dark plea" that was negotiated exclusively by his attorneys and the State.  *Id.*

1

Sailor's misconduct was not an accident.  It was designed to prop up his unviable claims against the Defendants.  Rather than deal with the evidence, Sailor appeals to the Court's sympathies.  His response is most telling for what it lacks: an explanation of how this case can be rehabilitated after two and a half decades of fraud.  It can't be.  Sailor's lies tainted two separate legal proceedings.  They prevented justice in the underlying criminal trial and very nearly shaped the outcome of this case.  Dismissal is the only appropriate remedy.

## LAW AND ARGUMENT

I.     **Sailor Misleads the Court about the Extent of His Litigation Misconduct**

    **A.  Sailor's perjury was persistent and widespread.**

As an initial matter, Sailor's characterization of his perjury as an isolated "misstatement" is absurd.  His lies were the crux of his case, and he made considerable efforts to prevent them from being detected.  These efforts started when he was in jail.  The following evidence is undisputed:

- Over numerous phone calls between 2016 and 2018, Sailor, his wife, and journalist Kyle Swenson discussed how to generate publicity for Sailor's release.  On several calls, Sailor and his wife explicitly asked Swenson not to reveal that Sailor found out about the murder before trial.  Motion to Dismiss, ECF 88-1, PageID#1335-39.  Swenson agreed to tailor his coverage to match Hubbard's perjured affidavit.  *Id.*

- On other calls, Sailor and Amy discussed paying eyewitnesses Clark Williams and Larry Braxton to recant their in-court identifications of Sailor.  *Id.* at PageID#1341-2.

- On another call, Sailor and attorney Kim Corral discussed various ways of maximizing Sailor's recovery in a civil action for wrongful conviction.  Corral offered to sign an affidavit stating that she provided ineffective assistance of counsel when she advised Sailor to plead guilty to perjury and obstruction.  This would allow Sailor to seek compensation for the entire length of his incarceration.  Ex. R, ECF 88-19, D7 C255 at 12:10.

- In 2017, Sailor included Hubbard's affidavit with his application to the Conviction Integrity Unit. *Id.* at PageID#1338. CIU relied on the affidavit in its petition to vacate Sailor's murder sentence, filed on March 28, 2018.

- On March 27, 2020, Sailor filed his initial complaint. In it, he alleged that he did not know that Hubbard and Sizemore were involved in the shooting until after the 2002 trial. Compl. ¶33, ECF 1 at PageID#5. He also accused the Individual Defendants of failing to disclose Sizemore as an alternate suspect. *Id.,* ¶¶49-53. at PageID#8.

- On August 10, 2021, Sailor sat for his deposition. In response to at least seven separate questions from two different attorneys, Sailor testified that he did not know that Hubbard and Sizemore were involved in the shooting until after the 2002 trial. Sailor Dep., ECF 88-2, PageID#1375, 1380, 1381, 1383, 1388, 1389, 1390. He did not waive signature and made no attempt to correct his testimony by way of an errata sheet. *Id.* at PageID#1402.

- On October 15, 2021, Sailor filed an amended complaint. It contained the same false statements contained in the initial complaint—the same false statements Sailor repeated at his deposition. Amended Compl. ¶33, ECF 43, PageID#442; *Id.*, ¶¶49-53 at PageID#445.

- The case remained in active discovery from October 2021 through July 2024. During this time, the parties deposed the Individual Defendants and scores of other witnesses, including assistant prosecuting attorneys and three individuals who were with Sailor on the night of the shooting. At no point did Sailor correct the false allegations in his pleadings and his perjured deposition testimony.

- While the case was pending, Sailor gave interviews on podcasts and reality television. When asked about the shooting, he repeated the same false narrative he told in this case—i.e. that Hubbard first confessed to it at the sentencing hearing. *See, e.g.,* Ex. S, Wrongful Conviction Podcast, Episode 191 (March 31, 2021), at 14:17; 15:53; 27:15.[1] To Defendants' knowledge, prior to January 2025, Sailor

---

[1] Sailor echoed these statements on an episode of "Innocent After Lock-Up," which aired on We TV in December 2023. We TV resisted Defendants' efforts to obtain the footage via third-party subpoena, and the episode is paywalled on public streaming platforms. WeTVStore, *Innocent After Lockup: Ruel,* YouTube (Dec. 28, 2023), https://www.youtube.com/watch?v=MIEKhF7-4-0.

never publicly admitted that he knew Hubbard and Sizemore were involved in the shooting before he testified at trial.

- Amy Sailor was deposed on July 1, 2024.  She testified to the authenticity of the recorded conversations with her husband (Sailor).  These conversations confirm that Sailor's pleadings and deposition testimony were false.  ECF 81-1, PageID#992-1070.

It is hard to imagine a more well-established pattern of fraud than the Defendants confronted here.  Sailor lied to get out of jail, lied in his pleadings, repeatedly lied at his deposition, lied to the public, and failed to correct his lies in any meaningful way during the four-and-a-half years this case was being litigated.  This was not an isolated blunder; it was a coordinated effort to deceive the Court in pursuit of financial gain.

### B. Sailor's efforts to soft-pedal his perjury do not withstand scrutiny.

Sailor's insinuation that the State "has always been aware that [he] knew who the shooter was" is demonstrably false.  Throughout the post-conviction proceedings and after his release, Sailor maintained that he did not know Cordell Hubbard and William Sizemore were involved in the shooting until after he was convicted.  Motion to Dismiss, ECF 88-1, PageID#1334-39.  The basis for his 2018 perjury conviction was not his awareness of "who the shooter was," but rather his false alibi for Hubbard, i.e. that he spent the entire night with Hubbard.  Ex. K, CIU Report, ECF 88-13 at PageID#1810 ("Ru-El Sailor testified at the joint trial and denied being present at the scene of the shooting and untruthfully claimed that Cordell Hubbard was with him that entire night").  Indeed, when the State agreed to vacate Sailor's sentence, it was not aware that he had learned who the shooters were before he testified.  Ex. M, Motion to Vacate, ECF 88-14 at PageID#1883; *see also* Ex. T, Plain Dealer Article (July 26, 2024).

The timing of Sailor's knowledge is critical to this case.  If, as he previously claimed, he was uncertain of Hubbard's and Sizemore's involvement when he testified at trial, then his decision

to lie about Hubbard's whereabouts could be construed as a misguided act of loyalty—an error that may have been precipitated by the due process violations he alleges in the Complaint.

But that's not what happened.  Facing a life sentence, armed with evidence that could trigger his release, Sailor took to the stand and knowingly covered for a murderer.  In the process, he also concealed the role of William Sizemore.  These actions corrupted the legal proceedings he now claims were rigged against him.  His continued efforts to distort the record—and to mislead this Court about the details of his misconduct—provide independent grounds for dismissal.

### C.  Sailor admits he tampered with witnesses.

In addition to downplaying his perjury, Sailor asks this Court to look past his efforts to tamper with witnesses because, in his view, he was merely encouraging them to tell the truth.  He basically admits that he offered to pay Larry Braxton but argues that he was "unaware of any legal consequences of" his actions and that the ends justify the means.

The problem with this position is that it overlooks the impact Sailor's actions had on this case.  Defendants sought to depose Larry Braxton to test the merits of Sailor's suggestive identification claim, but Braxton refused to cooperate, pleading the fifth in response to every question.  Later, the parties learned (1) that Sailor's wife had offered Braxton a week's salary to recant his testimony at trial, and (2) that Braxton had contacted Sailor's wife on the date of his deposition.  Motion to Dismiss, ECF 88-1, PageID#1342.  Even if he didn't intend to suborn perjury, Sailor directly interfered with the judicial process.  This also warrants sanctions.

### II.  <u>Dismissal With Prejudice is the Only Appropriate Sanction for Sailor's Bad Faith Misconduct.</u>

As set forth in Defendants' Motion to Dismiss, a court must consider four factors when determining whether to impose case-terminating sanctions under its inherent powers: (1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) whether

5

the adversary was prejudiced by the dismissed party's failure to cooperate in discovery; (3) whether the dismissed party was warned that failure to cooperate would lead to dismissal; and (4) whether less drastic sanctions considered before dismissal was ordered.  *Harmon v. CSX Transp., Inc.,* 110 F.3d 364, 366 - 67 (6th Cir. 1997).  "A case is properly dismissed by the district court where there is a clear record of delay or contumacious conduct."  *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir. 2008) (quoting *Knoll v. AT&T*, 176 F.3d 359, 363 (6th Cir. 1999)).

### A.  Sailor acted with willfulness and in bad faith.

As Defendants explained in their motion, bad faith is demonstrated when a party displays "either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings."  *Schafer*, 529 F.3d at 737 (quoting *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005)).  The Sixth Circuit has found bad faith, and affirmed case-terminating sanctions, where a party failed to produce responsive records in discovery and executed a false affidavit attesting that he had "fully and truthfully" answered all discovery requests.  *KCI USA, Inc. v. Healthcare Essentials, Inc.*, 801 F. App'x 928, 931 (6th Cir. 2020).

Sailor argues that he "misspoke" at his deposition so he was not acting in bad faith.  ECF 102, PageID#2037.  That is not true.  He lied in his pleadings, lied at his deposition, and failed to correct his lies for the duration of the case. He also offered monetary inducements to fact witnesses. That he did not appreciate the "legal consequences" of his actions—despite pleading guilty to perjury and obstruction in a separate legal action—is irrelevant.  He misled the parties at every turn.  At best, his conduct was reckless.  At worst, it was intentional.  Whatever it was, it affected every single claim and undermined the integrity of the proceedings.

6

**B.  Sailor's lies harmed Defendants.**

As Defendants explained in moving, harm is presumed when a plaintiff offers fraudulent evidence. *Farrar v. Lapan*, No. 22-1908, 2023 WL 3151093, at *2 (6th Cir. Apr. 28, 2023). That happened here. Sailor's knowledge of the shooting is the central issue in his case.  His due process claims depend upon it; and the alleged constitutional violations must be weighed against it.  By repeatedly lying about when he found out that Hubbard and Sizemore were responsible, Sailor not only wasted four and a half years of litigation; he falsified the factual predicate of his case and made it impossible for Defendants to meaningfully evaluate his claims.

Sailor does not address the impact of his misconduct in his response brief.  Instead, he focuses solely on how dismissal would affect him.  ECF 102, PageID#2037.  To the extent Defendants' prejudice is ignored, it is conceded.  Self-serving arguments are not sufficient to avoid dismissal.  Sailor's lies affected all aspects of the litigation: paper discovery, party and non-party depositions, and motion practice.  The notion that he can cure this harm by simply "correct[ing] the record" defies reason.  It is the harm that Defendants suffered over the duration of this case that is incurable.  For these reasons, this Court should dismiss the action with prejudice.

**C.  Sailor had notice of dismissal.**

Defendants' motions for sanctions provided Sailor with fair notice that the Court may impose sanctions pursuant to the Court's inherent authority. *See Metz v. Unizan Bank*, 655 F.3d 485, 491 (6th Cir. 2011) (a party receives fair notice of the possibility of inherent power sanctions when an opposing party files a motion requesting sanctions).  Sailor also had opportunity to respond and be heard; he was afforded nearly six months to file his response brief.  Accordingly, his due process rights have been preserved, and the sanction of dismissal would not violate those rights.

### D.  Less Drastic Sanctions Are Inadequate.

The Court need only consider lesser sanctions before dismissing a complaint with prejudice. *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 367 (6th Cir. 1997). Sailor proposes no other sanction because none is adequate.  As explained above, his misconduct casts doubt on the entire record.  It is no longer possible to determine whether he received a fair trial in 2002. Dismissal has been granted and upheld in cases where far less egregious conduct has occurred.  *See*, *Nat'l Hockey League*, 427 U.S. 639 (dismissal appropriate after plaintiffs failed to fully respond to interrogatories for over 17 months); *Milke v. City of Phoenix*, No. 20-17210, 2022 WL 259937, at *2 (9th Cir. Jan. 27, 2022) (dismissal affirmed in wrongful conviction case where plaintiff destroyed prison letters and journals from her time in jail); *Johnson v. Baltimore Police Dep't*, No. CV ELH-19-0698, 2022 WL 9976525, at * (D. Md. Oct. 14, 2022), *aff'd in part, appeal dismissed in part*, No. 22-2095, 2024 WL 1209744 (4th Cir. Mar. 21, 2024) (granting dismissal as a sanction in wrongful conviction case where plaintiff solicited a false affidavit and used it to get out of jail, but did not rely on it in his civil case).  Dismissal is warranted here.

## <u>CONCLUSION</u>

Defendants respectfully request that the Court their Motion to Dismiss with Prejudice as a Sanction and enter judgment in favor of Defendants pursuant to its inherent powers.


Respectfully submitted,


MARK D. GRIFFIN (0064141)
Director of Law


By: *s/ Dylan F. Ford*         
Elena N. Boop (0072907)
Chief Trial Counsel
William M. Menzalora (0061136)
Chief Assistant Director of Law

8

Matthew R. Aumann (0093612)
Dylan F. Ford (0101464)
Assistant Directors of Law
City of Cleveland, Department of Law
601 Lakeside Avenue E., Room 106
Cleveland, Ohio  44114
Tel: (216) 664-2670
wmenzalora@clevelandohio.gov
maumann@clevelandohio.gov
dford5@clevelandohio.gov

***Attorneys for Defendant City of Cleveland***

Kenneth A. Calderone (0046860)
John D. Latchney (0046539)
Hanna, Campbell & Powell
3737 Embassy Parkway, Suite 100
Akron, Ohio 44333
Tel: (330) 670-7602/(330) 670-7324
Email: kcalderone@hcplaw.net
Email: jlatchney@hcplaw.net

***Attorneys for Defendants Eugene Jones,
Henry Ververka, James Metzler, Harry
Matlock, Andrew Desatnik, Sahir Hasan,
Rick Farinacci, and Estate of James
Purcell***

9

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies a copy of the above document was filed electronically on the 14th day of January, 2025.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

s/ *Dylan F. Ford*
Dylan F. Ford

***One of the attorneys for Defendant City of Cleveland***
