← Back

# Prison calls at the heart of new accusations, criminal probe into Cleveland man cleared in 2002 murder

By Adam Ferrise    July 26, 2024    Publication: Plain Dealer, The: Web Edition Articles (Cleveland, OH)    Word Count: 1059

CLEVELAND, Ohio — It's all about a lie that Ru-El Sailor held onto for more than two decades, Cleveland city attorneys say.

Sailor, who spent 15 years in prison before he was cleared of a murder conviction, knew who fatally shot Omar Clark the night of the 2002 shooting and told few people, according to documents Cleveland attorneys filed Thursday in federal court.

Backed up by recordings of prison calls Sailor made, city attorneys said the newly unearthed lie about what he knew of the shooting and when he found out undercut arguments he has made in decades of court proceedings.

The Cleveland attorneys don't implicate Sailor in the shooting. In fact, in their filing in Sailor's lawsuit against the city, they never broached the subject.

But the new allegations in court documents — which asked a federal judge to dismiss Sailor's lawsuit over accusations of police misconduct — set off a wave of reactions.

Among those weighing in was Cuyahoga County Prosecutor Michael O'Malley, who launched a criminal investigation into potential conspiracy and fraud.

He also took specific aim at Kim Corral, the attorney who helped Sailor prove he was wrongfully convicted in 2018. O'Malley, in a statement, said the city's filing gave his office "reason to suspect" that Corral "knew statements her client was providing were false."

Corral vehemently denied O'Malley's accusations in a statement of her own, saying that she never misrepresented facts and that O'Malley's office previously knew that Sailor had known about the identity of the shooter since the night it happened.

Corral called O'Malley's accusations baseless and insisted the prosecutor instead targeted her to "stain the reputation of my firm's wrongful conviction work."

Sailor's attorneys in the federal lawsuit, from the Friedman, Gilbert and Gerhardstein firm, declined comment because they've asked a judge permission to drop Sailor as a client.

Sailor, during a phone interview on Friday, said the city is trying to "bully" him into dropping his lawsuit by sullying his name. He said city officials are trying to distract from the fact that he served 15 years in prison for a murder he didn't commit.

"I just encourage anyone to look and read the facts — it's all public record," Sailor said. "I think the bigger picture is that I was framed for murder."

The lie

Sailor's first lie in the matter happened during his 2002 murder trial that went forward six weeks after he was arrested. He testified that he was with his friend Cordell Hubbard the entire night, giving his friend an alibi. Sailor later pleaded guilty to perjury and obstructing justice over that lie.

Hubbard was convicted of fatally shooting Clark over a $20 PCP-dipped cigarette and remains serving his sentence of life in prison. His first chance at parole comes in 2029.

The jury also convicted Sailor, based in part on his own words, believing his testimony put him at the scene of the shooting.

Days after the conviction, Hubbard swore in an affidavit that Sailor never knew about Hubbard's involvement in the shooting until he confessed to Sailor following the verdict.

Though it wouldn't have hurt his chances at getting cleared of murder later on, Sailor used that explanation in court hearings for the next two decades.

That, according to the city's attorneys, was the second lie.

Unearthed prison calls

The accusations contained in the city's filings stem from recently discovered prison calls Sailor made to his wife, Amy, in 2016 and 2017, court records say.

On a recorded call made on another prisoner's account, Sailor said that he knew the night of the shooting that Hubbard shot Clark, according to the filing.

City attorneys now argue in court filings that the lie tainted future court proceedings, including in his wrongful conviction case, his Ohio Court of Claims case that allowed him to collect $652,000 from the state's wrongful imprisonment fund and his federal lawsuit.

O'Malley, the county prosecutor, said those prison calls are the basis of his criminal investigation.

City attorneys argued in court filings that some of the calls showed Sailor and his wife, Amy, talking about paying two witnesses — Larry Braxton and Clark Lamar Williams — who testified against Sailor at his initial trial. Those calls happened as Sailor was preparing his arguments to be freed from prison.

The filing does not say if the city has any evidence if either were paid.

In one call in 2016, Amy Sailor told her husband that she spoke with Braxton, who said he didn't have time to help with Sailor's court fight, according to court records.

Amy Sailor said on the call she offered him a week's salary, about $300, according to the city's filing.

In a deposition earlier this month, Amy Sailor said that she and her husband were joking and that they were theorizing that police paid Braxton $300 for his testimony. She said the goal wasn't to get Braxton to change his testimony; it was to get him to "tell the truth."

Braxton did not give an interview to investigators during Sailor's fight to be released. During a deposition in the civil case, he invoked his Fifth Amendment right against self-incrimination, according to the city's filing.

City attorneys also accused the Sailors of reaching out, either directly or indirectly, to Williams.

In another recorded jail call, Amy Sailor said at first Williams said he would help with Sailor's release and that it "wasn't about the money," according to the city's filing.

Amy Sailor then told her husband that Williams asked for help with paying for an attorney to help him with his legal troubles, and if that didn't work, to give him $100 for his prison

account, according to court filings.

Williams ultimately signed an affidavit that recanted his testimony. He said he was high on PCP the night of the slaying and only caught a glimpse at the shooter.

During her deposition, city attorneys asked Amy Sailor about that call.

"Now you don't have to be an attorney to realize offering somebody money in exchange for their testimony is improper; can we agree on that?" asked Kenneth Calderone, a private attorney hired to represent the city.

Amy Sailor replied: "I didn't know what was right or wrong during our fight to get him home. I was going to go down there and see him."

Asked if she would have paid someone to help get Sailor out of prison, she replied, "I don't know what I would have done back then."

Adam Ferrise covers federal courts at cleveland.com and The Plain Dealer. You can find his work here.

Plain Dealer, The: Web Edition Articles (Cleveland, OH)
**Date:** July 26, 2024

Copyright 2024 The Plain Dealer. All Rights Reserved.