**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| Ru-El Sailor, | ) | Case No. 1:20-CV-00660 |
| | ) | |
| Plaintiff, | ) | Judge David A. Ruiz |
| | ) | |
| vs. | ) | |
| | ) | |
| City of Cleveland, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT CITY OF CLEVELAND'S
MEMORANDUM IN SUPPORT OF ATTORNEY'S FEES AND COSTS**

Plaintiff Ru-el Sailor filed a frivolous complaint. But even though it was frivolous, it still required a legal defense from Defendant City of Cleveland and its former employees. In all, Cleveland's taxpayers paid outside counsel $256,198 in attorney's fees and spent $17,830.86 on costs. This was reasonable given the work required to prevail, and is half of what the City of Chicago spends in defense on similar cases. More still, Cleveland is not seeking to recover the costs of own litigators, who also spent significant time defending Sailor's lawsuit.

Because Cleveland and its officers prevailed against a frivolous complaint, and did so by reasonably expending resources, this Court should issue judgment in its favor.

I.   **BACKGROUND**

**A.  Sailor knows who committed the murder—his best friend—and lies.**

In late fall 2002, there was a dispute over payment owed for a "wet" cigarette. The dispute involved Omar Clark. Cordell Hubbard was called for backup. Hubbard arrived. He and William Sizemore tried to deescalate. But Hubbard shot Clark, killing him. See R. 88-2, Page

ID#: 1374 (deposition testimony of Ru-El Sailor). Shortly after the shooting, Hubbard called his best friend for a ride, Ru-El Sailor. Sailor picked him up so they could drive around. Hubbard confessed to the murder to Sailor, including the involvement of Sizemore. R. 81-9, Page ID#: 1229-1231 (audio recording of May 3, 2016, prison phone call with reporter, Amy Spence and Ru-El Sailor). The two then went to a party where they posed for pictures and manufactured an alibi.

Detectives quickly placed Hubbard at the scene. A witness then put Sailor there too. Hubbard and Sailor were both arrested and charged with murder, their cases joined together. The pair went to trial in May 2003. During the trial, Sailor lied for his friend. R. 88-3, Page ID#: 1545-1550 (trial transcript). He said they were together all night. Unfortunately for Sailor, there was overwhelming evidence against Hubbard. So by lying that they were together all night, Sailor implicated himself in the murder. Jurors convicted both on all counts.

Following the trial, Sailor moved for a new trial. R. 88-9, Page ID# 1753 (Sailor motion for new trial). He falsely said that it was only immediately after the trial—and not the night of the shooting—that he learned Hubbard was the shooter. Sailor provided an affidavit that said as much. He then provided a false corroborating affidavit from Hubbard. That motion for a new trial was denied.

### B. $652,000 windfall is provided to Sailor.

Sailor picked up the cause again, using a local reporter and the Cuyahoga County Prosecutor's Office to reevaluate his case. To support his release, he provided a false affidavit. Later by joint motion, Sailor agreed to plead to perjury and obstruction and was released for time served.

A few years later, Sailor moved for a declaratory judgment that he was wrongfully imprisoned. R. 88-18, Page ID# 1981 (judgment entry). In support, he again used a false

affidavit. He eventually resolved his claim as a wrongfully imprisoned person for $652,000, paid for by Ohio taxpayers. *See Sailor v. State of Ohio*, Case No. 2023-0098WI (Judgment Entry dated March 2, 2023.) (Exhibit 1.)

### C. Sailor files this expensive lawsuit against Cleveland and its former employees.

Sailor then filed this lawsuit. (Compl., ECF No. 1.) The thrust of the operative complaint is that Sailor "was not present on Englewood Avenue that night." R. 43, Page ID# 442, ¶ 32 (First Amended Complaint). And that he received an unfair trial because he never knew about the shooter or an alternate suspect, William Sizemore. R. 43, Page ID# 445, ¶¶ 48–54 (FAC). This was not true. Sailor was there that night. Sailor knew the shooter was Hubbard. Sailor also knew that "Will" Sizemore was there too. R. 88-1, Page ID#: 1344.

Still, even though Sailor's complaint was false, Cleveland mounted a defense. This required a full effort. That is because jury verdicts for similar claims can run from $750,000 to tens of millions of dollars.[1] So Cleveland deployed its Law Department and outside counsel. The case involved motion practice, intensive factual investigation, thousands of pages and documents, and nearly 20 depositions. In all, Cleveland paid its outside counsel $256,198 in attorney's fees and incurred $17,830.86 in costs. Litigators in Cleveland's Law Department also spent the equivalent of tens of thousands of dollars defending the city.

---

[1]  Cherone, Heather, *Jury Awards $750K to Man Who Spent 17 Years in Prison After Being Wrongfully Convicted of 1989 Murder*, February 20, 2026, WTTW *available at* https://news.wttw.com/2026/02/20/jury-awards-750k-man-who-spent-17-years-prison-after-being-wrongfully-convicted-1989; Cherone, Heather, *Jury Awards $120M to 2 Men Wrongfully Convicted of 2003 Murder, Setting New Chicago Record*, March 10, 2025, WTTW *available at* https://news.wttw.com/2025/03/10/jury-awards-120m-2-men-wrongfully-convicted-2003-murder-setting-new-chicago-record

**D. This Court finds Sailor acted with fraud.**

Cleveland and the former officers discovered Sailor's fraud. Therefore they jointly moved for this Court to dismiss the lawsuit with prejudice as a sanction. This Court identified Sailor's fraud:

> The uncontroverted evidence cited herein demonstrates that Plaintiff has knowingly engaged in a twenty-plus year fraud through court proceedings, depositions, affidavits, and in the public media, to hide the fact that from the beginning he knew the details of Omar Clark's murder: Cordell Hubbard was the shooter, and Will Sizemore was with him. R. 88-1, Page ID#: 1344. When Plaintiff knew the identity of the shooter is a critical fact, as the Defendants point out. R. 103, Page ID#: 2051. If, as Plaintiff continuously and falsely claimed, he did not know Hubbard was the shooter until months after the murder and following the jury verdict, Plaintiff's false testimony at trial that he was with Hubbard all night—thus providing Hubbard a potential alibi—might be seen as a misguided act of loyalty to a close friend. Id., Page ID#: 2052. **But considering the truth, Plaintiff's silence and subsequent lie covered for a murderer and so corrupted the police investigation and legal proceedings that he claims were somehow rigged against him**.

R. 106, Page ID#2077-78 (Opinion and Order) (emphasis added). And after considering the evidence and relevant factors, dismissed the lawsuit with prejudice.

## II. <u>STANDARD OF REVIEW</u>

A trial court's decision on attorney's fees and costs will not be disturbed but for an abuse of discretion. *Perotti v. Seiter,* 935 F.2d 761, 763 (6th Cir.1991). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Logan v. Dayton Hudson Corp.,* 865 F.2d 789, 790 (6th Cir.1989) (citation omitted). "An abuse of discretion exists when the district court applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *First Tech. Safety Sys. v. Depinet*, 11 F.3d 641, 647 (6th Cir.1993). Other abuses of discretion include a district failing to explain its reasoning. *Est. of Romain v. City of Grosse Pointe Farms*, 774 F. App'x 976, 978 (6th Cir. 2019); *Garner v. Cuyahoga Cnty. Juv. Ct.*, 554 F.3d 624, 643 (6th Cir. 2009). But the

4

reasonableness of the award is reviewed for clear error. *Bowman v. City of Olmsted Falls*, 802 F. App'x 971, 975–76 (6th Cir. 2020).

### III.   ANALYSIS

Because Sailor filed a frivolous lawsuit, this Court should award Cleveland $256,198 in attorney's fees, which was reasonable given the stakes of the case and even excludes time spent by Cleveland's Law Department. Cleveland also seeks $17,830.86 in costs.

### A.  This Court should award Cleveland attorney's fees because Sailor filed a frivolous lawsuit.

Because Sailor's lawsuit was frivolous, unreasonable, and without foundation, this Court should award Cleveland its attorney's fees and costs. *Hughes v. Rowe*, 449 U.S. 5, 14 (1980). Under 42 U.S.C. § 1988, a court, it its discretion may allow a prevailing party to recover a reasonable attorney's fee as part of the costs. *Garner v. Cuyahoga Cnty. Juv. Ct.*, 554 F.3d at 635 (quoting § 1988(b)). A defendant may recover attorney's fees if the plaintiff's action was "frivolous, unreasonable, or without foundation." *Whiting v. City of Athens, Tennessee*, No. 24-5918, 2026 WL 710025, at *10–11 (6th Cir. Mar. 13, 2026) (quoting *Fox v. Vice*, 563 U.S. 826, 833 (2011)). A lawsuit based on knowingly false testimony or allegations is frivolous because it lacks factual or legal support. *See, e.g.*, *Carrion v. City of New York*, No. 01-CIV-2255 (NT), 2003 WL 22519438, at *2 (S.D.N.Y. Nov. 4, 2003) (false affidavit supported frivolousness); *Havensight Cap. LLC v. Nike, Inc.*, No. CV 14-8985-R, 2015 WL 993344, at *3 (C.D. Cal. Feb. 18, 2015) (same).

Here, Cleveland is the prevailing party against Sailor's frivolous lawsuit so this Court should award Cleveland its attorney's fees. In the operative complaint, Sailor made three key allegations that lack factual support. First, Sailor alleged that he was not present on Englewood Avenue that night. R. 43, Page ID# 442, ¶ 32 (First Amended Complaint). That was not true. He

was there that night. R. 88-19, D2 C618 (prison call). Second, Sailor alleged that he never knew the shooter until after the trial. R. 43, Page ID#: 452, ¶ 115 (FAC). That was not true because Hubbard confessed right after the shooting. R. 81-9, Page ID#: 1229-1231 (audio recording of May 3, 2016, prison phone call with reporter, Amy Spence and Ru-El Sailor). Finally, Sailor alleged that he was confused with an unknown alternate suspect, Will Sizemore. R. 43, Page ID#: 452, ¶ 117 (FAC). Yet Sailor also knew that "Will" Sizemore was there too. R. 88-1, Page ID#: 1344. Because Sailor knew these allegations were false, the complaint lacked factual support. In other words, the complaint was frivolous. And after six years of litigation, Cleveland and its former employees prevailed on all counts when the allegations were dismissed with prejudice. R. 106 (Opinion and Order). Therefore, Cleveland prevailed on a frivolous lawsuit, and this Court should award attorney's fees under 42 U.S.C. § 1988.

**B. This Court should find $256,198 is reasonable.**

To calculate the appropriate award, this Court should use the lodestar method, i.e., "the proven number of hours reasonably expended on the case by an attorney, multiplied by a reasonable hourly rate." *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005) (citation omitted). The "most critical factor" is the "degree of success obtained." *Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 633 (6th Cir. 2020) (citation and quotation marks omitted). Using this method, Cleveland seeks $256,198 in attorney's fees. In doing so, it seeks only time paid to outside counsel, and no time provided by its Law Department.

**1. This Court should find that Cleveland seeks a reasonable rate.**

The reasonable rate is the "prevailing rate in the relevant community." *Renouf v. Aegis Relocation Co. Corp.*, 641 F. Supp. 3d 439, 450 (N.D. Ohio 2022) (citing *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000)). Rates in this legal community go as high as $600 per hour. *See, e.g.*, *Williams v. CG-HHC*, Inc., No. 5:22-CV-1003, 2024 WL 1514587, at

*3 (N.D. Ohio Apr. 8, 2024) (collecting cases). About a decade ago this district noted that the median billing rate for a civil rights litigation attorney, as is the case here, was $350 per hour. *Ra v. Orange Vill.*, No. 1:15-CV-2416, 2017 WL 1734001, at *3 (N.D. Ohio May 4, 2017).

Paralegal time may be recovered as attorney's fees, and $130 per hour is "consistent with the typical hourly rates awarded for paralegals in this district." *C.R.H. Indus. Water, LLC v. Eiermann*, No. 1:23-CV-1805, 2026 WL 584639, at *5 (N.D. Ohio Mar. 3, 2026). A similar rate is appropriate for law clerks. *E. Division Little Mountain, LLC v. DR Guns, LLC*, No. 1:22 CV 1471, 2025 WL 332294, at *2 (N.D. Ohio Jan. 29, 2025) (approving rate of $135 per hour for law clerks).

Here, Cleveland seeks the following rates for the legal professionals employed by Hanna, Campbell, & Powell, LLP:

| **Professional** | **Rate** |
|---|---|
| Kenneth A. Calderone, Esq. | $225 |
| John D. Latchney, Esq. | $225 |
| Michael Ockerman, Esq. | $225 |
| Robert L. Tucker, Esq. | $225 |
| John R. Chlysta | $225 |
| Catherine Nagy (law clerk – Associate) | $115 / $175 |
| Abbey C. Calderone (law clerk) | $130 |
| Frank G. Mazgaj, Jr. (law clerk) | $115 |
| Alan Senderovitch (law clerk) | $130 |
| Cynthia Hayworth (paralegal) | $115 / $130 |
| Ann C. Hose (paralegal) | $115 / $130 |

7

| Sharon J. Juntoff (paralegal) | $130 |
|---|---|
| Katie L. Lansden (paralegal) | $115 / $130 |

(Caldarone Decl., Ex. B.)

$225 for partners and $175 for associates is reasonable. Attorney Calderone was the lead attorney for the former employees. (Calderone Decl., ¶ 5.) He has been practicing law since 1990. (*Id.*, ¶ 3.) In addition to frequently representing former employees of the City of Cleveland, he is, among other things, National Trial Counsel for large corporate defendants. (*Id.*, ¶ 4). He has also tried many multi-million-dollar cases. (*Id.*) The other primary attorneys are also very experienced. John Latchney has represented political subdivisions for more than 30 years. (Latchney Decl., ¶ 3.) This includes defending allegations of police misconduct. (*See id.*) He has also successfully served as appellate counsel for more than 70 appeals. (*Id.*) Michael Ockerman has also been practicing for more than 30 years and has significant experience with high value claims. (Ockerman Decl., ¶ 3.)

This rate for these attorneys, $225 per hour, is reasonable based on their experience. It is also below the median hourly rate for civil rights work as identified by this Court. And as noted above, courts in the district have recently approved $130 per hour for law clerks and paralegals so these rates are reasonable. Finally, these rates are reasonable because Cleveland paid these rates in defense, confirming that the market will bear these rates.

### 2. This Court should find that Cleveland seeks a reasonable amount of time.

Cleveland seeks a reasonable amount of time for this litigation. A court must consider the number of hours "reasonably expended on the litigation." *Martin v. Lincor Eatery, Inc.,* No. 2:17-CV-11634, 2018 WL 4658996, at *2 (E.D. Mich. Sept. 28, 2018) (citation and quotation marks omitted). A court need not achieve "auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838

(2011). Billing records should be sufficiently detailed to provide for a review. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 552 (6th Cir. 2008) (citation omitted). In the end, a court considers whether a "reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Miller v. Food Concepts Int'l, LP*, No. 2:13-CV-00124, 2017 WL 5247542, at *6 (S.D. Ohio Nov. 13, 2017) (citation omitted).

Here, the hours expended were reasonable.

| Professional | Total Hours |
|---|---|
| Kenneth A. Calderone, Esq. | 374.9 |
| John D. Latchney, Esq. | 77.2 |
| Michael Ockerman, Esq. | 194.3 |
| Robert L. Tucker, Esq. | 16.5 |
| John R. Chrystla | 2.0 |
| Catherine Nagy (law clerk – Associate) | 85.9 |
| Abbey C. Calderone (law clerk) | 57.7 |
| Frank G. Mazgaj, Jr. (law clerk) | 21.9 |
| Alan Senderovitch (law clerk) | 2.7 |
| Cynthia Hayworth (paralegal) | 98.3 |
| Ann C. Hose (paralegal) | 413.9 |
| Sharon J. Juntoff (paralegal) | .9 |
| Katie L. Lansden (paralegal) | 161.8 |

(Calderone Decl., Ex. C.)

These hours are documented in more than 300 pages of invoices, with most pages containing contemporaneously created narratives of the work performed. (Invoices, Ex. A.) The invoices address six years of litigation initiated by Sailor's frivolous complaint. Outside counsel defended nine defendants from facts centered on 20 years ago, the murder of Omar Clark. This required detailed factual investigation of what happened then, and what happened since. More than 15 depositions were taken and defended. And Sailor's jail calls, a turning point in the case, required significant work. In the end, it resulted in a favorable result for Cleveland. Their reasonableness is confirmed by Cleveland's payment of these same invoices.

### 3. Cleveland's outside counsel total spend is less than the City of Chicago's.

Multiplying the hourly rate by the reasonable hours worked results in a fee award of $256,198. Chicago has faced many alleged wrongful conviction lawsuits. An area non-profit tracked their legal spend on such cases. According to this report, Chicago has spent more than $150 million on outside counsel from 2000 to 2023 with an average spend of $472,886.12 per case.[2] Cleveland spent less than that amount here. This confirms that the work performed by outside counsel to defend against Sailor's frivolous complaint was reasonable.

### 4. Cleveland's reasonableness is supported by not seeking fees for its Law Department work.

The reasonableness of Cleveland's request is supported by not seeking fees for its own litigators. A court may award a municipal law department attorney's fees. Six years ago, this Court approved $300 per hour for Cleveland's assistant directors of law. *Harper v. City of Cleveland*, No. 1:16-CV-2972, 2020 WL 127683, at *8 (N.D. Ohio Jan. 10, 2020). William

---

[2]     TRUTH, HOPE & JUSTICE INITIATIVE, *Wrongful Convictions Litigation Database: Chicago*, September 2024, *available at* https://cdn.shopify.com/s/files/1/0490/7515/9208/files/2024.09.08_Wrongful_Convictions_Database_Report_-_FINAL.pdf?v=1726505063

Menzlora and Matthew Aumann, two attorneys here, were respectively approved for $350 per hour and $250 per hour in a fee award. *See Montague v. City of Cleveland*, Case No. 1:22-cv-01878, ECF No. 33 (Opinion and order dated July 15, 2025). For government attorneys, where time is not often kept, it is acceptable to provide a conservative estimate of the time worked. *See, e.g.*, *S.E.C. v. AmeriFirst Funding, Inc.*, No. CIV.A.3:07-CV-1188D, 2008 WL 2185193, at *2 (N.D. Tex. May 27, 2008). While not a hard rule, courts regularly approve time that is between one to three hours per page filed. *In re Toys R Us-Delaware, Inc.*, 295 F.R.D. 438, 466 (C.D. Cal. 2014) (three hours per page); *Struve v. Gardner*, No. 119CV04581RLYMJD, 2021 WL 1948868, at *3 (S.D. Ind. May 14, 2021) (one hour per page).

Cleveland conservatively considered the value of its litigator's time. As for rates, Cleveland used $350 per hour for Chief Assistant Directors of Law (William Menzalora) and $250 per hour for Assistant Directors of Law (Tim Puin, Matthew Aumann, and Dylan Ford). These rates have been supported by courts in this district. As for time, Cleveland reviewed contemporaneously created records and then used a one-page per hour maximum for filed pages to create an estimate of time spent. Combining these factors, Cleveland spent the private practice equivalent of more than $40,000 attorney time just on filings. (Menzalora Decl.; *see also* Ex. E.) More telling is what is excluded: factual investigation, depositions and deposition preparation, strategy, drafting and responding to written discovery, additional legal research, non-attorney time, and more. As a result, the true value of Cleveland's litigation team is much more than $40,000.

Still, Cleveland only seeks to recover the attorney time directly paid by Cleveland's taxpayers to outside counsel, and therefore chooses not to seek compensation for any of its otherwise compensable work. This too shows that Cleveland's request here is reasonable.

## C.  Cleveland also seeks to recover costs.

Cleveland, under Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920, seeks the following costs incurred because Sailor filed this lawsuit:

- $12,954.42 in depositions ordered by outside counsel;

- $2,637.00 in depositions ordered by Cleveland;

- $214.76 in copies of external records;

- $290.79 for mileage reimbursement for travel;

- $13.80 in PACER costs;

- $113.00 in parking charges;

- $27.54 for certified mail related to subpoenas;

- $1,508.66 in subpoena service costs; and

- $70.89 in mailing and delivery charges.

(Calderone Decl., Ex. A, D; Menzalora Decl., Ex. F.) This is a total of $17,830.86.

## D.  Sailor cannot use his pro se status as a shield to waste tax dollars.

This Court should not allow Sailor to use his pro se status to avoid liability for the lawsuit he filed. Generally, an unrepresented litigant should not be punished for his failure to recognize "subtle factual or legal deficiencies" in his claims. *Hughes v. Rowe*, 449 U.S. 5, 15 (1980). But a court may still award attorney's fees against a pro se plaintiff, for example, when he engages "litigious harassment" that distracts the court and the sued entity. *Migliori v. Honeywell*, Inc., 311 F. Supp. 3d 879, 880 (N.D. Ohio 2018) (awarding $127,819.20 in attorney's fees against pro se plaintiff.) The issue turns on whether the pro se plaintiff had the "ability to recognize the objective merit of his or her claim." *Weston v. Smith*, 384 F. App'x 696, 698 (10th Cir. 2010)

12

(citation and quotation marks omitted); *see also Blackburn v. Webb*, No. CIV-23-379-R, 2024 WL 4607718, at \*3 (W.D. Okla. Oct. 29, 2024) (awarding fees against pro se plaintiff.)

Here, Sailor cannot use his pro se status a shield to avoid liability. First, Sailor's lawsuit did not turn on subtle deficiency. Instead, Sailor committed fraud—and did so about key facts related to his claims. Second, Sailor was only pro se during the end of this litigation. So he should not receive protection from the whole lawsuit because it was abandoned by his attorneys. Finally, Sailor, unlike many pro se plaintiffs, received a $652,000 windfall. This too shows that Sailor is not the typical plaintiff. For these reasons, this Court should not let Sailor avoid the consequences of his actions, and make Cleveland's taxpayers whole.

## IV.    CONCLUSION

Because Sailor filed a frivolous lawsuit and Cleveland prevailed, this Court should award Cleveland its attorneys fees and costs.

Respectfully submitted,

MARK GRIFFIN (0064141)
Law Director

*s/ Matthew R. Aumann*
William M. Menzalora (0061136)
CHIEF ASSISTANT DIRECTOR OF LAW
Matthew R. Aumann (0093612)
ASSISTANT DIRECTOR OF LAW
City of Cleveland, Department of Law
601 Lakeside Avenue E., Room 106
Cleveland, OH  44114
Telephone: (216) 664-2675
wmenzalora@clevelandohio.gov
maumann@clevelandohio.gov

13

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties through the Court's electronic filing system. Parties may access this filing through the Court's system. A copy was also served Pro Se Plaintiff Ru-El Sailor under Fed. R. Civ. P. 5(b)(2)(B) at the following address:

589 E. 185th St.

Euclid, OH 44119

*s/ Matthew R. Aumann*
Matthew R. Aumann (0093612)