# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **RU-EL SAILOR,** | ) |
| | ) **CASE NO. 1:20-cv-00660** |
| **Plaintiff,** | ) |
| | ) **JUDGE DAVID A. RUIZ** |
| ***vs.*** | ) |
| | ) **PLAINTIFF'S MEMORANDUM IN** |
| **CITY OF CLEVELAND, *et al.,*** | ) **OPPOSITION TO DEFENDANTS** |
| | ) **CITY'S MOTION FOR ATTORNEY** |
| **Defendants.** | ) **FEES AND COSTS** |

## MEMORANDUM

Plaintiff, Ru-El Sailor ("Sailor"), opposes the Motion for Attorney Fees and Costs submitted on April 14, 2026, by Defendant City of Cleveland (the "City"). *Doc#:108, PageID#:2,083-84; Doc#:110, PageID#:2,464-65* (erroneous caption corrected). The Court should deny that relief without the need for a hearing.

Sailor's claims were anything but "frivolous." *Doc#:108-12, Defendant City of Cleveland's Memorandum in Support of Attorney's Fees and Costs filed April 14, 2026 ("Fee Motion"), PageID#:2,447.* And while he was punished for wrongdoing by dismissal of his claims with prejudice, it stands to reason he was already punished enough. Afterall, the Court already considered and rejected any "lesser sanction such as <u>shifting fees</u>, limiting claims, an adverse inference, and so forth." *Doc#:106, Memorandum and Order filed Mar. 31, 2026 ("Dismissal"), PageID#:2,080* (emphasis added).

In reality, the City accused Sailor of filing frivolous claims within weeks after this Court observed "that sufficient evidence indicates Plaintiff was not involved in the murder and was erroneously convicted." *Doc#:106, Dismissal, PageID#:2,080.* The erroneous conviction resulted from the civil rights violations undergirding Sailor's claims. Claims pled with adequate factual support like that are quintessentially non-frivolous, and in that context, Sailor pled proper claims. The dismissal of those claims was punishment

FLOWERS & GRUBE
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
(216) 344-9395

precisely because they were real, viable theories for relief, not frivolous. So, this Court should permit the parties to walk away now without any further litigation. The case should simply end without further punishment for Sailor.

If the Court somehow sees merit to the Fee Motion, it should set a hearing on the matter so that Sailor can contest the factual basis of the request through cross-examination and submission of his own evidence. But, because the Fee Motion appears to be legally inadequate on its face at this juncture, an order should issue describing the precise frivolous conduct for which the Court will consider fee shifting.

## I.    FACTUAL BACKGROUND

The Court capably described the relevant background necessary to determine the City's Fee Motion in its last order. *Doc#:106, Dismissal, PageID#:2,070-76.* In the interest of brevity and avoiding unnecessary duplication, Sailor will avoid restating the complete course of the litigation here. Yet a few additional facts and procedural details bear emphasis at this juncture.

Nobody asserts any longer that Sailor killed Omar Clark or took any action to aid or assist in that offense. *Doc#:43, Sailor's First Amended Complaint ("FAC"), PageID#:442* (paragraph 34); *Doc#:46, Officers' Answer to FAC, PageID#:532* (denying "sufficient information to either admit or deny"). The best the City could muster was a tepid denial of Sailor's complete innocence, asserting he "pled guilty to crimes related to the murder." *Doc#:44, City's Answer to FAC, PageID#:500* (paragraph 34). Of course, this is, and could only be, a reference to the dark plea Sailor took for "perjury and obstruction related to his trial testimony." *Doc#:106, Dismissal, PageID#:2,073.* And everyone knew about that by the time this dispute was initiated. Indeed, the City pled as an affirmative defense that the injuries for which Sailor sought to recover were "caused or

FLOWERS & GRUBE
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
(216) 344-9395

2

aggravated by an intervening and superseding cause, including but not limited to Plaintiff's admitted acts of perjury and/or obstruction of justice." *Doc#:44, City's Answer to FAC, PageID#:527* (fourth affirmative defense).

But Sailor's claims here were not premised upon his mere innocence, as that sort of fact could strictly form the basis of a state-law wrongful imprisonment claim. *See R.C. 2743.48(A)(5)*. Rather, Sailor pled claims premised upon many violations of his civil rights committed by police occurring before and during the trial over Omar Clark's murder. For example, he alleged that "CDP Detective Eugene Jones" wrote a police report that "contained both fabricated and exculpatory information," which "was never provided to Sailor or his counsel" until "over a decade later." *Doc#:43, FAC, PageID#:444-45*. Jones buried an early lead in that report pointing to a man named "Will," a clear reference in context to "William Sizemore." *Id*. Jones had been targeting Sailor for harassment long before that. *Id., PageID#:445-46*. But with the help of other defendant officers, Jones used "unduly suggestive lineup" tactics during an array identification at the home of Larry Braxton and later when Braxton was invited to repeat his identification at a police station. *Id., PageID#:446-47*.

These efforts led directly to Sailor's indictment for the murder of Omar Clark. *Id., PageID#:447-48*. Then, around the trial, Jones put pressure on several alibi witnesses for Sailor, Bobby Nettles, Anthony McKenzie, and Dawn Gooseby, conveying that if they testified, they would suffer consequences. *Id., PageID#:448-50*. And actually, Sailor never would have taken the stand to offer any testimony at all, true or false, had his alibi witnesses appeared for trial. *Id., PageID#:450* (paragraph 99). None of the defendants have ever had reason to deny that Sailor would have remained silent, as he would have been entitled during a criminal trial, had the witnesses for his defense not been

FLOWERS & GRUBE
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
(216) 344-9395

intimidated by Defendant Jones. *Doc#:46, Officers' Answer to FAC, PageID#:533* ("Defendants lack sufficient information to either admit or deny the allegations contained in paragraphs 99 and 100 of Plaintiff's First Amended Complaint"); *Doc#:44, City's Answer to FAC, PageID#:509* ("In response to paragraph 99, the City denies any allegations against it and denies any remaining allegations for lack of knowledge or information sufficient to form a belief as to their truth."). And because of these civil rights violations, Sailor never had a real chance to avoid conviction.

These were the facts that led to Sailor's federal claims against the individual defendants pursuant to 42 U.S.C. § 1983. *Doc#:43, FAC, PageID#:479-91* (Counts 1 through 8). But because these tactics were an expression of the longstanding "policies and practices of the Defendant City and the CDP," which have historically involved "unconstitutional measures to falsely implicate criminal suspects, including by withholding and/or suppressing exculpatory evidence, fabricating evidence, feeding information to witnesses, engaging in unduly suggestive identification and lineup procedures, and engaging in leading, coercive, and unduly suggestive questioning of and contact with witnesses," Sailor also pled a claim against the City in reliance on *Monell v. Dept. of Social Servs.*, 436 U.S. 658 (1978). *Id., PageID#:456-75, 492-93* (Count 9). Relying on all these same facts, Sailor added a claim for "willful, wanton, and/or reckless conduct" under Ohio law. *Id., PageID#:493-94* (Count 10).

None of these claims were legally inadequate. While the City challenged the *Monell* claim, the Court permitted leave to amend and solve the pleadings deficiencies that had been identified. *Doc#:40, Opinion and Order, PageID#:425-31*. Particularly, Sailor was permitted to proceed under *Monell*, over objection that the claim was legally insufficient, on the theory that the City had "an unlawful custom of Brady violations" and "an unlawful

FLOWERS & GRUBE
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
(216) 344-9395

policy of coercive witness practices." *Id., PageID#:428-29.*

None of the parties have yet been required to demonstrate the factual underpinnings of their claims or defenses. The dispositive motions deadline had been set for January 15, 2024, when the deposition transcript of Amy Sailor was filed on July 17, 2024. *Doc#:80*; *Doc#:81*. Sailor's previous counsel sought to withdraw the same day as a result of her testimony, and the Defendants requested an order of dismissal with prejudice on July 25, 2024. *Doc#:82*; *Doc#:88*. Thereafter, the dispute proceeded predominantly on the issue of whether the case should be dismissed with prejudice until, on March 31, 2026, it was. *Doc#:106, Dismissal, PageID#:2,070, 2,080-81.*

In the process, this Court did not cast any doubt on the numerous allegations in the Complaint that the Defendants had violated Sailor's civil rights. Rather, the issue was that Omar Clark's killer, Cordell Hubbard, "spoke with Plaintiff immediately after the shooting and confessed." *Doc#:106, Dismissal, PageID#:2,071*. The Court determined that Sailor "subsequently lied by claiming not to have known until after the jury verdict" in a number of court filings over the years, and he had relied on a false affidavit from Hubbard, saying he confessed to Sailor for the first time just "after the jury returned its verdict." *Id., PageID#:2,071-74.* Unfortunately, the same "falsehood contained in the Hubbard affidavit that Plaintiff was unaware that Hubbard was the shooter until after the jury verdict" was repeated in Sailor's deposition in this dispute. *Id., PageID#:2,074.* Those and other problematic acts by Sailor and his wife, Amy, led the Court to grant the sanction of dismissal with prejudice proposed by the City. *Id., PageID#:2,074-75, 2,077-81.* The Court relied upon its "inherent power to dismiss a case in its entirety as a sanction for lying or other misconduct," both during "its own case" and "before another tribunal." *Id., PageID#:2,076-77.*

FLOWERS & GRUBE
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
(216) 344-9395

At no time did the Court declare that Sailor's civil rights *had not* been violated in an actionable manner. *Doc#:106, Dismissal, PageID#:2,070-81.* At worst, the Court determined that Sailor pulled the Defendants "through years of litigation over claims largely resting on a false predicate" and had "delayed and obstructed the Defendants in meaningfully investigating and evaluating the claims in this case." *Id., PageID#:2,079.* But the Defendants were not absolved of their own wrongdoing and perversions of justice. Instead, the Court was careful to remark that "the factual background" recited in the order of dismissal was "not provided to suggest that Plaintiff was not innocent of the murder-related charges." *Id., PageID#:2,072 n.2.* The order concluded by noting the "sad reality" that "sufficient evidence indicates Plaintiff was not involved in the murder and was erroneously convicted." *Id., PageID#:2,080.* So, while Plaintiff "corrupted the police investigation and legal proceedings that he claims were somehow rigged against him," the Defendants were not absolved of the credible allegations that they too had corrupted the same proceedings by rigging the trial against Sailor through *Brady* violations, fabrication of police reports and witness statements and identifications, suggestive identification procedures, witness intimidation, and various other efforts taken to make those constitutional violations stick. *Id., PageID#:2,077-78; Doc#:43, FAC, PageID#:479-94.*

Sailor now opposes the City's unwarranted effort to recover attorney fees expended on outside counsel and the costs incurred in that effort, as his pursuit of claims in this dispute was not frivolous.

## II. LEGAL STANDARDS

For a defendant to recover attorney fees under 42 U.S.C. § 1988 in an action pursued under § 1983, as the City now asks, a "plaintiff's action must be meritless in the sense that it is groundless or without foundation." *Hughes v. Rowe*, 449 U.S. 5, 14 (1980);

FLOWERS & GRUBE
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
(216) 344-9395

6

*see Christiansburg Garment Co. v. Equal Emp. Opportunity Comm.*, 434 U.S. 412, 422 (1978). "The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees." *Hughes* at 14. Even "allegations that were properly dismissed for failure to state a claim" still deserve "careful consideration" by a Court and are therefore "not meritless in the *Christiansburg* sense." *Id.* at 15. In the analogous context of Title VII fee shifting, the Supreme Court explained in *Christiansburg* that taking "the further step of assessing attorney's fees against plaintiffs simply because they do not finally prevail would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement" of the relevant statutory framework. *Christiansburg* at 422.

This relief is also limited by an important causal test: "Section 1988 permits the defendant to receive only the portion of his fees that he would not have paid but for the frivolous claim." *Fox v. Vice*, 563 U.S. 826, 836 (2011). Consequently, if a "defendant would have incurred those fees anyway, to defend against non-frivolous claims, then a court has no basis for transferring the expense to the plaintiff." *Id.*

Under these rules, a "continued course of harassing litigation" or "an ongoing campaign of lawfare" pursued by plaintiffs who truly are "not seeking to redress injuries" despite repeat initiation of claims barred by "an absolute immunity" could meet the *Hughes* standard. *Whiting v. City of Athens, Tennessee*, 170 F.4th 439, 445, 448, 452, 454-55 (6th Cir. 2026). Or, where a "plaintiff's arrest was based on absolute probable cause," but the resulting § 1983 claim was premised upon a "single affidavit" asserting someone else "was the first aggressor and that plaintiff did not injure" anyone, but the affiant signed it "without reading the final typewritten version," then that is "a frivolous case" justifying fee shifting for a defendant under *Hughes*. *Carrion v. City of New York*,

FLOWERS & GRUBE
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
(216) 344-9395

2003 WL 22519438, *1-2 (S.D.N.Y. Nov. 4, 2003). As explained in *Carrion*, a case is frivolous in the relevant sense when a plaintiff fails "to prove a *prima facie* case" with even "one shred of evidence." *Id.* at *1.

While the City has relied upon at least one fee shifting decision issued under Fed. R. Civ. P. 11, even in that context, the pleading must be "based on the false affidavit." *Havensight Capital LLC v. Nike, Inc.*, 2015 WL 993344, *1 (C.D.Cal. Feb. 18, 2015). In *Havensight*, counsel had submitted a false affidavit recounting an interview with a man who later offered a declaration entirely contradicting the affidavit. *Id.* at *2. Counsel had engaged in a pattern of this kind of misconduct. *Id.* at *3. It was primarily the submission of the false evidence that was sanctioned: "Plaintiff violated Rule 11 by presenting a false affidavit to the Court." *Id.* at *2. Secondarily, that affidavit was the entire factual predicate for the complaint, so, the pleading had "no evidentiary support" and was "presented in an attempt to deceive the Court." *Id.* To the extent *Havensight* speaks to what makes *a claim itself* frivolous, the Court observed: "[B]ecause the FAC, and the claims advanced therein, are based on that false affidavit, Plaintiff has advanced unwarranted, frivolous claims in violation of Rule 11(b)(2)." *Id.*

The City also requested fee shifting under "20 U.S.C. § 1927." This provision does not appear to have ever existed, and the reading-improvement provisions in that subpart of Title 20 were repealed in 1978. *Pub. L. 95–561, title XV, § 1529, Nov. 1, 1978, 92 Stat. 2380*. If the City meant to rely upon 28 U.S.C. § 1927, that law only permits a fee award against an "attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof" for sanctionable conduct. *E.g., Whiting*, 170 F.4th at 446.

## III. ANALYSIS

The City's motion for fee shifting under 42 U.S.C. § 1988 is legally flawed in that Sailor's claims for relief were never "groundless or without foundation." *Hughes*, 449 U.S. at 14. Nor were they based materially on the moment when he learned that Hubbard confessed to Sailor, even if it was the same night Omar Clark was murdered. Regardless of when Sailor learned the facts, his proximity to Hubbard that night does not suggest in any way that he had been involved in a crime under Ohio law. *E.g., In re D.B.*, 2024-Ohio-3391, ¶ 36 (1st Dist.). So, the conduct of the Defendants, which violated Sailor's civil rights, gave rise to very real claims against them. Those claims were plausibly alleged, which is why this Court permitted them to proceed even under *Monell. Doc#:40, Opinion and Order, PageID#:425-31*. And not even a jury verdict in favor of the City or its employee Defendants would have justified the relief they now request under § 1988. *Hughes* at 14. ("The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees.").

Considered in light of the causal test of *Fox*, 563 U.S. at 836, the result becomes clear. If Sailor had told everyone the truth about when Hubbard confessed from the stand at his trial, it would not have stopped or prevented the Defendants from violating his civil rights in actionable ways. This case still would have been filed. So, in the words of Justice Kagan, writing for the Court, the City "would have incurred those fees anyway." *Id.* Sailor only took the stand to testify *after* the Defendants worked to rig his trial by pressuring the three alibi witnesses that would have been called to clear his name. Sailor never would have stood trial for Omar Clark's murder, and he never would have been sworn in to testify in his defense, if Detective Jones had not buried the original police report pointing to William Sizemore, who had actually been involved in the murder. Nor would he have been

FLOWERS & GRUBE
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
(216) 344-9395

indicted if Jones had not worked with the Defendants to coach a false identification out of Larry Braxton. Without those civil rights violations, Sailor never would have been faced with the decision about what to tell jurors at his criminal trial. And so, one way or the other, the City would have found itself defending this case no matter how Sailor testified.

Even accepting the City's understanding of why Sailor was originally convicted, the causal problem recurs:

> During the trial, Sailor lied for his friend. R. 88-3, Page ID#: 1545-1550 (trial transcript). He said they were together all night. Unfortunately for Sailor, there was overwhelming evidence against Hubbard. So by lying that they were together all night, Sailor implicated himself in the murder. Jurors convicted both on all counts.

*Doc#:108-12, Fee Motion, PageID#:2,448.* Damned either way apparently, Sailor would still have put himself alongside Hubbard on the evening of the murder if he told jurors that Hubbard admitted the killing while they were together that night. And without the three alibi witnesses that could confirm that Sailor *was not with Hubbard and Sizemore during the relevant period of time*, all of whom were all pressured against testifying, a conviction was no less likely. The City's logic ignores the substantive law of Ohio on proximity to a crime, which was never a valid reason for the jury to convict on its own. But it admits the reality that whatever Sailor did, his chances at his original criminal trial were impossibly low once he was indicted on a lie and forced to testify in his own defense after his witnesses were scared away. That is the factual predicate for his civil rights claims against the Defendants who engineered his conviction. And it is the reason, ultimately, that the City's legal fees and costs of this litigation are its own causal fault, not Sailor's.

In those ways, the City is totally off-base to argue that the "thrust of the operative complaint" was that Sailor was not on Englewood Avenue on the night of Clark's murder

FLOWERS & GRUBE
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
(216) 344-9395

or that "he received an unfair trial because he never knew about the shooter or an alternate suspect, William Sizemore." *Doc#:108-12, Fee Motion, PageID#:2,449*. This dispute and the claims Sailor pled in it were inevitable even if those "three key allegations" in the Complaint were false. *Id., PageID#:2,451-52*. The City did not assert or establish that Sailor's allegations of the Defendants wrongdoing *entirely* "lacked factual support." *Id., PageID#:2,452*. The events of that night were a small subset of the 314-paragraph complaint, and all the actionable conduct alleged against the Defendants happened afterward. Unlike the handful of decisions the City relies on, like *Whiting*, *Carrion*, and *Havensight*, Sailor's complaint *as a whole* did not lack factual support. Lies were not the *entire* premise of all his claims. And his civil rights were all violated before he offered the testimony that led this Court to punish him with a dismissal on the merits.

As the City itself established by pleading Sailor's other "acts of perjury and/or obstruction of justice" as an affirmative defense of "intervening and superseding cause," a jury would be necessary to determine who was truly to blame for Sailor's injuries when accounting for *any* lies he told. *Doc#:44, City's Answer to FAC, PageID#:527*. "An affirmative defense raises matters extraneous to the plaintiff's *prima facie* case," and in that way, they are unlike other defenses that "negate an element of the plaintiff's *prima facie* case," like a factual denial would. *Ford Motor Co. v. Transport Indem. Co.*, 795 F.2d 538, 546 (6th Cir. 1986). Very generally, this is a form of defense that "relieves a prior negligent defendant from liability." *Rupert v. Daggett*, 695 F.3d 417, 426 (6th Cir. 2012). It is a defense that can merely "exculpate the original wrongdoer." *Inland Marine Serv., Inc. v. Estates of Stack*, 183 F.Supp.3d 844, 854 (S.D. Ohio 2016). Put another way, if Sailor's claims should fail because he lied at his criminal trial, it would be an excuse for the City. It would never have been because Sailor's claims lacked any legal or factual

FLOWERS & GRUBE
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
(216) 344-9395

11

foundation. He pled a *prima facie* case, and the City just relies on the excuse of his lies in an effort to say he never had any claims at all. That is not how the law works.

As the City's own authorities establish, is not enough that the City became "a prevailing party." *Doc#:108-12, Fee Motion, PageID#:2,451; see Hughes*, 449 U.S. at 14. It can only bridge the gap between winning the case generally and prevailing specifically against "a frivolous lawsuit," *Doc#:108-12, Fee Motion, PageID#:2,451*, by casually softening the standard for what 'frivolous' means in this context. With great irony, the City could not even make out its case for relief without relying on its own false evidence *again:* "Detectives quickly placed Hubbard at the scene. A witness then put Sailor there too." *Id., PageID#:2,448*. As Sailor explained in great detail in his Complaint, Braxton did not place him at the scene of the murder until after the Defendants coached him there. *Doc#:43, FAC, PageID#:443-47*.

Otherwise, the City's Fee Motion takes a tone painting Sailor as some sort of villain. For no apparent reason other than to try angering the Court, it accuses Sailor of using his "false affidavit" in support of a request for "a declaratory judgment that he was wrongfully imprisoned." *Doc#:108-12, Fee Motion, PageID#:2,448*. Sailor *was* wrongfully imprisoned insofar since he *is* and *has always been* actually innocent. Nor was his recovery of "$652,000, paid for by Ohio taxpayers" a "windfall." *Id., PageID#:2,449*. Likely because the City does not defend wrongful imprisonment cases, it's pointless argument along these lines misses a key point. Under R.C. 2743.48(B)(5), the State of Ohio is not obligated to pay for prison time served for proper convictions:

> If an individual was serving at the time of the wrongful imprisonment concurrent sentences on other convictions that were not vacated, dismissed, or reversed on appeal, the individual is not eligible for compensation as described in this section for any portion of that wrongful imprisonment that

FLOWERS & GRUBE
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
(216) 344-9395

occurred during a concurrent sentence of that nature.

In 2023, when Sailor settled his Wrongful Imprisonment claim, the liquidated damages amount required by R.C. 2743.49 was $64,186.92 per year. So, accounting for Sailor's entitlement to also recover the "loss of wages, salary, or other earned income that directly resulted from the wrongfully imprisoned individual's arrest, prosecution, conviction, and wrongful imprisonment" and various other recoverable categories of loss in R.C. 2743.48(E)(2) other than time served, that settlement represents a hard-fought compromise. Sailor was imprisoned for many years longer than the rough decade of time in prison that $652,000.00 would compensate for. The government would have relied on the offset provision in R.C. 2743.48(B)(5) to drive a harder bargain based upon the decade of time Sailor acceded to with his dark plea. And nobody can therefore doubt that he was properly compensated with the funds paid by the State.

Finally, Sailor is not an attorney. Nobody has accused him of abusing any privilege admitting him to practice law in this Court. So, the City's request for fee shifting, if it was pursued under 28 U.S.C. § 1927, rather than Title 20, must also fail as a matter of law.

To the extent the Court disagrees with Sailor and determines that the request for fee shifting has any legal basis, it should set an evidentiary hearing with adequate advance notice for Sailor to prepare to supply evidence in rebuttal and cross-examine the City's own witnesses on the proper amount of fees. But before such a hearing, the Court should issue an order describing the precise frivolous conduct for which the Court will consider fee shifting. Only through such notice can the parties narrow their positions consistent with the causal standard in *Fox*, 563 U.S. 826.

FLOWERS & GRUBE
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
(216) 344-9395

**CONCLUSION**

For the foregoing reasons, the Court should deny the City's Motion for Attorney Fees and Costs submitted April 14, 2026, which is legally inadequate on its face. *Doc#:108, PageID#:2,083-84; Doc#:110, PageID#:2,464-65.* Alternatively, the Court should set a hearing on that request, providing adequate advance notice for Sailor to prepare to contest the factual basis of the fees and costs requested by the City.

Respectfully submitted,

*/s/ Louis E. Grube*

Louis E. Grube, Esq. (#0091337)
**FLOWERS & GRUBE**
Terminal Tower, 40th Floor
50 Public Square
Cleveland, Ohio 44113
(216) 344-9393
leg@pwfco.com

*Counsel for Plaintiff,*
*Ru-El Sailor*

FLOWERS & GRUBE
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
(216) 344-9395

14

## CERTIFICATE OF PAGE LIMITATIONS

In accordance with Loc. R. 7.1(f), I hereby certify that this action has been assigned to the standard track and that this filing complies with the court's page limitations.

*/s/ Louis E. Grube*
Louis E. Grube, Esq. (#0091337)
**FLOWERS & GRUBE**

*Counsel for Plaintiff,*
*Ru-El Sailor*

## CERTIFICATE OF SERVICE

I certify that the foregoing **Memorandum** was filed electronically on June 4, 2026. Notice of this filing will be sent to all parties by operation of the court's electronic filing system.

*/s/ Louis E. Grube*
Louis E. Grube, Esq. (#0091337)
**FLOWERS & GRUBE**

*Counsel for Plaintiff,*
*Ru-El Sailor*

FLOWERS & GRUBE
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
(216) 344-9395

15