1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

- - -

Ru-El Sailor,                    )
                                 )
              Plaintiff,         )
                                 )
        vs.                      )   Case No: 1:22-CV-00660
                                 )
City of Cleveland, et al.,       )
                                 )
              Defendants.         )

- - -

Videotaped deposition of Larry Braxton, a witness herein, called by the defendants for direct examination pursuant to the Federal Rules of Civil Procedure, taken before Constance Versagi, Notary Public in and for the State of Ohio, at Hanna Campbell & Powell, 3737 Embassy Parkway, Akron, Ohio, on Monday, April 1, 2024 commencing at 9:34 a.m.

- - -

**FINCUN-MANCINI -- THE COURT REPORTERS**
**(216) 696-2272 -- email@fincunmancini.com**

APPEARANCES:

On behalf of the Plaintiff:

       Sarah Gelsomino, Esq.
       Marcus Sidoti, Esq.
       Friedman, Gilbert & Gerhardstein
       50 Public Square, Suite 1900
       Cleveland, Ohio  44113
       216-241-1430
       Sarah@fggfirm.com
       Marcus@fggfirm.com

On behalf of the Defendant Officers:

       Kenneth A. Calderone, Esq.
       Hanna, Campbell & Powell, LLP
       3737 Embassy Parkway, Suite 100
       Akron, Ohio  44333
       330-670-7324
       Kcalderone@hcplaw.net

On behalf of the Defendant City of Cleveland:

       Dylan Ford, Esq.
       City of Cleveland Law Department
       601 Lakeside Avenue
       Cleveland, OH 44114
       216-664-4285
       Dford5@clevelandohio.gov

Also Present:

Steve Mengelkamp, Videographer

                                    INDEX

WITNESS:                              Direct      Cross

Larry Braxton

        By Mr. Calderone        4

                            - - -

                    E X H I B I T S

Exhibit:                                        Marked

A & B                                      4

                            - - -

            (Defendants' Exhibits A & B marked for

                    identification.)

                THE VIDEOGRAPHER: We're on the record

        at 9:34.

                        LARRY BRAXTON

of lawful age, being first duly affirmed, as

hereinafter certified, was examined and testified

as follows:

                    DIRECT EXAMINATION

BY MR. CALDERONE:

Q       Mr. Braxton, would you please state your full
        name on the record?

A       I am the person that you guys subpoenaed.

Q       What is your first name, is it Lawrence?

A       No.  It's Larry.

Q       Larry.  What is your middle name?

A       I'm curious why this is relevant.

Q       We're making a record to prove who you are.

A       Yes, William Braxton.

Q       Larry William Braxton.  Mr. Braxton, where do
        you live at?

A       I don't think that is relevant.

Q       It is merely to make a record.  Is there --

A       I don't have an address.

                MS. GELSOMINO:   Would you rather

maybe giving the information off the record?

MR. CALDERONE:   Sure, let's go off the record.

THE VIDEOGRAPHER:  We're off the record at 9:35.

(Discussion had off the record.)

THE VIDEOGRAPHER: We're back on the record at 9:38.

BY MR. CALDERONE:

Q    Mr. Braxton, we had a brief chat off the record.  As you sit here today, you still live in the City of Cleveland?

A    I do.

Q    Back in 2002 you lived in the City of Cleveland?

A    Yes.

Q    There were some subpoenas that I believe were delivered either to your house or given to you.  I'm going to show you a document I've marked Exhibit A.  It's a subpoena that I believe was personally served at a residence on Englewood Avenue.  My question is, have you ever seen this document before?

A    Just out of curiosity, can I invoke my right to the Fifth Amendment?

Q    You can invoke a Fifth Amendment right.  I don't think this is a question that is calling for incrimination, but you could, yes.

A    I guess that was delivered, I don't know.

Q    You appeared at my office a week or so ago.  I think there was some misunderstanding about when your deposition would take place and on that date one of my partners, Mike Ockerman, gave you a different subpoena that I marked as Exhibit B.  Do you remember receiving this subpoena from Mike Ockerman?

A    I guess.  I don't know.

Q    Back in 2002, at that time you were living on Englewood Avenue in the City of Cleveland, correct?

A    That I can recall, yes.

Q    Back at that time, do you recall who lived at that residence with you?

A    I cannot.

Q    As you sit here today, have you graduated from high school?

A    No.

Q    What was your highest grade of education?

A    I have no clue.  11, 12th grade, I don't know. I was in and out of school.

Q    Mr. Braxton, back on November 17th, 2002, there was a shooting that occurred on Englewood Avenue, involving Omar Clark.  Back on the evening of November 17, 2002 my understanding is you witnessed some of the events that occurred; is that correct?

A    I would like to invoke my Fifth Amendment right.

Q    After the shooting had occurred on November 17, 2002 do you remember speaking with any police officers?

A    Again, I would like invoke my Fifth Amendment right.

Q    You testified at the criminal trial of Omar Clark, correct?

A    If that's what it says.  I can't remember. That was 20 years ago.

Q    Do you remember speaking with any of the attorneys that represented Mr. Sailor before you testified?

A    Again, I would like to invoke my Fifth Amendment right.  I don't know.

Q    Before testifying at trial, do you recall speaking with any of the prosecutors in the case?

A    Here is the thing.  You all are asking me something about something 20 years ago plus.  I will not give inaccurate information during this case.  I know nothing about what is going on.  I have heard many things over 20 years; therefore, if I give anything further trying to be accurate, more than likely it will be inaccurate.  I don't know what to tell you.

Q    Let me ask you this.  Back 20 years ago, you did testify at the criminal trial of Ru-El Sailor.  We have a transcript from that.

A    Okay.

Q    Do you recall even testifying at that time?

A    I would like to invoke my Fifth Amendment right.

Q    When you did testify 20 some years ago, did you testify honestly and truthfully?

A    I would like to invoke my Fifth Amendment right.

Q    Since the criminal trial of Ru-El Sailor, have you spoken to any of the attorneys that represent Ru-El Sailor?

A    I would like to invoke my Fifth Amendment right.

Q    Since you testified at the criminal trial of

Ru-El Sailor, have any of the attorneys representing Mr. Sailor attempted to ask you to change your testimony or change your story?

MS. GELSOMINO: Objection.

A   I would like to invoke my Fifth Amendment right.

Q   If I understand your testimony today, you do not recall any of the events that occurred 20 some years ago?

A   I would like to invoke my Fifth Amendment right.

Q   Prior to this shooting in November of 2002, did you know Ru-El Sailor?

A   I would like to invoke my Fifth Amendment right.

Q   Prior to the shooting in November of 2002 did you know Omar Clark?

A   Again I would like to invoke my Fifth Amendment right.

Q   Prior to the shooting of Umar Clark -- I'm sorry, prior to the shooting of Omar Clark, did you know his brother, Umar Clark?

A   I would like to invoke my Fifth Amendment right.

Q   Prior to the shooting of Omar Clark, did you

know Nichole or Cordell Hubbard?

A    I would like to invoke my Fifth Amendment right.

MR. CALDERONE:    Let's take a quick break.

THE VIDEOGRAPHER: We're off the record at 9:45.

(Recess taken.)

THE VIDEOGRAPHER: We're back on the record at 9:54.

MR. CALDERONE:    So, Mr. Braxton, most of the questions that I'm asking you, that you are refusing to answer, trying to invoke a Fifth Amendment right on, its not proper to do that.  You're not at risk for being prosecuted.  You're not at risk for being arrested.  Please let me finish, I'm making a record here.

We've tried to make this as painless for you as possible.  I understand you don't want to be here.  But I want to explain to you what the next steps are going to be.

First, I really think it would help both you and us if either you talk to your attorney or give me the name of your attorney

so that we can chat with them.  I want you, if and when you answer questions, I want you to be perfectly comfortable that you are not at risk for anything.  I think the best way for that to happen is for you to have your own counsel.  If we can talk to an attorney for you, that works, that will be good.

If not, then the next step would probably be that we file a motion with the court and you'll probably have to go down to court, with the judge in the courtroom, and deal with the issue then.  I would like to avoid all of that.

THE WITNESS:    What issue would I be dealing with?  You are asking me to tell you something from 20 plus years ago that I have no clue on.  I've heard the story remixed a million times.  I don't care if it's you, or anybody else in this room, you hear something enough times in many different ways, you'll forget it.  You are asking me to swear in front of the courts for something that I have no clue on.  What am I here answering?

MS. GELSOMINO:    Also for the record I'm going to object to Ken's statement about

the law and about his right to invoke the
Fifth Amendment situation.

BY MR. CALDERONE:

Q    If you don't recall something, I don't recall,
I don't remember are perfectly acceptable
answers.

A    Okay.

Q    I certainly don't want you to give testimony
or answer questions when you don't recall
things and you can't say them for certain.  I
don't recall, and I don't remember, are
perfectly legitimate answers.

A    Okay.

Q    I don't have many questions.

Let me ask you this.  As you sit here
today, do you remember any of the events that
occurred back on November 17, 2002 when this
shooting occurred involving Omar Clark?

A    I'm not sure what day it was.  No, I can't.
I'm not sure.  Right now, I can't recall.

Q    Do you recall any of the events that you might
have witnessed back at that time?

A    I can't recall.

Q    Would it be fair for me to assume that any of
the things that you witnessed and recalled

would have been fresher in your mind 20 years ago in 2002 than they are today?

MS. GELSOMINO:    Objection.

A    I can't answer that.

Q    Is it your position that if we want to know what you recall -- strike that.

Is it your position if we want to know what you saw back at that time, we should go look at the records and look at your testimony from back at that time?

MS. GELSOMINO:    Objection.

A    I can't tell you.  I haven't read it.  I don't know.

MR. CALDERONE:    Those are all the questions I have.  But I will reserve the right, like I said before, to procedurally take this issue to the court, to continue the deposition on another date.  I'm reserving that right.  So I'm not terminating the deposition.  Sarah, if you have any questions, you can go.

MS. GELSOMINO:    You're not terminating the deposition?

MR. CALDERONE:    No.

MS. GELSOMINO:    If I were to ask you

any questions today about your interactions with the police officers in relation to this investigation would you plead the Fifth?

THE WITNESS: Again, you're asking me something about something 20 plus years ago. I cannot tell you some things that happened yesterday.

MS. GELSOMINO: Okay. I don't have any questions at this point.

MR. CALDERONE: If I asked you any questions about your interactions with Mr. Sailor's attorneys and Mr. Sailor's investigators, either prior to or after his conviction, would you take the Fifth Amendment?

THE WITNESS: I'm taking the Fifth right now.

MR. CALDERONE: Those are all the questions I have.

THE VIDEOGRAPHER: We're off the record at ten o'clock.

MR. CALDERONE: Again, subject to my reservation of rights as I said before.

MS. GELSOMINO: That's it for today.

(Deposition adjourned at 10:00 a.m.; signature waived.)

State of Ohio,          )
                        ) SS:   CERTIFICATE
County of Cuyahoga,     )

I, Constance Versagi, Court Reporter and Notary Public in and for the State of Ohio, duly commissioned and qualified, do hereby certify that the within named witness, Larry Braxton, was by me first duly affirmed to testify the truth, the whole truth, and nothing but the truth in the cause aforesaid; that the testimony then given by him was by me reduced to stenotypy/computer in the presence of said witness, afterward transcribed, and that the foregoing is a true and correct transcript of the testimony so given by him as aforesaid.

I do further certify that the testimony given by the witness was video/audio recorded and that the video recording hereto attached is a true and correct visual and audio reproduction of the testimony given by him.

I do further certify that this deposition was taken at the offices of Hanna, Campbell & Powell, on April 1, 2024, commencing at 9:34 a.m. and was adjourned.

I do further certify that I am not a relative, counsel, or attorney of either party, or otherwise interested in the event of this action.

16

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my seal of office at Cleveland, Ohio, on this 9th day of April, 2024.



_____
Constance Versagi, Court Reporter and
Notary Public in and for the State of Ohio.
My Commission expires January 18, 2028.

Ru-El Sailor vs.
City of Cleveland, et al.

Larry Braxton
April 1, 2024

## A

**acceptable (1)**
12:5
**accurate (1)**
8:7
**address (1)**
4:24
**adjourned (1)**
14:24
**affirmed (1)**
4:6
**Again (5)**
7:12,21;9:18;14:4,
21
**age (1)**
4:6
**ago (9)**
6:5;7:17;8:2,9,16;
9:9;11:16;13:2;14:5
**Amendment (17)**
5:25;6:1;7:7,12,22;
8:14,18,23;9:5,10,14,
19,23;10:2,14;12:2;
14:14
**appeared (1)**
6:5
**arrested (1)**
10:17
**assume (1)**
12:24
**attempted (1)**
9:2
**attorney (3)**
10:25,25;11:6
**attorneys (4)**
7:19;8:21;9:1;
14:12
**Avenue (3)**
5:22;6:14;7:3
**avoid (1)**
11:13

## B

**back (12)**
5:7,14;6:13,17;7:1,
3;8:9;10:9;12:17,22;
13:8,10
**best (1)**
11:4
**both (1)**
10:24
**BRAXTON (8)**
4:5,11,19,20,20;
5:10;7:1;10:11
**break (1)**
10:5
**brief (1)**
5:10
**brother (1)**
9:22

## C

**CALDERONE (11)**
4:10;5:2,9;10:4,11;
12:3;13:14,24;14:10,
17,21
**calling (1)**
6:2
**can (6)**
5:24;6:1,16;11:1,6;
13:21
**care (1)**
11:18
**case (2)**
7:25;8:4
**certain (1)**
12:10
**certainly (1)**
12:8
**certified (1)**
4:7
**change (2)**
9:3,3
**chat (2)**
5:10;11:1
**City (3)**
5:12,14;6:14
**Clark (8)**
7:3,15;9:17,20,21,
22,25;12:18
**Cleveland (3)**
5:12,15;6:14
**clue (3)**
6:24;11:17,23
**comfortable (1)**
11:3
**continue (1)**
13:17
**conviction (1)**
14:14
**Cordell (1)**
10:1
**counsel (1)**
11:6
**court (3)**
11:10,11;13:17
**courtroom (1)**
11:11
**courts (1)**
11:22
**criminal (4)**
7:14;8:10,20,25
**curiosity (1)**
5:24
**curious (1)**
4:17

## D

**date (2)**
6:8;13:18
**day (1)**

12:19
**deal (1)**
11:12
**dealing (1)**
11:15
**Defendants' (1)**
4:1
**delivered (2)**
5:18;6:4
**deposition (5)**
6:7;13:18,20,23;
14:24
**different (2)**
6:9;11:20
**DIRECT (1)**
4:9
**Discussion (1)**
5:6
**document (2)**
5:19,23
**down (1)**
11:10
**duly (1)**
4:6
**during (1)**
8:3

## E

**education (1)**
6:23
**either (3)**
5:18;10:24;14:13
**else (1)**
11:19
**Englewood (3)**
5:22;6:14;7:3
**enough (1)**
11:20
**even (1)**
8:13
**evening (1)**
7:4
**events (4)**
7:6;9:8;12:16,21
**EXAMINATION (1)**
4:9
**examined (1)**
4:7
**Exhibit (2)**
5:20;6:10
**Exhibits (1)**
4:1
**explain (1)**
10:21

## F

**fair (1)**
12:24
**Fifth (19)**
5:25;6:1;7:7,12,21;
8:14,18,23;9:5,10,14,

18,23;10:2,14;12:2;
14:3,14,15
**file (1)**
11:9
**finish (1)**
10:17
**first (3)**
4:6,14;10:23
**follows (1)**
4:8
**forget (1)**
11:21
**fresher (1)**
13:1
**front (1)**
11:22
**full (1)**
4:11
**further (1)**
8:6

## G

**gave (1)**
6:9
**GELSOMINO (9)**
4:25;9:4;11:24;
13:3,11,22,25;14:8,
23
**given (1)**
5:18
**giving (1)**
5:1
**good (1)**
11:7
**grade (2)**
6:23,24
**graduated (1)**
6:20
**guess (2)**
6:4,12
**guys (1)**
4:13

## H

**happen (1)**
11:5
**happened (1)**
14:6
**hear (1)**
11:19
**heard (2)**
8:5;11:17
**help (1)**
10:23
**hereinafter (1)**
4:7
**high (1)**
6:21
**highest (1)**
6:23
**honestly (1)**

8:17
**house (1)**
5:18
**Hubbard (1)**
10:1

## I

**identification (1)**
4:2
**inaccurate (2)**
8:3,8
**incrimination (1)**
6:3
**information (2)**
5:1;8:3
**interactions (2)**
14:1,11
**investigation (1)**
14:3
**investigators (1)**
14:13
**invoke (16)**
5:24;6:1;7:7,12,21;
8:14,18,23;9:5,10,14,
18,23;10:2,13;12:1
**involving (2)**
7:3;12:18
**issue (3)**
11:12,14;13:17

## J

**judge (1)**
11:11

## K

**Ken's (1)**
11:25

## L

**LARRY (4)**
4:5,15,16,20
**law (1)**
12:1
**lawful (1)**
4:6
**Lawrence (1)**
4:14
**legitimate (1)**
12:12
**likely (1)**
8:7
**live (2)**
4:21;5:11
**lived (2)**
5:14;6:17
**living (1)**
6:13
**look (2)**
13:9,9

**FINCUN-MANCINI -- THE COURT REPORTERS**
**(216) 696-2272 -- email@fincunmancini.com**

Case: 1:20-cv-00660-DAR  Doc #: 116-1  Filed: 06/18/26  18 of 19.  PageID #: 2515
Ru-El Sailor vs.
City of Cleveland, et al.

Larry Braxton
April 1, 2024

## M

**making (2)**
4:18;10:17
**many (3)**
8:5;11:20;12:14
**marked (3)**
4:1;5:20;6:9
**maybe (1)**
5:1
**merely (1)**
4:23
**middle (1)**
4:16
**might (1)**
12:21
**Mike (2)**
6:8,11
**million (1)**
11:18
**mind (1)**
13:1
**misunderstanding (1)**
6:6
**more (1)**
8:7
**most (1)**
10:11
**motion (1)**
11:9

## N

**name (4)**
4:12,14,16;10:25
**next (2)**
10:22;11:8
**Nichole (1)**
10:1
**November (6)**
7:1,4,10;9:12,16;
12:17

## O

**object (1)**
11:25
**Objection (3)**
9:4;13:3,11
**occurred (6)**
7:2,6,9;9:8;12:17,
18
**Ockerman (2)**
6:8,11
**o'clock (1)**
14:20
**off (7)**
5:1,2,4,6,10;10:6;
14:19
**office (1)**
6:5
**officers (2)**

7:11;14:2
**Omar (6)**
7:3,14;9:17,21,25;
12:18
**one (1)**
6:8
**out (2)**
5:24;6:25
**over (1)**
8:5
**own (1)**
11:5

## P

**painless (1)**
10:19
**partners (1)**
6:8
**perfectly (3)**
11:3;12:5,12
**person (1)**
4:13
**personally (1)**
5:21
**place (1)**
6:7
**plead (1)**
14:3
**please (2)**
4:11;10:17
**plus (3)**
8:2;11:16;14:5
**point (1)**
14:9
**police (2)**
7:11;14:2
**position (2)**
13:5,7
**possible (1)**
10:20
**Prior (6)**
9:12,16,20,21,25;
14:13
**probably (2)**
11:9,10
**procedurally (1)**
13:16
**proper (1)**
10:14
**prosecuted (1)**
10:16
**prosecutors (1)**
7:24
**prove (1)**
4:18

## Q

**quick (1)**
10:4

## R

**rather (1)**
4:25
**read (1)**
13:12
**really (1)**
10:23
**recall (13)**
6:16,17;7:23;8:13;
9:8;12:4,4,9,11,20,
21,23;13:6
**recalled (1)**
12:25
**receiving (1)**
6:10
**Recess (1)**
10:8
**record (15)**
4:3,12,18,23;5:1,3,
4,6,8,11;10:6,10,18;
11:24;14:19
**records (1)**
13:9
**refusing (1)**
10:13
**relation (1)**
14:2
**relevant (2)**
4:17,22
**remember (7)**
6:10;7:10,16,18;
12:5,11,16
**remixed (1)**
11:17
**represent (1)**
8:22
**represented (1)**
7:19
**representing (1)**
9:2
**reservation (1)**
14:22
**reserve (1)**
13:15
**reserving (1)**
13:18
**residence (2)**
5:21;6:18
**right (20)**
5:24;6:1;7:8,13,22;
8:15,19,24;9:6,11,15,
19,24;10:3,14;12:1,
20;13:16,19;14:16
**rights (1)**
14:22
**risk (3)**
10:15,16;11:4
**room (1)**
11:19
**Ru-El (5)**
8:10,20,22;9:1,13

## S

**Sailor (7)**
7:19;8:11,20,22;
9:1,2,13
**Sailor's (2)**
14:12,12
**Sarah (1)**
13:20
**saw (1)**
13:8
**school (2)**
6:21,25
**served (1)**
5:21
**shooting (8)**
7:2,9;9:12,16,20,
21,25;12:18
**show (1)**
5:19
**signature (1)**
14:25
**sit (3)**
5:11;6:20;12:15
**situation (1)**
12:2
**sorry (1)**
9:21
**speaking (3)**
7:10,18,24
**spoken (1)**
8:21
**state (1)**
4:11
**statement (1)**
11:25
**step (1)**
11:8
**steps (1)**
10:22
**still (1)**
5:11
**story (2)**
9:3;11:17
**strike (1)**
13:6
**subject (1)**
14:21
**subpoena (3)**
5:20;6:9,11
**subpoenaed (1)**
4:13
**subpoenas (1)**
5:17
**Sure (3)**
5:2;12:19,20
**swear (1)**
11:21

## T

**talk (2)**

10:24;11:6
**ten (1)**
14:20
**terminating (2)**
13:19,23
**testified (4)**
4:7;7:14,20;8:25
**testify (3)**
8:10,16,17
**testifying (2)**
7:23;8:13
**testimony (4)**
9:3,7;12:8;13:9
**therefore (1)**
8:6
**times (2)**
11:18,20
**today (7)**
5:11;6:20;9:7;
12:16;13:2;14:1,23
**transcript (1)**
8:11
**trial (5)**
7:14,23;8:10,20,25
**tried (1)**
10:19
**truthfully (1)**
8:17
**trying (2)**
8:6;10:13

## U

**Umar (2)**
9:20,22

## V

**VIDEOGRAPHER (6)**
4:3;5:4,7;10:6,9;
14:19

## W

**waived (1)**
14:25
**way (1)**
11:4
**ways (1)**
11:20
**week (1)**
6:5
**William (2)**
4:19,20
**WITNESS (3)**
11:14;14:4,15
**witnessed (3)**
7:5;12:22,25
**works (1)**
11:7

## Y

**Ru-El Sailor vs.**
**City of Cleveland, et al.**

**Larry Braxton**
**April 1, 2024**

**years (9)**
  7:17;8:2,5,9,16;
  9:9;11:16;13:1;14:5
**yesterday (1)**
  14:7

**1**

**10:00 (1)**
  14:24
**11 (1)**
  6:24
**12th (1)**
  6:24
**17 (3)**
  7:4,10;12:17
**17th (1)**
  7:1

**2**

**20 (9)**
  7:17;8:2,5,9,16;
  9:8;11:16;13:1;14:5
**2002 (9)**
  5:14;6:13;7:1,4,10;
  9:12,16;12:17;13:2

**9**

**9:34 (1)**
  4:4
**9:35 (1)**
  5:5
**9:38 (1)**
  5:8
**9:45 (1)**
  10:7
**9:54 (1)**
  10:10